REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Exhibit C

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | **C.A. No. 2:20-cv-00078-JRG** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **HMD GLOBAL OY,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF CCE'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
<u>DISMISS</u>**

Plaintiff Cellular Communications Equipment LLC ("CCE") files this response in opposition to Defendant HMD Global Oy's ("HMD") motion to dismiss for lack of standing and failure to state a claim (Dkt. No. 36).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## TABLE OF CONTENTS

I.    RESPONSE TO STATEMENT OF ISSUES TO BE DECIDED ............................. 1

II.   BACKGROUND ................................................................................................. 1

III.  ARGUMENTS AND AUTHORITY ................................................................... 2

   A.   As the Assignee of the '923 Patent, CCE Has Standing to Bring this Lawsuit. ..... 3

      i.    CCE's complaint satisfies the pleading requirements for standing. .................... 4

      ii.   The reasoning behind HMD's claim that ▮▮▮▮▮ is a necessary party is factually and logically flawed. .......................................................................... 5

      iii.  HMD's requested stay for jurisdictional discovery is unnecessary and inappropriate. ...................................................................................................... 10

   B.   CCE's Indirect Infringement Allegations Properly Allege that HMD Global Induces Infringement. ............................................................................................. 11

      i.    HMD's characterizations of CCE's inducement allegations are incorrect and unsupported. ........................................................................................................ 11

      ii.   If the Court deems necessary, leave to amend is the appropriate remedy. ........ 14

IV. CONCLUSION ................................................................................................... 14

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Diamedix Corp.*,
  47 F.3d 1128 (Fed.Cir.1995)..................................................... 4

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010)................................................. 2

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
  CV 16-453-RGA, 2017 WL 3668597 (D. Del. Aug. 24, 2017) .............. 9

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*,
  604 F.3d 1354 (Fed. Cir. 2010)................................................. 3

*Alps South, LLC v. Ohio Willow Wood Co.*,
  787 F.3d 1379 (Fed. Cir. 2015)................................................. 3

*AsymmetRx, Inc. v. Biocare Med., LLC*,
  582 F.3d 1314 (Fed.Cir.2009).................................................. 3

*Bond St. Ltd, LLC v. Liess*, 4:12-CV-755,
  2014 WL 1287620 (E.D. Tex. Mar. 31, 2014) ........................... 14

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14–CV–752–JRG–JDL, 2015 WL 12850550 (E.D. Tex. July 15, 2015 ....... 11

*Dixon v. Toyota Motor Credit Corp.*,
  794 F.3d 507 (5th Cir. 2015) ................................................. 10

*Dugger v. Stephen F. Austin State Univ.*,
  232 F. Supp. 3d 938 (E.D. Tex. 2017).................................... 10

*Enzo APA & Son, Inc. v. Geapag A.G.*,
  134 F.3d 1090 (Fed. Cir. 1998)............................................. 5, 11

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
  275 F.3d 1378 (Fed. Cir. 2002)................................................ 2

*Immunex Corp. v. Sandoz Inc.*,
  964 F.3d 1049 (Fed. Cir. 2020)................................................ 4

*Intell. Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*,
  248 F.3d 1333 (Fed. Cir. 2001)................................................ 4

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019) ........................................................ 3, 4, 9

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................ 4

*Maxell Ltd. v. Apple Inc.*,
  5:19-CV-00036-RWS, 2019 WL 7905455 (E.D. Tex. Oct. 23, 2019) ..................... 13

*Monkton Ins. Servs., Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ................................................................ 10

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007) .............................................................. 3

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
  2:18-CV-00014-JRG, 2020 WL 1324733 (E.D. Tex. Mar. 20, 2020) ..................... 10

*Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*,
  2:17-CV-00715-JRG, 2019 WL 1399927 (E.D. Tex. Mar. 28, 2019) ................... 6, 7

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
  843 F.3d 1315 (Fed. Cir. 2016) .............................................................. 11

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971 (Fed. Cir. 2005) .............................................................. 3, 4

*Summer v. Land & Leisure, Inc.*,
  664 F.2d 965 (5th Cir. 1981) ................................................................ 14

*TA Operating LLC v. Comdata, Inc.*,
  CV 12954-CB, 2017 WL 3981138 (Del. Ch. Sept. 11, 2017) ............................... 7

*Tu Nguyen v. Bank of Am., N.A.*,
  728 F. App'x 387 (5th Cir. 2018) .......................................................... 10

*WiAV Sols. LLC v. Motorola, Inc.*,
  *631 F.3d 1257 (Fed. Cir. 2010)* ............................................................. 8

**Statutes**

35 U.S.C. § 261 ........................................................................... 5, 11

**Rules**

Fed. R. Civ. P. 15(a)(2) .................................................................. 14

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## I.    RESPONSE TO STATEMENT OF ISSUES TO BE DECIDED

1. **HMD's Statement:** ████████████████████████████████████████

████████████████████████████████████████ does

CCE have standing to bring this suit? **CCE's Response:** Because CCE is the sole

assignee of the '923 patent with all rights, title, and interest in the patent, CCE has

standing to bring this suit. Further, ██████████████████ does not have, nor has it

ever had, rights in the '923 patent.

2. **HMD's Statement:** If CCE does have Constitutional standing to bring this suit, must it

do so ████████████████████████████ **CCE's Response:** No, because

CCE is the sole assignee of the '923 patent with all rights, title, and interest in the patent.

3. **HMD's Statement:** Does CCE fail to allege induced infringement because it admits that

users of accused products can send SMS messages without infringing, and alleges only

that HMD Global provides users with information about how to send SMS messages?

**CCE's Response:** No.

## II.    BACKGROUND

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████

███████████████████████████████
████████████████████████████████
███████████████████████████████
████████████████████████████████
█████████████████████████████████
████████████████████████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

████████████████████████████████████████████

███████████████

█████████████████████

On January 25, 2013, AR Group assigned the '923 patent to Cellular Communications

Equipment LLC ("CCE"). Ex. 2, Assignment and Assumption Agreement ("A&A Agreement")

(CCE_HMD_000402–404). The assignment from AR Group to CCE transferred all rights in the

'923 patent that AR Group ███████████████ to CCE. These rights included all:

> rights, obligations, interests and liabilities under the Assignment
> Document along with such rights, obligations, interests and liabilities
> relating to the Patents including, without limitation, the entire right, title,
> and interest in and to the Patents … including all rights to sue for past,
> present and future infringement of the Patents, the right to collect and
> receive any damages, royalties, or settlements for such past, present and
> future infringements, all rights to seek and obtain injunctive or other
> equitable relief and any and all causes of action re1ating to any of the
> inventions or discoveries described in the Patents.

*Id.* at CCE_HMD_000403. Thus, AR Group transferred all rights ████████████████

███████████████████ to CCE. These rights included the entire, right, title, and interest in the

'923 patent. Since becoming the assignee, CCE has held all substantial rights to the '923 patent.

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████

## III.   ARGUMENTS AND AUTHORITY

A court may exercise jurisdiction when a plaintiff has standing to sue on the date it files

suit. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (collecting

cases). "In order to have standing, the plaintiff in an action for patent infringement must be a

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

'patentee' pursuant to 35 U.S.C. §§ 100(d) and 281." *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002). A "patentee" can be the owner of a patent, the owner's assignee, or a licensee who holds all substantial rights in the patent. *See id.*; *see also Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005); *Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015) ("When a patent owner transfers all substantial rights, the transferee is treated as the patentee and has standing to sue.") (internal quotations omitted).

**A. As the Assignee of the '923 Patent, CCE Has Standing to Bring this Lawsuit.**

CCE holds all legal rights to the '923 patent and is thus "entitled to sue for infringement in its own name." *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007). As detailed above in the Background section, ██████████████████████████████████████

█████████ AR Group, in turn, assigned all of its rights in the '923 patent to CCE. ██████████

████████████████ A&A Agreement at CCE_HMD_000403. Whether an agreement transfers "all substantial rights" to a patent "depends on the substance of what was granted." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019). The analysis of the substance of what was granted "often focused on two salient rights: enforcement and alienation." *Id.* at 1231. Here, an analysis of the provisions of these agreements demonstrates that all rights to the '923 patent belong to CCE.

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ *See, e.g., Alfred E.*

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010);

*AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1320–21 (Fed.Cir.2009); *Sicom Sys. Ltd.*

*v. Agilent Techs., Inc.*, 427 F.3d 971, 979–80 (Fed.Cir.2005); *Abbott Labs. v. Diamedix Corp.*, 47

F.3d 1128, 1132 (Fed.Cir.1995).

████████████████████████████████ Alienation rights are typically

retained when the assignor must consent to subsequent transfers. *See, e.g.*, *Lone Star*, 925 F.3d at

1232; *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1061 (Fed. Cir. 2020). ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

"A grant of all substantial rights in a patent amounts to an assignment-that is, a transfer of title in

the patent-which confers constitutional standing on the assignee to sue another for patent

infringement in its own name." *Intell. Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248

F.3d 1333, 1345 (Fed. Cir. 2001). AR Group then assigned all "rights, obligations, interests and

liabilities" ██████████████████ to CCE. *See* A&A Agreement at CCE_HMD_000403. AR

Group did not retain any enforcement or alienation rights. Thus, the legal effect of ████████ and

A&A Agreement was to provide CCE with the "entire right, title, and interest" in the '923

patent, including the "right to collect and receive any damages, royalties, or settlements for such

past, present and future infringements." As such, CCE is the assignee of the '923 patent and the

inquiry into standing should end here.

> i.  *CCE's complaint satisfies the pleading requirements for standing.*

"At the pleading stage, general factual allegations of injury resulting from the defendant's

conduct may suffice, for on a motion to dismiss [the Court] 'presum[es] that general allegations

embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 561 (1992); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1225, 1234 (Fed. Cir. 2019). Here, the complaint asserts that CCE "is the owner of the '923

patent with all substantial rights to the '923 patent including the exclusive right to enforce, sue,

and recover damages for past and future infringement." Dkt. No. 1 at ¶ 18. This statement alone

satisfies the pleading requirements for standing. Particularly, given that HMD concedes that

"[t]he public record seems to match CCE's claims in its complaint." Dkt. No. 36 at 2.

> ii.    *The reasoning behind HMD's claim* ██████████████████████ *is*
> *factually and logically flawed.*

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *See* 35

U.S.C. § 261; *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998)

(holding that "[w]hile we acknowledge that a license may be written, verbal, or implied, if the

license is to be considered a virtual assignment to assert standing, it must be in writing.").

HMD's contention ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████ 35

U.S.C. § 261; *see also Enzo*, 134 F.3d at 1093 (Fed. Cir. 1998). Regardless of the contents of the

███████████████████████████████████████████████████ Absent

such a transfer of rights, ████████ cannot be a necessary party to this lawsuit. Despite this,

HMD argues that ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Even if HMD's logically incorrect theory were true, the facts required to support the

theory do not exist. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████████████
█████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████
██████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████

█████████████████████████████████████████,

█████████████████████████████████████████,

█████████████████████████████████████████

██████████████████████████████████████████████,

████████████████████████████ *Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*,

2:17-CV-00715-JRG, 2019 WL 1399927, at *3 (E.D. Tex. Mar. 28, 2019) ("Ownership of or

rights to control a company do not equate to ownership of that separate company's property.").

Thus, contrary to HMD's premise, ████████████████████████████████████

██████████████████████

Moreover, ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

████████████████████████████████████████████

███████████████████ Further, such recitals are generally not considered part of the contract. *See, e.g.*, *TA Operating LLC v. Comdata, Inc.*, CV 12954-CB, 2017 WL 3981138, at *23 (Del. Ch. Sept. 11, 2017) ("recitals 'do not ordinarily form any part of the real agreement' and 'do not have the force of contractual stipulations.'"). Nevertheless, ████████ is consistent with the assignment record for the '923 patent, which shows CCE has the entire right, title, and interest in the '923 patent.

████████████████████████████████████ "Ownership of or rights to control a company do not equate to ownership of that separate company's property." *Polaris*, 2019 WL 1399927, at *3. █████████████████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

███████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████

            ████████████████████████████████

            ██████████████████████████████

            ████████████████████████████████

            ███████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████

███████████████████

      HMD's case law does not support its incorrect view of standing. None of the cases that

HMD cites stand for the proposition that ████████████████████████████████████

████████████████████████████████

      *WiAV Sols. LLC v. Motorola, Inc.* concerned an exclusive licensee and not an assignee.

631 F.3d 1257, 1267 (Fed. Cir. 2010). In *WiAV*, the plaintiff held an exclusive license to the

patents-in-suit for "a specific field of use." *Id.* at 1259. But various third parties held licensing

rights to the patents-in-suit outside of this field of use. *Id.* at 1260. The district court incorrectly

found that because a third-party who was not in suit had the right to license the patents-in-suit,

the plaintiff was not an exclusive licensee and lacked standing. *Id.* at 1262. The Federal Circuit

reversed, finding the "key question" to be "whether [the plaintiff] has shown that it has the right

under the patents to exclude the Defendants from engaging in the alleged infringing activity and

therefore is injured by the Defendants' conduct." *Id.* at 1267. Unlike in *WiAV*, ████████████

████████████████████████████████████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

*Acceleration Bay LLC v. Activision Blizzard, Inc.* also concerned an exclusive licensee rather than an assignee. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, CV 16-453-RGA, 2017 WL 3668597, at *2 (D. Del. Aug. 24, 2017). In *Acceleration Bay*, Boeing, the original owner of the patents-in-suit, licensed Sony. *Id.* at *1. As part of the written license to Sony, Sony received the right to license third-party developers, which could include the defendant (Activision Blizzard). *Id.* Thereafter, Acceleration Bay acquired the patents-in-suit from Boeing and enforced them against defendant Activision Blizzard. *Id.* The court held that because the Boeing-Sony Agreement gave a third-party the right to license the defendant, Acceleration Bay lacked standing. *Id.* at *3 ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Thus, HMD's reliance on *Acceleration Bay* is misplaced.

*Lone Star Silicone Innovations LLC v. Nanya Technology Corp.* is also inapplicable to the current matter. 925 F.3d 1225, 1227 (Fed. Cir. 2019). In *Lone Star*, the plaintiff had received a subset of the rights to the patents-in-suit from AMD. *Id.* at 1227-1228. But AMD retained numerous rights related to enforcement and alienation. For example, the plaintiff could only sue entities on a pre-approved list and AMD retained the right to license entities that were not on that list. *Id*. AMD also retained the right to "prevent [plaintiff] from assigning the patents or allowing them to enter the public domain." *Id.* at 1228. As a result, the Court found that the plaintiff was not the assignee of the patents-in-suit because "AMD did not transfer all substantial rights." *Id.*

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

at 1234. But the agreement at issue in *Lone Star* is quite distinct from the PPA and A&A

Agreements, which did not restrict enforcement or alienation rights.

> iii.   *HMD's requested stay for jurisdictional discovery is unnecessary and*
> *inappropriate.*

Remarkably, HMD represents to the Court that the factual record shows that CCE lacks

standing and, in the same motion, seeks to stay the case to conduct discovery into whether CCE

has standing. While jurisdictional discovery might ordinarily be broad, these are the precise

circumstances where the Court should deny HMD's requested stay to conduct discovery. First,

CCE has standing because ███████████████████████████████

████████████████ No amount of discovery will change this. Thus, any further

discovery is improper. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014)

(If a movant is "unable to state how the discovery [it] requested would change the jurisdictional

determination," the Court may deny the request for discovery."). Indeed, HMD does not outline

any discovery that it intends to take or detail any information that it seeks. As such, HMD could

not have discussed how any discovery could change the jurisdictional determination.

Second, given that HMD already filed a motion to dismiss for lack of standing, it does

not make sense to stay, as any theoretical discovery that HMD *might* obtain would be improper

to raise in a reply brief. "Arguments raised for the first time in a reply brief are waived." *Dixon v.*

*Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015); *Plastronics Socket Partners, Ltd.*

*v. Dong Weon Hwang*, 2:18-CV-00014-JRG, 2020 WL 1324733, at *8 (E.D. Tex. Mar. 20,

2020); *see also Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp. 3d 938, 957 (E.D. Tex.

2017) (Bryson, J.) (collecting cases demonstrating that "courts disregard new evidence or

argument offered for the first time in the reply brief."). If HMD believed discovery were

necessary to support its motion, it should have gathered that information before it filed its

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

motion. *Cf. Tu Nguyen v. Bank of Am., N.A.*, 728 F. App'x 387 (5th Cir. 2018) (standing may be raised at any time).

HMD's request to stay the case pending discovery into CCE's standing amounts to a snipe hunt.  . *See* 35 U.S.C. § 261; *Enzo*, 134 F.3d at 1093. Staying the case to conduct discovery into standing will not change the reality that the assignment documents HMD needs for its theory to hold water do not exist.

### B. CCE's Indirect Infringement Allegations Properly Allege that HMD Global Induces Infringement.

To properly plead a count of induced infringement, the complaint need only: (1) adequately plead direct infringement by defendants' customers; (2) contain facts plausibly showing that defendant specifically intended for its customers to perform the infringing acts; and (3) contain facts plausibly showing that defendant knew that those acts constituted infringement. *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14–CV–752–JRG–JDL, 2015 WL 12850550, at *4 (E.D. Tex. July 15, 2015); *cf. Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016) (detailing the substantive standards for induced infringement).

> i.    *HMD's characterizations of CCE's inducement allegations are incorrect and unsupported.*

HMD rests its motion to dismiss on the incorrect assertion that:

> CCE admits that infringement (should it happen) is invisible to the end user, and that the accused devices have an infinity of non-infringing uses, including sending text messages to any number other than a premium short code, as well as sending text messages with premium short codes turned off.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Motion at p. 15. This statement is troubling: nowhere in CCE's complaint or accompanying claim chart is there such an admission. Instead, CCE's "admission"—the lynchpin of HMD's argument—is *HMD's own summary* of the detailed claim chart accompanying CCE's complaint. Motion at pp. 5-6. HMD's summary is certainly no admission of CCE.

Moreover, HMD's self-serving summary is wrong. As the claim chart accompanying the complaint demonstrates, the Android "Messaging" app is configured such that the use of the app infringes the '923 patent. Dkt. No. 1-1. And as the chart details, the relevant functionality is invoked for all messages, not just premium short codes. Moreover, nowhere in the complaint does CCE state that the Messaging app has non-infringing uses.

The chart accompanying the complaint explains that each accused device "is a communication terminal that performs a method of controlling messaging applications that operate on it." Dkt. No. 1-1 at p. 2. The chart identifies the Messaging app as the infringing feature:

> Each HMD Global Device sends messages from an application program towards a communication network. For example, each HMD Global Device contains a SMS/MMS program that is pre-loaded on the device. An example of such a program is the Android "Messaging" app.

Dkt. No. 1-1 at p. 3. The chart identifies the functions that are invoked by the use of the Messaging app: the "Messaging app is programmed to send messages towards the cellular network. For example, the Messaging app uses the sendMessage() method when the application attempts to transmit a text message." *Id.* This statement applies to all messages the Messaging app sends, not just premium short codes as HMD contends.

The chart further explains how the Messaging app "diverts a message of the messages to a controlling entity residing in the communication terminal." *Id.* at p. 4. The chart details how the SMSManager class delivers all messages to the sendRawPDU() method. *Id.* The sendRawPDU()

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

method performs various checks on the messages and diverts properly formatted messages to the controlling entity. *Id.* Again, these statements apply to all messages the Messaging app sends, not just premium short codes as HMD contends.

Finally, the chart accompanying the complaint details how based on the message, the controlling entity controls whether the Messaging application behaves in a predetermined manner. *Id.* at 5. As the chart details, the controlling entity within the Messaging application controls whether the Messaging app performs in a predetermined manner (i.e., sending the message). *Id.* While the chart details how the controlling entity within the Messaging app controls the message based on its type (e.g., premium short code vs. non-premium short code), the chart does not limit the infringe read to premium short codes as HMD contends. Rather, as the chart details, the Messaging app is configured to control how the message is handled based on the message type. *Id.*

As the detailed chart cited in the complaint illustrates, CCE's infringement theory concerns how the Messaging app processes all messages, not simply premium short code messages. Because the infringement theory detailed in CCE's complaint is that the use of the Messaging app infringes the '923 patent, identifying HMD's instructions to end users encouraging them to use the Messaging app are sufficient for an inducement allegation. As this Court recently explained, "*Core Wireless* explicitly recognized that 'the provision of instructions by an accused infringer may indicate specific intent to induce infringement.'" *Maxell Ltd. v. Apple Inc.*, 5:19-CV-00036-RWS, 2019 WL 7905455, at *4 (E.D. Tex. Oct. 23, 2019). CCE's complaint identified the Messaging app as the accused functionality and included allegations that HMD's user literature encourages its end users to use such features. "These factual allegations are sufficient to give rise to a reasonable inference that [HMD] specifically intended to induce infringement." *See id.*

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

    *ii.*      *If the Court deems necessary, leave to amend is the appropriate remedy.*

Although the foregoing demonstrates that CCE has sufficiently pled its indirect infringement claim, should the Court deem additional detail is required for any of CCE's claims, CCE requests leave to amend under Rule 15(a), which requires courts to give leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). This Court has recognized that "when a party has failed to plead with sufficient particularity, the Court will almost always permit leave to amend to bring the complaint into compliance with the requirements of Rule 9(b)." *Bond St. Ltd, LLC v. Liess*, 4:12-CV-755, 2014 WL 1287620, at *5 (E.D. Tex. Mar. 31, 2014) (citing *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 971 (5th Cir. 1981)).

## IV.    CONCLUSION

For the foregoing reasons, HMD's motion to dismiss should be denied. Additionally, due to the time and effort required to respond to HMD's arguments related to standing, CCE expressly reserves the right to seek an award of reasonable attorney's fees and costs.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Dated: October 5, 2020

Respectfully submitted,

/s/ *Jeffrey R. Bragalone*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Jonathan H. Rastegar
Texas Bar No. 24064043
Jerry D. Tice II
Texas Bar No 24093263
Hunter S. Palmer
Texas Bar No. 24080748

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
jrastegar@bcpc-law.com
jtice@bcpc-law.com
hpalmer@bcpc-law.com

Attorneys for Plaintiff
**CELLULAR COMMUNICATIONS
EQUIPMENT LLC**

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## **CERTIFICATE OF AUTHORIZATION TO SEAL**

Under Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Docket No.31) entered in this case on August 14, 2020.

/s/ *Jeffrey R. Bragalone*
Jeffrey R. Bragalone

## **CERTIFICATE OF SERVICE**

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 5, 2020.

/s/ *Jeffrey R. Bragalone*
Jeffrey R. Bragalone