# Exhibit D

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § | |
| Plaintiff, | § | Case No. 2:20-CV-00078-JRG |
| v. | § § § | JURY TRIAL DEMANDED |
| HMD GLOBAL OY, | § § § | |
| Defendant. | § | |

**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT
HMD GLOBAL OY FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      CCE Cannot Escape the Standing Inquiry by Pointing to Its Allegations. . . . . . . . . . . 1

II.     CCE Cannot Escape the Facts By Pointing to Magic Words. . . . . . . . . . . . . . . . . . . . 2

III.    CCE Cannot Escape the Law By Creating a New Exception for Ultimate Owners. . . . . 4

IV.    Newly Produced Documents Further Show CCE's Lack of Standing. . . . . . . . . . . . . . 6

V.     If the Court Does Not Grant the Motion, It Should Stay the Case for Discovery. . . . . . . 7

VI.    CCE Cannot Plead Induced Infringement, Which Requires Specific Intent,
When It Does Not Plead That HMD Global Actually Intends to
Induce Any Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# **TABLE OF AUTHORITIES**

*Cases* **Pages**

*3M Co. v. Avery Dennison Corp.*,
    673 F.3d 1372 (Fed. Cir. 2012)............................................ 2

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    625 F.3d 1359 (Fed. Cir. 2010)............................................ 7

*Alpine View Co. v. Atlas Copco AB*,
    205 F.3d 208 (5th Cir. 2000)............................................ 7

*AntennaSys, Inc. v. AQYR Techs., Inc.*,
    — F.3d —, —, 2020 WL 5927398 (Fed. Cir. Oct. 7, 2020)...................... 8

*Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.*,
    No. 17-430, 2019 WL 2210686 (E.D. Tex. July 22, 2019)...................... 7

*Cedars-Sinai Med. Ctr. v. Watkins*,
    11 F.3d 1573 (Fed. Cir. 1993)............................................ 1, 2, 7

*Core Wireless Licensing S.A.R.L v. Apple Inc.*,
    No. 14-752, 2015 WL 4910427 (E.D. Tex. Aug. 13, 2015).................... 8, 10

*Enzo APA & Son, Inc. v. Geapag A.G.*,
    134 F.3d 1090 (Fed. Cir. 1998)............................................ 4

*Gibbs v. Buck*,
    307 U.S. 66 (1939)............................................ 1

*Immunex Corp. v. Sandoz Inc.*,
    964 F.3d 1049 (Fed. Cir. 2020)............................................ 2

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001)............................................ 3

*KVOS, Inc. v. Associated Press*,
    299 U.S. 269 (1936)............................................ 1

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019)............................................ 2, 3, 4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................ 7

# **TABLE OF AUTHORITIES**

*Cases* **Pages**

*Memory Integrity, LLC v. Intel Corp.*,
    144 F. Supp. 3d 1185 (D. Or. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*,
    No. 17-715, 2019 WL 1399927 (E.D. Tex. Mar. 28, 2019). . . . . . . . . . . . . . . . . . . . 5, 6

*Roebuck v. Dothan Sec., Inc.*,
    515 F. App'x 275 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Waterman v. Mackenzie*,
    138 U.S. 252 (1891). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Statutes*

35 U.S.C. § 261. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Other Authorities*

5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*,
    §§ 1350, 1363 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**INTRODUCTION**

CCE does not oppose HMD Global's motion; it ignores it.  HMD Global explained that the substance of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ confirms that CCE lacks substantial rights in the '923 patent, that the law requires examination of the substance of agreements, and that "magic words" cannot impart standing.  CCE responds by doubling down on magic words.  HMD Global showed that CCE's infringement allegations acknowledge non-infringing uses, and that CCE failed to allege inducement to infringe beyond those uses.  CCE responds with artful language that appears to contradict these assertions, but actually admits their truth.  When the Court wades through CCE's incantation of magic words and obfuscation of its claims, it will find that the law doubly requires dismissal of CCE's complaint, both for lack of standing and for failure to state a claim.

**ARGUMENT**

**I.     CCE Cannot Escape the Standing Inquiry by Pointing to Its Allegations**

CCE first tries to dodge HMD Global's motion by arguing that its mere allegation of ownership "alone satisfies the pleading requirements for standing."  Opp. at 4-5.  CCE is dead wrong; this argument borders on frivolous.  "The burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction."  *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citing *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936)).  Once a party challenges jurisdiction, "the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion."  *Cedars-Sinai*, 11 F.3d at 1583-84 (citing *Gibbs v. Buck*, 307 U.S. 66, 72, (1939); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, §§ 1350, 1363, at 219-20, 457-58 (1990)).  To resolve a motion such as this one, the "district court must satisfy itself that there is a factual basis for it to exercise jurisdiction, and in doing so it 'may review

evidence extrinsic to the pleadings, including affidavits and deposition testimony.'" *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378 (Fed. Cir. 2012) (quoting *Cedars-Sinai*, 11 F.3d at 1584). Black letter law states that CCE cannot meet its burden by pointing to its pleading.

## II.     CCE Cannot Escape the Facts By Pointing to Magic Words

CCE next attempts to avoid HMD Global's motion by pointing to magic words. This too fails. As HMD Global explained in its motion, on July 30, 2016, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

This practical examination is required by governing law, which holds that the "inquiry depends on the substance of what was granted rather than formalities or magic words." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) (citing *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891)). Courts "'examine the "totality" of the agreement to determine whether a party other than the original patentee has established that it obtained all substantial rights in the patent.'" *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1059-60 (Fed. Cir. 2020) (quoting *Lone Star*, 925 F.3d at 1229). CCE easily fails this test; indeed, the facts here are remarkably similar to those of *Lone Star* itself. Like CCE here, plaintiff Lone Star received a "broad conveyance of 'all right, title and interest' in the covered patents," and argued that the analysis must end there. 925 F.3d at 1230. Like CCE here, Lone Star was wrong: the Court looked elsewhere to find provisions that "substantially curtail[ed]

– 2 –

Lone Star's rights." *Id.* (alteration added). A party with "all substantial patent rights," the Court explained, can always bring suit by itself and "would *never* need consent" from another to do so. *Id.* at 1231 (quoting *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333 (Fed. Cir. 2001)) (emphasis in original). ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

CCE's opposition does not engage with these facts or law, instead doubling down on magic words. Relying on documents it produced after HMD Global filed its motion, CCE recounts two assignments from ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅ and from AR Group to CCE, repeating *ad nauseum* that these agreements purported to transfer "the entire, right, title, and interest in the '923 patent." Opp. at 7; *see also id.* at 1-5. As a result of these magic words, CCE concludes, "CCE is the assignee of the '923 patent and the inquiry into standing should end here." Opp. at 4. But the law allows no such thing: the "inquiry depends on the substance of what was granted rather than formalities or magic words." *Lone Star*, 925 F.3d at 1229. The substance is telling: sometime between

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

---

[1] CCE submitted a declaration from the Chief Intellectual Property Officer of ARC, Marc W. Booth. Docket No. 47-4. It is a red herring: like CCE's opposition brief, Mr. Booth relies on magic words, and does not address or even mention ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

CCE has not produced a document defining the full scope of ▮▮▮ but it does not matter: the agreement between ▮▮▮ has at least the rights it exercised there, and they are enough to prevent CCE from proceeding here.² Instead CCE says that we should pay no attention to the man behind the curtain, and should focus only on the magic words in the earlier assignments to CCE. But those earlier assignments cannot gainsay the agreement between ▮▮▮ which shows that the "substance of what was granted" to CCE is less than all substantial rights, no matter the "magic words." *Lone Star*, 925 F.3d at 1229.

### III. CCE Cannot Escape the Law By Creating a New Exception for Ultimate Owners

CCE next tries to escape the ▮▮▮ by arguing that ▮▮▮ CCE quickly ties itself in knots, claiming that ▮▮▮ Opp. at 2, even though ▮▮▮

▮▮▮

▮▮▮

▮▮▮ And CCE attempts to invent a distinction by arguing that ▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

---

² CCE argues that, because it has not produced this document, it retains all rights to the '923 patent. Opp. at 5 (citing 35 U.S.C. § 261; *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998)). But *Enzo* and § 261 address *gaining* patent rights, not *losing* them. If subsidiaries (such as CCE) could never lose standing without a writing, then "the exception would swallow the rule" as parents (▮▮▮) could claim whatever patent rights they wanted, while remaining "free to engage in revisionist history" after the fact. 134 F.3d at 1093. In any event, CCE has now produced several writings that show it *lacks* all substantial rights, including acknowledgement by CCE that ▮▮▮ *See infra* § IV.

– 4 –

▮▮▮▮▮▮▮▮▮▮ and CCE does not argue otherwise. Docket No. 36, Ex. C; *see generally* Opp. at 1-9. Tellingly, ARC's statements to the Securities and Exchange Commission, which cannot be misleading under securities law, acknowledge that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ in contrast to agreements ending other CCE litigation.[3] ARC's securities lawyers surely gave it no choice, since ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *See supra.* On these facts alone, CCE cannot meet its burden to show that it has the "**exclusive** right to enforce, sue, and recover damages for past and future infringement." Compl. ¶ 18 (emphasis added).

Unable to avoid these facts, CCE resorts to misreading this Court's ruling in *Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*, No. 17-715, 2019 WL 1399927 (E.D. Tex. Mar. 28, 2019), which actually supports dismissal here. In *Polaris*, defendant Samsung argued that because non-party Microsemi effectively controlled plaintiff Polaris, Polaris had no standing to sue. *Id.* at *2. The Court found "that Samsung conflates corporate governance with patent rights," and that "[o]wnership of or rights to control a company do not equate to ownership of that separate company's property." *Id.* at *3 (citation omitted). But *Polaris* confirms that, on these facts, ▮▮▮▮▮▮▮▮▮▮ is not mere "corporate governance." *Id.* In *Polaris*, the

---

[3] "Cellular Communications Equipment LLC and Cellular Communications Equipment GmbH **entered into patent license agreements** with Sony Mobile Communications Inc." Acacia Research Corp., Acacia Research Reports First Quarter Financial Results (Apr. 21, 2016), https://sec.gov/Archives/edgar/data/0000934549/000093454916000106/ex-991q12016.htm (emphasis added). "Cellular Communications Equipment LLC **entered into a license agreement** with Samsung Electronics Co., Ltd." Acacia Research Corp., Acacia Research Reports Second Quarter Financial Results (July 28, 2016), https://www.sec.gov/Archives/edgar/data/0000934549/000093454916000138/ex-991q22016.htm (emphasis added). "Cellular Communications Equipment LLC **entered into a settlement and license agreement** with Amazon.com, Inc." *Id.* (emphasis added). "Cellular Communications Equipment LLC and Parthenon Unified Memory Architecture LLC **resolved patent litigation** with LG Electronics, Inc." Acacia Research Corp., Acacia Research Reports Third Quarter Financial Results (Oct. 27, 2016), https://sec.gov/Archives/edgar/data/0000934549/000093454916000152/ex-991q32016.htm (emphasis added).

Court found that Microsemi lacked "the ability to directly control the use of Polaris's patents," and that "Polaris—not Microsemi—maintains complete control over decisions that affect the rights of the patent." *Id.* at *4. Neither is true here: ███████████████████

███████████████████████████████████████████

███████████████████████████████████ Plenty of companies allow subsidiaries to retain "complete control over decisions that affect the rights of the patent" by having those subsidiaries execute their own licenses, settle their own cases and collect their own fees. *Polaris*, 2019 WL 1399927, at *4. ███ could have done that too, but chose to execute the license itself, confirming that CCE lacks substantial rights to the patent.

### IV. Newly Produced Documents Further Show CCE's Lack of Standing

Although ██████████████ provides substantial evidence of CCE's lack of standing, documents CCE produced after HMD Global's motion provide even more. CCE produced a series of agreements with ███, and filed portions with its opposition. Docket No. 47-1. But CCE omitted other portions of these documents as well as other documents that undercut its standing in this Court. First, ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████,

███████████████████████████████████████████

█████████████████████████████████ CCE could

not even execute this agreement by itself: it was between CCE, ▮▮▮▮▮▮▮▮▮. *Id.* at CCE_HMD_001643. Although there is likely more to learn from these newly produced documents, at minimum they show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CCE's sparse production raises more questions than it answers, but confirms that CCE fails to meet its standing burden.[4]

**V.     If the Court Does Not Grant the Motion, It Should Stay the Case for Discovery**

HMD Global has shown CCE's lack of standing based only on the documents CCE has produced so far, and CCE's response is insufficient to establish jurisdiction. If the Court is not inclined to dismiss on this record, however, it should stay the case to allow jurisdictional discovery. "[J]urisdictional discovery should only be denied where it is *impossible* that the discovery 'could . . . add[] any significant facts' that might bear on the jurisdictional determination." *Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.*, No. 17-430, 2019 WL 2210686, at *3 (E.D. Tex. May 22, 2019) (alteration and emphasis in original) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)). That is not so here: HMD Global has already sought discovery from CCE and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and communications regarding that agreement, including any communications with ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, *supra* § IV. It is not merely 'possible' that this discovery will bear fruit; it is likely. "Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Even statutory standing is "a threshold

---

[4] *Cedars-Sinai*, 11 F.3d at 1583. CCE complains that HMD Global cannot raise new arguments in reply. Opp. at 10. But CCE also admits that "standing may be raised at any time," *id.* at 11, and it would be gravely unjust to allow CCE to produce documents for its opposition but preclude HMD Global from citing those same documents in its reply. In any event, HMD Global raises no new argument with these documents, but merely supports its existing ones.

question" that Courts should resolve before reaching "claim construction and summary judgment rulings." *AntennaSys, Inc. v. AQYR Techs., Inc.*, — F.3d —, —, 2020 WL 5927398, at *3 (Fed. Cir. Oct. 7, 2020). If the Court does not dismiss the case outright, it should give HMD Global an opportunity to explore this issue, and CCE an opportunity to meet its burden, without subjecting HMD Global to other litigation obligations before CCE has established its right to impose them.

### VI. CCE Cannot Plead Induced Infringement, Which Requires Specific Intent, When It Does Not Plead That HMD Global Actually Intends to Induce Any Infringement

As HMD Global explained in its motion, to plead induced infringement a complaint must "contain facts plausibly showing that defendant specifically intended for its customers to infringe the asserted patents," and that "generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim." *Core Wireless Licensing S.A.R.L v. Apple Inc.*, 14-752, 2015 WL 4910427, at *3-*4 (E.D. Tex. Aug. 14, 2015) (citations omitted); *see generally* Mot. § II. To prevail on induced infringement, a plaintiff cannot merely show that "a user following the instructions may end up using the device in an infringing way," but must show that "instructions teach an infringing use of the device such that we are willing to infer from those instructions an affirmative intent to infringe the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 n.2 (Fed. Cir. 2009). At the pleading stage, "[w]hen a product can be used both in an infringing way and a non-infringing way, the allegation that its purveyor specifically teaches the infringing use is sufficient factual support for the element of specific intent," but "the mere allegation that 'a user following the instructions may end up using the device in an infringing way' is not sufficient factual support." *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1196 (D. Or. 2015) (quoting *Vita-Mix*, 581 F.3d at 1329 n.2; citing *id.* at 1328). Here, because CCE's complaint alleges induced

infringement based on "instructions on how to use the Android Messaging app in the Accused Products," Compl. ¶ 27, CCE must also allege that "us[ing] the Android Messaging app in the Accused Products" necessarily causes infringement.

CCE does not challenge any of this—nor could it, under the law—and instead hangs its hat on the implication that any use of the accused functionality must infringe.  But CCE can only imply this rather than state it, because CCE's complaint admits it is not true.  CCE's opposition carefully *does not* say that using the accused "Android Messaging app" must cause infringement, but uses lawyerly language to dodge this issue, saying that "the relevant functionality is invoked for all messages" and that "CCE's infringement theory concerns how the Messaging app processes all messages."  Opp. at 12-13.  CCE's complaint identifies three ways a user can use the "Messaging app" without infringing.  First, the complaint alleges infringement requires "diverting a message of the messages to a controlling entity residing in the communication terminal," but states that "[t]he sendRawPdu() method performs various checks on the message it receives," and that "[m]essages that fail any of the checks are not delivered to the controlling entity."  Docket No. 1-1 at 4.  The complaint thus admits the accused functionality does not divert all messages to the controlling entity—for each such message, a non-infringing use.[5]

Second, in alleging infringement of the element including "based on the message, controlling in the controlling entity whether the application program behaves in a predetermined manner in the communication terminal," the complaint alleges that "the predetermined manner of operation is to send messages to the communication network without further action from the user," but also admits that "the controlling entity checks if it was previously configured by the

---

[5] CCE claims in its brief that "[t]he sendRawPDU() method performs various checks on the messages and diverts properly formatted messages to the controlling entity."  Opp. at 12-13.  This is not true, but it does not matter, since these words do not appear in the complaint.  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013).

user to ALWAYS or NEVER send premium short codes, and if configured, the message is either sent or discarded, respectively." *Id.* at 5.  Thus, according to the complaint, in the "ALWAYS" configuration the "controlling entity" *always* sends *every* message "to the communication network without further action from the user," and thus—again, according to the complaint—the application *always* "behaves in a predetermined manner in the communication terminal," so that there is no "controlling in the controlling entity" *at all*, and certainly no controlling "based on the message," because all messages go through—a second non-infringing use.  *Id*.  Finally, CCE does not even *allege* that *receiving* text messages infringes its patent—a third non-infringing use.

The complaint pleads only that HMD Global provided "instructions on how to use the Android Messaging app in the Accused Products," and admits that users who "use the Android Messaging app in the Accused Products" *may or may not* infringe.  Compl. ¶¶ 22, 27; Docket No. 1-1 at 4-5.  It thus alleges only that "a user following the instructions may end up using the device in an infringing way," fails the test of *Vita-Mix*, 581 F.3d at 1329 n.2, and fails to show that HMD Global "specifically intended for its customers to infringe the asserted patents."  *Core Wireless*, 2015 WL 4910427 at *3.  The Court should dismiss CCE's inducement claim.[6]

## CONCLUSION

For the foregoing reasons and those in its opening brief, HMD Global respectfully requests that the Court dismiss the complaint in this action, Docket No. 1, or in the alternative stay the case while HMD Global conducts jurisdictional discovery into CCE's standing to sue.

Date: October 13, 2020                         Respectfully submitted,

*/s/ Deron R. Dacus*
Deron R. Dacus

---

[6] CCE requests leave to amend to correct this deficiency, Opp. at 14, and it is welcome to try.  Because CCE's complaint admits that the accused functionality has several non-infringing uses, to assert induced infringement CCE must plead that HMD Global's "instructions teach an infringing use of the device."  *Vita-Mix*, 581 F.3d at 1329 n.2.  If CCE cannot find a Rule 11 basis even to make this allegation, then it cannot pursue induced infringement in this case.

– 10 –

    State Bar No. 00790553
    **The Dacus Firm, P.C.**
    821 ESE Loop 323, Suite 430
    Tyler, Texas, 75701
    +1 (903) 705-1117
    +1 (903) 581-2543 facsimile
    ddacus@dacusfirm.com

    Matthew S. Warren (California Bar No. 230565)
    Jen Kash (California Bar No. 203679)
    Erika Warren (California Bar No. 295570)
    **Warren Lex LLP**
    2261 Market Street, No. 606
    San Francisco, California, 94114
    +1 (415) 895-2940
    +1 (415) 895-2964 facsimile
    20-78@cases.warrenlex.com

    *Attorneys for HMD Global Oy*

## **CERTIFICATE OF SERVICE**

I certify that on October 13, 2020, I served the foregoing document on counsel for plaintiff Cellular Communications Equipment LLC:

    Jeffrey R. Bragalone
    Jerry D. Tice II
    Hunter S. Palmer
    Bragalone Conroy PC
    2200 Ross Avenue
    Suite 4500W
    Dallas, Texas, 75201

by electronic mail to cce-service@bcpc-law.com, the email address designated for service by outside counsel for plaintiff Cellular Communications Equipment LLC under Section 12(c) of the Discovery Order in this case, Docket No. 24.

    */s/ Deron R. Dacus*
    Deron R. Dacus

## CERTIFICATE OF AUTHORIZATION TO SEAL

Under Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Docket No. 31) entered in this case on August 14, 2020.

*/s/ Deron R. Dacus*
Deron R. Dacus