# Exhibit L

**WARREN LEX** LLP

2261 MARKET STREET NO. 606
SAN FRANCISCO CA 94114

TEL +1 (415) 895 2940
FAX +1 (415) 895 2964

November 3, 2020

**Highly Confidential—Outside Attorneys' Eyes Only**

**By Electronic Mail**

Jonathan H. Rastegar
Bragalone Conroy PC
2200 Ross Avenue
Suite 4500W
Dallas, Texas, 75201
jrastegar@bcpc-law.com

Re: Cellular Communications Equipment LLC v. HMD Global Oy, No. 20-78 (E.D. Texas),
Subpoenas to Acacia Research Corporation

Dear Mr. Rastegar:

I write regarding the subpoenas from HMD Global Oy to Acacia Research Corporation ("ARC"), which we discussed again on our phone call last week on Friday, October 30, 2020. Under Local Rule 37-1 of the Central District of California, jurisdiction for any enforcement of the subpoenas, I will identify the issues and discovery requests in dispute, HMD Global's position on those issues and discovery requests, and the terms of the discovery order that HMD Global will seek if we cannot reach agreement.

1. **Document Requests**

    A. **Resolution of Pending Motion to Dismiss**

During our discussions, you noted one objection that (in your view) applies to all or nearly all of our document requests; we will avoid needless repetition by addressing it up front. You contend that the [REDACTED] You further contend that although we claim that it *is* a license, the Court hearing CCE's action against HMD Global will resolve this issue by ruling on our motion to dismiss, and so we are not entitled to discovery on this issue. In other words, you contend that we cannot take discovery on a disputed issue because you believe that we will ultimately lose the dispute over this issue.

But that is not how discovery works. "The obvious and overall purpose of discovery under the Federal Rules of Civil Procedure is to require disclosure of all relevant information, so that the ultimate resolution of disputed issues is based on a full and accurate understanding of the facts and therefore embodies a fair and just result." *Inland Concrete Enters., Inc. v. Kraft Ams., L.P.*, Case No. 10-1776, 2011 WL 13209258, at *2 (C.D. Cal. May 12, 2011) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). If a target of discovery could escape its obligations to produce documents by claiming that its side would ultimately win the underlying dispute, there would be no discovery. *Castelan-Gutierrez v. Bodega Latina Corp.*, Case No. 17-1877, 2018 WL 4050493, at *2 (D. Nev. Mar. 30, 2018) ("The mere fact that a party may articulate some legal argument that may allow it to prevail on a particular claim,

**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 2

even when presented in a currently-pending dispositive motion, is simply insufficient to justify denying discovery to its opponent."). Indeed, the "Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending," *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 312 (C.D. Cal. 2020) (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011)), and discovery will proceed unless the "party seeking a stay of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied." *Soundgarden v. UMG Recordings, Inc.*, Case No. 19-5449, 2019 WL 10093965, at *6 (C.D. Cal. Dec. 2, 2019) (quoting *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995)); *see also Las Vegas Sun, Inc. v. Adelson*, Case No. 19-1667, 2020 WL 2114352, at *5 (D. Nev. May 4, 2020) ("Generally, there must be no question in the court's mind that the dispositive motion will prevail, and therefore, discovery is a waste of effort.") (quoting *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 583 (D. Nev. 2013)).

Although HMD Global has asserted lack of standing through a motion to dismiss, because standing is a "threshold jurisdictional issue," Reply at 7-8, which even CCE acknowledges "may be raised at any time," Opp. at 11, HMD Global can present facts beyond the pleadings to support its claim, has no time limit to make this claim, and can take discovery and use that discovery to support a renewed motion. *See Uniloc USA, Inc. v. Apple Inc.*, No. 18-358, Docket No. 165 (N.D. Cal. Oct. 22, 2020) (renewing motion to dismiss for lack of standing based on new evidence obtained through discovery); *see also Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.*, No. 17-430, 2019 WL 2210686, at *3 (E.D. Tex. May 22, 2019) ("[J]urisdictional discovery should only be denied where it is impossible that the discovery 'could . . . add[] any significant facts' that might bear on the jurisdictional determination.") (alteration and emphasis in original) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)). For at least these reasons, we do not agree with your global statement that HMD Global cannot take discovery on a disputed issue because CCE claims it will ultimately win the dispute.

  **B.**  **Requests Nos. 1-4**

HMD Global's Request Nos. 1-4 seek:

1. All documents concerning any agreement between persons including ▓▓ and ▓▓ ▓▓▓▓▓▓▓▓▓ that includes any patent license.

2. All documents concerning any agreement executed concurrently with any agreement between persons including ▓▓ and ▓▓▓▓▓▓▓▓ that includes any patent license.

3. All documents concerning communications concerning any agreement between persons including ▓▓ and ▓▓▓▓▓▓▓▓ that includes any patent license, or any agreement executed concurrently with any agreement between persons including ▓▓ and ▓▓▓▓▓▓▓▓ that includes any patent license.

4. All documents concerning communications concerning negotiations leading to any agreement between persons including ▓▓ and ▓▓▓▓▓▓▓▓ that includes any patent license, or any agreement executed concurrently with any agreement between persons including ▓▓ and ▓▓▓▓▓▓▓▓ that includes any patent license.

**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 3

Stated more succinctly, these requests seek documents, including communications, concerning any agreement including ▮▮▮▮ and ▮ that includes a patent license, or any agreement executed concurrently with such an agreement.

You have confirmed that ARC will produce "any agreements involving itself and CCE or the '923 patent," but refuse to produce any other documents. You have not confirmed whether this category includes any documents beyond the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ produced by CCE at Bates numbers CCE_HMD_001012 through CCE_HMD_001027, but have implied that it does not.

You raised your global objection regarding these requests; for the reasons we have explained above in Section 1.A, this objection has no merit.

You indicated that any other agreements between ▮▮▮ and ▮ are irrelevant to our dispute. Not so. If ▮▮▮ and ▮ executed prior patent licenses, they will show course of dealing between the parties and shed light on their understanding of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Faulkner v. Nat'l Geographic Soc.*, 452 F. Supp. 2d 369, 381 (S.D.N.Y. 2006) (explaining that "the parties' course of dealing throughout the life of a contract is highly relevant to determining the meaning of the terms of the agreement") (citations omitted); *see also Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 364-65 (S.D.N.Y. 2010) (holding that "anything that might further the interpretation" of the disputed contract provision "is relevant and subject to discovery") (collecting cases). And if ▮▮▮ and ▮ executed an agreement concurrently with a license, that agreement is necessary to a full understanding of the license. Consider: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That agreement would be relevant to a dispute over the reasonableness of the license fee. We don't know if any concurrent agreements have provisions relevant to our dispute, because we haven't seen them, because you haven't produced them. You must. *See Trilegiant Corp.*, 272 F.R.D. at 364-65 (ordering plaintiff to produce documents concerning disputed contract provisions and "the drafting and use of such contract language" in order to aid in the interpretation of those provisions).

As to the communications requested in request nos. 3 and 4, you indicated that communications regarding the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and any other agreements are irrelevant to our dispute. Again, not so. We can think of several categories of communications that would be highly relevant, although of course there may be many more. First, communications between ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and any other agreements, if they exist. The negotiation history of a contract is highly relevant to understanding its meaning. *67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 248-49 (1975) (recognizing that the court can look to the "surrounding facts and circumstances to determine the intent of the parties," including "evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution" in order to explain ambiguities in a written agreement). Second, communications between ▮▮▮ and ▮ after execution of any agreements are also highly relevant, as course of performance also sheds light on the meaning of a contract. *See Fed. Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 44 (1999) ("the parties' course of performance under the contract is considered to be the most persuasive evidence of the agreed intention of the parties") (internal quotation marks and citation omitted); *Credit Suisse Sec. (USA) LLC v. Grand Circle LLC*, Case No. 11-232, 2013 WL 5312511, at



**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 4

\*11 (S.D.N.Y. Sept. 23, 2013) ("The parties' objective manifestations of their intent—namely, their words to each other and their deeds—are significantly more probative than uncommunicated subjective intent.") (internal quotation marks and citation omitted). Third, communications within ARC can shed light on how ARC interpreted any agreements. *See Dataflow, Inc. v. Peerless Ins. Co.*, Case No. 11-1127, 2014 WL 148685, at \*4 (S.D.N.Y. Jan. 13, 2014) (finding that defendant's internal communications showing its interpretation of a written agreement are relevant to its interpretation of the agreement). All of these communications are highly relevant to our claims about the meaning of that agreement. *See 67 Wall St.*, 37 N.Y.2d at 248-49 (recognizing that "evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution" may be used to explain ambiguities in a written agreement). Fourth, communications between ARC and CCE are highly relevant. In opposing HMD Global's motion to dismiss, CCE claimed that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Sur-reply at 4 (citing *Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*, Case No. 17-715, 2019 WL 1399927, at \*3 (E.D. Tex. Mar. 28, 2019); Opp. at 6. We are entitled to test those claims by probing the communications that actually occurred. Suppose, for example, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ If that occurred, we are entitled to that evidence. Fifth and finally, communications between ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

You indicated that these requests are overly broad, not proportionate to the needs of the case, and designed to harass ARC. Again, not so. We have explained their relevance already in detail, which should also dispatch any allegation of harassment. As you know, Rule 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense" so long as it is "proportional to the needs of the case." "A 'relevant matter' under Rule 26(b)(1) is any matter that 'bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.' Relevancy should be 'construed "liberally and with common sense" and discovery should be allowed unless the information sought has no conceivable bearing on the case.'" *Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*, Case No. 15-979, 2016 WL 7486606, at \*3 (C.D. Cal. Oct. 27, 2016) (citations omitted). "Under the general relevance requirements set forth in Rule 26(b), [a] subpoena may command the production of documents that are 'nonprivileged' and are 'relevant to any party's claim or defense.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

Case 8:20-mc-00127 Document 2-13 Filed 12/21/20 Page 6 of 13 Page ID #:643
REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 5

Finally, you claim that searching for these documents would be unduly burdensome. But you support this argument only by claiming that searching emails is generally burdensome, and providing no specific grounds for this claim. Courts routinely order searching of emails, *In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litig.*, Case No. 11-2274, 2012 WL 10450139, at *5 (C.D. Cal. June 7, 2012) ("Defendant must search all of its email servers and produce all emails to/from/relating to the named plaintiffs, including defendant's internal communications concerning those emails"); *Aquastar Pool Prods., Inc. v. Color Match Pool Fittings, Inc.*, Case No. 18-mc-94, 2019 WL 856860, at *4 (C.D. Cal. Jan. 23, 2019) ("With these additions to the list, defendant must search for and produce emails responsive to RFP Nos. 12-14 as narrowed."), even to third-party subpoena respondents contesting enforcement. *See also Liqwd, Inc. v. L'Oreal USA, Inc.*, Case No. 19-15, Docket. No. 33 (C.D. Cal. Feb. 28, 2019). You have not articulated the specific burden you would suffer, as you must to avoid discovery. *Keith H. v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 655-56 (C.D. Cal. May 18, 2005) ("The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); *In re Citimortgage*, 2012 WL 10450139, at *4 ("Generalized objections that a discovery request is burdensome without resort to specific reasons is . . . insufficient to justify a refusal to respond.") (quoting *Davidson v. Goord*, 215 F.R.D. 73 (W.D.N.Y. 2003) (alterations in original)). It is likely that no burden exists. Public records show that ARC has fewer than 20 employees, and in our experience negotiations regarding agreements such as those we have requested are typically done by a small number of people. It should not be burdensome for ARC to find out who on its staff worked on these agreements, and ask them to search for relevant documents. You have not stated with any specificity that it is.

In short, request nos. 1-4 seek documents highly relevant to the foundational issue of standing, are more than proportionate to the needs of the case, and are not burdensome to produce. Unless ARC agrees to produce all documents responsive to these requests by the end of this month, we will seek an order compelling that production.

    **B.**    **Requests Nos. 5-12**

HMD Global's Request Nos. 5-12 seek:

5. All documents concerning any agreement between ARC and any other person or persons that includes any patent license including a patent owned in whole or part by one or more Acacia Entities.

6. All documents concerning any agreement executed concurrently with any agreement between ARC and any other person or persons that includes any patent license including a patent owned in whole or part by one or more Acacia Entities.

7. All documents concerning communications concerning any agreement between ARC and any other person or persons that includes any patent license including a patent owned in whole or part by one or more Acacia Entities.

8. All documents concerning communications concerning negotiations leading to any agreement between ARC and any other person or persons that includes any patent license including a patent owned in whole or part by one or more Acacia Entities or any

**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 6

>    agreement executed concurrently with any agreement between ARC and any other person or persons that includes any patent license including a patent owned in whole or part by one or more Acacia Entities.
>
> 9. All documents concerning any agreement between ARC and any other person or persons that includes any patent license including a patent that one or more Acacia Entities has authority to license.
>
> 10. All documents concerning any agreement executed concurrently with any agreement between ARC and any other person or persons that includes any patent license including a patent that one or more Acacia Entities has authority to license.
>
> 11. All documents concerning communications concerning any agreement between ARC and any other person or persons that includes any patent license including a patent that one or more Acacia Entities has authority to license.
>
> 12. All documents concerning communications concerning negotiations leading to any agreement between ARC and any other person or persons that includes any patent license including a patent that one or more Acacia Entities has authority to license or any agreement executed concurrently with any agreement between ARC and any other person or persons that includes any patent license including a patent that one or more Acacia Entities has authority to license.

Stated more succinctly, these requests seek documents and communications concerning any agreement executed by ARC that, like ███████████████████████████████████████████ ███████████████ includes a license to a patent owned by an ARC affiliate or to which an ARC affiliate has rights, as well as agreements executed concurrently with any such agreements. These requests do not concern all licenses between any ARC affiliate and any third party, or even all licences between ARC and third parties. Instead, they concern only licenses, ██████████████████████████ ███████████ that are executed by ARC and include a license to a patent owned by an ARC affiliate or to which an ARC affiliate has rights, as well as agreements executed concurrently with any such agreements.

You have confirmed that ARC will produce "any agreements involving itself and CCE or the '923 patent," but refuses to produce any other documents.

You raised your global objection regarding these requests; for the reasons we have explained above in Section 1.A, this objection has no merit.

You indicated that any other agreements between ARC and any other persons or persons responsive to request nos. 5, 6, 9, and 10 are irrelevant to our dispute. We disagree. If ARC is in the practice of entering into similar agreements to the license from ███ to ███ but with other parties, those agreements would be relevant to the interpretation of the license from ███ to ███ and may also provide other independent bases to undercut CCE's standing in this case. You must produce any such agreements. *See Trilegiant Corp.*, 272 F.R.D. at 364-65 (ordering plaintiff to produce documents concerning disputed contract provisions and "the drafting and use of such contract language" in order to aid in the

**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 7

interpretation of those provisions). Conversely, if ARC has never executed an agreement similar to this one, that is relevant as well.

You indicated that communications regarding such licenses are irrelevant to our dispute. Again, we disagree. As we have explained above in Section 1.B, there are several categories of communications that are highly relevant to our claims about the meaning of the license from ▌ to ▌ Those categories also apply here, and for the same reasons these communications are highly relevant to our claims. ARC must produce any such communications.

You indicated that these requests are overly broad, unduly burdensome, not proportionate to the needs of the case, and designed to harass ARC; we disagree for the reasons we explained in Section 1.B.

In short, request nos. 5-12 also seek documents highly relevant to the foundational issue of standing, are more than proportionate to the needs of the case, and are not burdensome to produce. Unless ARC agrees to produce all documents responsive to these requests by the end of this month, we will seek an order compelling that production.

    **C.**     **Requests Nos. 13-15**

HMD Global's Request Nos. 13-15 seek:

> 13. All documents concerning all communications, including any proposals to license, negotiations, discussions, offers to license, presentations, or any other communications, regarding any potential agreement concerning the '923 patent, including any potential license including the '923 patent.
>
> 14. All documents concerning any right, title, or interest in the '923 patent.
>
> 15. All documents concerning any valuations or attempts to value the '923 patent or any portfolio containing the '923 patent.

Stated more succinctly, these requests seek documents regarding communications regarding actual or potential agreements concerning the '923 patent, ownership of the '923 patent and valuations of the '923 patent or any portfolio including the '923 patent.

You indicated that ARC would be willing to search for at least some documents regarding these categories, but had to consult with your client regarding an exact scope of production. Please let us know with specificity the scope of search you believe is appropriate. For the reasons we explain below, we believe ARC should agree to produce all documents responsive to this request.

You raised your global objection regarding these requests; for the reasons we have explained above in Section 1.A, this objection has no merit.

Request no. 13 seeks communications concerning any actual or potential agreements regarding the '923 patent. These are highly relevant. If, for example, ARC sent a series of proposals to license a portfolio including the '923 patent to ▌ or anyone else, those communications would be highly relevant to the

**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 8

motion to dismiss. Similarly, communications with ▇ regarding any portfolio including the '923 patent would be highly relevant for the reasons we explained above in Section 1.B.

Request no. 14 seeks documents regarding ownership of the '923 patent. In opposing HMD Global's motion to dismiss, CCE claimed "that all rights to the '923 patent belong to CCE." Opp. at 3. We are entitled to test this assertion through discovery. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Request no. 15 seeks documents regarding valuations of the '923 patent or any portfolio including the '923 patent. Again, these documents are highly relevant. As we explained above, ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and to understand ARC's internal view of the '923 patent and any portfolio containing it. Consider, for example, if ARC internal documents describe a portfolio including the '923 patent as "one of ARC's most valuable assets." We are entitled to this evidence.

You indicated that these requests are overly broad, unduly burdensome, not proportionate to the needs of the case, and designed to harass ARC; we disagree for the reasons we explained in Section 1.B.

In short, request nos. 13-15 seek documents highly relevant to the foundational issue of standing, are more than proportionate to the needs of the case, and are not burdensome to produce. Unless ARC agrees to produce all documents responsive to these requests by the end of this month, we will seek an order compelling that production.

### D. Requests Nos. 16-17

HMD Global's Request Nos. 16-17 seek:

16. All documents concerning the relationship between ARC and CCE.

17. All communications concerning the relationship between ARC and CCE.

Stated more succinctly, these requests seek documents, including communications, concerning the relationship between ARC and CCE.

You indicated that ARC would be willing to search for at least some documents regarding these categories, but had to consult with your client regarding an exact scope of production. Please let us know with specificity the scope of search you believe is appropriate. For the reasons we explain below, we believe ARC should agree to produce all documents responsive to this request.

**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 9

You raised your global objection regarding these requests; for the reasons we have explained above in Section 1.A, this objection has no merit.

You indicated that documents and communications concerning the relationship between ARC and CCE are irrelevant to our dispute. We disagree. I opposing HMD Global's motion to dismiss, CCE claimed that [REDACTED] Sur-reply at 4 (citing *Polaris*, 2019 WL 1399927, at *3; Opp. at 6. We are entitled to test these statements by understanding the full scope of the relationship between ARC and CCE.

You indicated that these requests are overly broad, unduly burdensome, not proportionate to the needs of the case, and designed to harass ARC; we disagree for the reasons we explained in Section 1.B.

In short, request nos. 16-17 seek documents highly relevant to the foundational issue of standing, are more than proportionate to the needs of the case, and are not burdensome to produce. Unless ARC agrees to produce all documents responsive to these requests by the end of this month, we will seek an order compelling that production.

### E.     Requests Nos. 18-23

HMD Global's Request Nos. 18-23 seek:

18. All documents concerning the "Assignment and Assumption Agreement" filed with the United States Patent and Trademark Office at Patent Reel 033405, Frame 0104 to 0106.

19. All documents concerning the "Patent Security Agreement" filed with the United States Patent and Trademark Office at Patent Reel 052853, Frame 0153 to 0404.

20. All documents concerning the "Release of Security Interest in Patents" filed with the United States Patent and Trademark Office at Patent Reel 053654, Frame 0254 to 0489.

21. All documents concerning communications concerning the "Assignment and Assumption Agreement," "Patent Security Agreement," or "Release of Security Interest in Patents" described in the three preceding paragraphs.

22. All documents concerning any relationship between ARC and Starboard.

23. All communications concerning any relationship between ARC and Starboard.

Stated more succinctly, these requests seek documents, including communications, concerning the assignment agreement of the '923 patent by AR Group ("ARG") to CCE, the security interest to Starboard Value Intermediate Fund LP ("Starboard"), and the release of that security interest.

**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 10

You indicated that ARC would be willing to search for at least some documents regarding these categories, but had to consult with your client regarding an exact scope of production. Please let us know with specificity the scope of search you believe is appropriate. For the reasons we explain below, we believe ARC should agree to produce all documents responsive to this request.

We don't think you raised your global objection regarding these requests but, if you did, for the reasons we have explained above in Section 1.A, this objection has no merit.

You indicated that documents and communications concerning these agreements are irrelevant to our dispute. Not so. Request no. 18 concerns the agreement CCE contends "transferred all rights in the '923 patent [REDACTED] to CCE." Opp. at 2. Suppose, for example, that contemporaneous documents exist that explain the purpose of this assignment and how the assignment affects any rights ARC [REDACTED] may have concerning CCE or the '923 patent. Such responsive documents would be highly relevant to the ownership of the '923 patent and the authority to license it.

Requests nos. 19-20 and 22-23 concern the security interest ARC provided to Starboard. The "Patent Security Agreement" filed with the United States Patent and Trademark Office at Patent Reel 052853, Frame 0153 to 0404, granted Starboard a security interest in the '923 patent, and referenced a Security Agreement, which CCE has not produced. The "Release of Security Interest in Patents" filed with the United States Patent and Trademark Office at Patent Reel 053654, Frame 0254 to 0489, shows that on June 30, 2020, Starboard rescinded its security interest in the '923 patent. These agreements and documents related to them may independently undermine CCE's standing in this case and raise numerous issues which are highly relevant to our standing claims. *See Uniloc USA, Inc.*, No. 18-358, Docket No. 118 (N.D. Cal. Sept. 2, 2019) (order of United States Court of Appeals for the Federal Circuit remanding to the district court to "supplement the record, determine whether Uniloc has standing in the first instance, and, if appropriate, cure any jurisdictional defects" after Apple learned on appeal of patent licenses and assignments which threatened Uniloc's standing to sue). To name a few: what are the terms of the Security Agreement, including when does an Event of Default occur and what is the Collateral; whether Starboard at any point in time after execution of the Patent Security Agreement had any right in the asserted patent; whether CCE lost or shared in any right to the asserted patent with Starboard; whether CCE defaulted under the Security Agreement after execution of the Patent Security Agreement; and why Starboard released the security interest. These requests seek to probe these issues. For the same reasons, communications related to these documents, sought in request no. 21, would also be highly relevant.

You indicated that these requests are overly broad, unduly burdensome, not proportionate to the needs of the case, and designed to harass ARC; we disagree for the reasons we explained in Section 1.B.

In short, request nos. 18-23 seek documents highly relevant to the foundational issue of standing, are more than proportionate to the needs of the case, and are not burdensome to produce. Unless ARC agrees to produce all documents responsive to these requests by the end of this month, we will seek an order compelling that production.

    **F.**    **Requests Nos. 24-26**

HMD Global's Request Nos. 24-26 seek:

**Highly Confidential—Outside Attorneys' Eyes Only**

Jonathan H. Rastegar
November 3, 2020
Page 11

> 24. All documents concerning this litigation or other CCE litigation.
>
> 25. All documents concerning communications between ARC and CCE concerning this litigation or other CCE litigation.
>
> 26. All documents concerning communications between ARC and CCE concerning any actual or potential litigation concerning the '923 patent.

Stated more succinctly, these requests seek documents, including communications, concerning this litigation and other litigation concerning the '923 patent.

You indicated that ARC would be willing to search for at least some documents regarding these categories, but had to consult with your client regarding an exact scope of production. Please let us know with specificity the scope of search you believe is appropriate. For the reasons we explain below, we believe ARC should agree to produce all documents responsive to this request.

We don't think you raised your global objection regarding these requests but, if you did, for the reasons we have explained above in Section 1.A, this objection has no merit.

You indicated that documents and communications concerning these agreements are irrelevant to our dispute. We disagree. Responsive documents, which would include, for example, documents discussing issues related to the ownership of or ability to license the '923 patent in view of this litigation or potential litigation could, among other things, illustrate ARC and CCE's understanding of the standing issue central to our motion to dismiss. *See* Section 1.B. Additionally, responsive documents concerning ARC's control over CCE and the '923 patent may also show the relationship between ARC and CCE and the '923 patent and thus would also be highly relevant to the claims raised in our motion to dismiss. Responsive communications would be relevant for the same reasons. *Id.*

You indicated that these requests are overly broad, unduly burdensome, not proportionate to the needs of the case, and designed to harass ARC; we disagree for the reasons we explained in Section 1.B.

In short, request nos. 24-26 seek documents highly relevant to the foundational issue of standing, are more than proportionate to the needs of the case, and are not burdensome to produce. Unless ARC agrees to produce all documents responsive to these requests by the end of this month, we will seek an order compelling that production.

**2.     Deposition Topics**

Because the deposition topics track the substance of our documents requests, in the interest of brevity we will not again state the reasons we believe the testimony we seek is proper. You indicated that ARC would provide a witness in response to the subpoena, and we believe that your offers of testimony track your offers of documents; if that is incorrect, please let us know. To the extent that we cannot agree on the scope of testimony, we will move to compel testimony to match the scope of document production we have described above.

Highly Confidential—Outside Attorneys' Eyes Only

Jonathan H. Rastegar
November 3, 2020
Page 12

Finally, unless ARC agrees that a deposition will occur two weeks after completion of document production, we will move to compel a deposition by then.

**3.    Next Call**

We are prepared to meet and confer further regarding these issues to finalize any issues in dispute before moving to compel. We are available at 11 a.m. CT on November 5. Please confirm that you are as well or in the alternative when you are available to meet and confer on November 5 or 6. The dial in number is +1 (415) 854 6661. No PIN is necessary. I look forward to speaking again with you then. Thank you for your continued time and courtesy in this matter.

Very Truly Yours,

Jennifer A. Kash