1  Stephanie R. Wood (SBN: 242572)
       *swood@bcpc-law.com*
2  Jeffrey R. Bragalone (*pro hac vice* application pending)
       *jbragalone@bcpc-law.com*
3  **BRAGALONE CONROY PC**
   2200 Ross Ave., Suite 4500W
4  Dallas, Texas 75201
   Tel: (214) 785-6670
5  Fax: (214) 785-6680

6  Ben M. Davidson (SBN: 181464)
       *Ben@dlgla.com*
7  **DAVIDSON LAW GROUP, ALC**
   4500 Park Granada Blvd., Suite 202
8  Calabasas, California 91302
   Tel: (818) 918-4622
9
   Attorneys for Respondent
10 Acacia Research Corporation

11                **UNITED STATES DISTRICT COURT**
12                **CENTRAL DISTRICT OF CALIFORNIA**
                        **SOUTHERN DIVISION**
13

| | |
|---|---|
| HMD GLOBAL OY | Case No. 8:20-mc-127 |
|  Movant, | |
| | **MEMORANDUM OF LAW IN OPPOSITION TO MOTION BY HMD GLOBAL OY TO COMPEL PRODUCTION OF DOCUMENTS FROM ACACIA RESEARCH CORPORATION** |
|  vs. | |
| ACACIA RESEARCH CORPORATION, | |
|  Respondent. | Judge: John D. Early<br>Date: January 21, 2021<br>Time: 10:00 a.m. PST<br>Place: [TBD]<br>Discovery Cutoff: March 18, 2021<br>Pretrial Conference: June 29, 2021<br>Trial Date: August 2, 2021 |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **Table of Contents**

I.    INTRODUCTION .................................................................................... 3

II.   BACKGROUND ..................................................................................... 4

   A.  The Underlying Action ..................................................................... 4

   B.  While Working on Its Portion of the Joint Stipulation, ARC Alerts HMD to an Impending Protective Order Violation ........................................ 5

   C.  CCE Produces Documents Related to the Starboard Agreement ................... 5

III.  ARGUMENTS AND AUTHORITY ......................................................... 6

   A.  HMD's Requests Seek Irrelevant Documents to Contradict the Unambiguous Terms of an Integrated Agreement. ........................................ 6

   B.  HMD's Requests are Not Proportional to the Needs of the Case. ................ 11

     1.  HMD's Requests Have No Importance in Resolving the Motion to Dismiss ................................................................................ 12

     2.  HMD's Requests are Overly Burdensome and Inappropriate in Light of Discovery Limitations in Place in the Underlying Litigation. ................ 13

     3.  The Remaining Proportionality Factors Strongly Favor ARC. ................ 15

   C.  HMD Refused All Efforts of ARC to Compromise. ..................................... 16

   D.  This Court is Authorized to Transfer this Action to the Eastern District of Texas ............................................................................................. 17

   E.  If ARC Must Produce the Documents, HMD Should Bear the Costs. ......... 18

IV.   CONCLUSION .................................................................................... 19

# <u>Table of Authorities</u>

**Cases**

*Arista Records LLC v. Lime Grp. LLC*,
 2011 WL 781198 (C.D. Cal. 2011) ...................................................................14

*Belden v. County of San Bernardino*,
 2020 WL 3129208 (C.D. Cal. 2020) ..................................................................8

*Bresk v. Unimerica Ins. Co.*,
 2017 WL 10439831 (C.D. Cal. 2017) ................................................................11

*Enzo APA & Sons, Inc. v. Geapag A.G.*,
 134 F.3d 1090 (Fed. Cir. 1998) ................................................ 3, 6, 12, 13, 15, 16

*Federal Deposit Ins. Corp. v. LSI Appraisal LLC*,
 2014 WL 12561102 (C.D. Cal. 2014) ................................................................18

*Laub. v. Horbaczewski*,
 2020 WL 5093089 (C.D. Cal. 2020) ........................................................... 12, 13

*Legal Voice v. Stormans Inc.*,
 738 F.3d 1178 (9th Cir. 2013) ...........................................................................18

*Northrop Grumman Corp. v. Factory Mutual Ins. Co.*,
 2012 WL 12875772 (C.D. Cal. 2012) .......................................................... 14, 18

*Schron v. Troutman Sanders LLP*,
 20 N.Y.3d 430, 436, 986 N.E.2d 430 (2013) ..................................... 8, 9, 12, 15

*Strategic Partners, Inc. v. FIGS, Inc.*,
 2020 WL 4354172 (C.D. Cal. 2020) ..................................................................11

*Town New Dev. Sales & Mktg. LLC v. Price*,
 127 A.D.3d 549, 549, 5 N.Y.S.3d 734 (1st Dep't 2015).....................................9

*Zubulake v. UBS Warburg LLC*,
 217 F.R.D. 309 (S.D.N.Y. 2003) .......................................................................18

**Rules**

Fed. R. Civ. P. 26(b)(1)............................................................................... 11, 15

Fed. R. Civ. P. 45(d)(2)(B)(ii) .........................................................................18

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

# I.  INTRODUCTION

Movant HMD Global Oy ("HMD") misstates the question before this Court. HMD is not simply seeking documents "related" to the agreement at issue in the underlying Eastern District of Texas action; HMD is seeking irrelevant parol evidence in an attempt to impute ownership rights to the patent in suit based upon an agreement between Respondent Acacia Research Corporation ("ARC") and ███ ███████████████████████████████████████ But it is undisputed that <u>no written instrument</u> has ever conveyed to ARC any ownership or rights to license the '923 Patent, and Federal Circuit law requires such a written instrument in order to obtain rights to a patent. *See Enzo APA & Sons, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). Moreover, the ███████████ is clear and unambiguous on its face; indeed, HMD does not even argue that an ambiguity exists in ██████████. As such, these dual reasons render the parol evidence that HMD seeks irrelevant as a matter of law.

Further, compliance with HMD's overbroad document requests would create an extreme burden on ARC. HMD seeks discovery via its subpoena that is beyond that which is allowed by the Court in the underlying litigation. For example, in the underlying litigation, HMD is required to meet certain criteria before it can request email production from Cellular Communications Equipment LLC ("CCE"), the plaintiff in the underlying litigation.  Yet, despite the fact that HMD has not met that criteria, by demanding extraordinarily burdensome email discovery from ARC (an affiliate of CCE and a non-party), HMD is attempting an "end-run" around the email production limitations in the Eastern District of Texas.  If sought from CCE, HMD would not be permitted to obtain this burdensome email discovery.

Although ARC agreed to produce certain information in response to HMD's subpoena, HMD failed to offer a single concession or compromise to its incredibly overbroad subpoena. In addition to being completely irrelevant to the underlying issue in HMD's meritless motion to dismiss, the requests are breathtakingly

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

overbroad. HMD refused to limit even a single request as to time or scope.

Further, HMD misrepresents ARC's actions in this case. The assertion that ARC "refused to participate in the joint stipulation process" is false. While working on its portion of the joint stipulation, ARC realized that HMD's intended disclosure would violate the terms of the Protective Orders issued in the underlying litigation. ARC and CCE informed HMD of this potential violation well within the time frame for response to the joint stipulation. According to the terms of the Protective Orders, HMD was required to cease its actions until the potential violation was resolved. After the Eastern District of Texas ruled on the protective order issue, and required HMD to file the highly confidential materials under seal, HMD made *no attempt* to communicate with ARC regarding the joint stipulation, instead choosing to unilaterally file its Motion.

The true question before this Court is whether this Court should compel ARC, a non-party, to spend millions of dollars and months of time searching for emails that, as a matter of law, would be irrelevant and inadmissible for the very purpose for which HMD argues it needs them. HMD's requests are also a blatant end-run around the discovery limitations to which it agreed in the underlying litigation. Accordingly, to the extent the Court does not transfer this dispute back to the Eastern District of Texas pursuant to ARC's contemporaneous motion to transfer pursuant to Rule 45(f), the Court should deny the motion to compel. If this Court does grant HMD's Motion, the costs should be borne by HMD.

## II. BACKGROUND

### A. The Underlying Action

CCE sued HMD for patent infringement in the Eastern District of Texas. On September 21, 2020, HMD filed a Motion to Dismiss based on a theory that CCE (the plaintiff in the underlying litigation) lacks standing due to ███████████████ ████████████ That motion has been fully briefed. Now, three months later, HMD belatedly moves to compel ARC to produce documents, including emails, in

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

response to its boundless requests for parol evidence supposedly related to interpretation of ██████████.

## B. While Working on Its Portion of the Joint Stipulation, ARC Alerts HMD to an Impending Protective Order Violation

HMD correctly states the dates regarding the parties' attempted joint stipulation, but misleadingly attempts to paint ARC's response as obstructive and delayed—neither of which is true, nor relevant to the merits. ARC informed HMD immediately upon realizing that HMD's proposed filing would violate underlying Protective Orders but could reach no compromise. *See* Chouraki Dec., Exs. T and U.[1] Accordingly, CCE filed a Motion to Enforce the Protective Orders in the Eastern District of Texas. Chouraki Dec., Ex. W. Under the terms of the Protective Orders, HMD was required to stop all actions related to the potential violation until the court resolved the motion. Wood Dec., Ex. A., at ¶ 24. The Eastern District of Texas made no ruling on HMD's interpretation of the Protective Orders. Chouraki Dec., Ex. V. Instead, the court conditionally granted HMD leave to use the highly confidential materials at issue in a joint stipulation to be filed with this Court. *Id*. HMD could not have filed the highly confidential information without such leave.

## C. CCE Produces Documents Related to the Starboard Agreement

On June 4, 2020, CCE and Starboard Value Intermediate Fund ("Starboard") executed a "Patent Security Agreement" granting Starboard a security interest (but explicitly not ownership rights) in the '923 patent. On June 30, 2020, Starboard discharged that security interest in a "Release of Security Interest in Patents." HMD claims that either the Patent Security Agreement or the subsequent Release may also affect CCE's standing—despite the plain language of both agreements proving otherwise. *See, e.g.*, Memorandum of Law in Support of Motion to Compel ("HMD Memo"), Dkt. No. 3-1 at 17. After a thorough investigation, on December 3, CCE made a supplemental production to HMD that included all documents CCE possessed in relation to Starboard's release of its security interest

---

[1] All references to the "Chouraki Dec." refer to Dkt. No. 1-2 and its exhibits Dkt. Nos. 1-3-1-40.

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

in the '923 patent. Wood Dec. at ¶ 2. This included a fulsome production of all documents, other than emails, that CCE possessed in connection with the release. *Id*. Remarkably, HMD makes no mention of this production in its motion; indeed, though HMD includes the release when discussing the documents it seeks relating to Starboard, it fails to inform the Court that it has the documents. *See* HMD Memo at 17-18. On December 30, 2020, CCE produced all documents, other than emails, that it possessed in connection the Patent Security Agreement.

## III.   ARGUMENTS AND AUTHORITY

### A. HMD's Requests Seek Irrelevant Documents to Contradict the Unambiguous Terms of an Integrated Agreement.

In the Texas District Court, CCE submitted uncontradicted evidence that, as reflected in publicly available records on file with the United States Patent Office, CCE is the only entity with any ownership interest in the '923 Patent (the patent that CCE alleges in the underlying action that HMD is infringing). Not only does the United States Patent Office recognize CCE's ownership, it is undisputed that no written instrument has ever conveyed to ARC any ownership rights in the '923 Patent. *See* Declaration of Marc Booth at ¶¶ 5-10.  Nor has ARC ever been a party to any agreement that assigned to ARC any rights in the '923 patent.  *Id.*  Because the Federal Circuit ***requires*** a written instrument in order to obtain rights to a patent, *see Enzo APA & Sons, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998), it is established as a matter of law that ARC does not have, nor has it ever had, any ownership rights to the '923 patent.

Notwithstanding these undisputed facts, HMD makes a legally impossible argument that ARC is a necessary party to the action pending in the Eastern District, and that without ARC, CCE does not have standing to sue HMD. Specifically, HMD contends that ███████████████████████████████ ████████████████████████████████████████████████████████ ███████     But HMD is forced to misrepresent the language of ████████████ in order to make this allegation.



Even the excerpts that HMD quotes in portions of its

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

Motion support ARC's arguments. For example, HMD notes that ████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
█████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████

Despite the unambiguous language of ████████████████ and the uncontested ownership records at the PTO, HMD now seeks extensive discovery into parol evidence related to ███████████████, as well as broad discovery supposedly related to ARC's "course of dealing" as to wholly unrelated patents and entities. But no amount of parol evidence can change the unambiguous terms of ████████████. *See, e.g.*, *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436, 986 N.E.2d 430, 433–34 (2013) ("Parol evidence—evidence outside the four corners of the document—is admissible only if a court finds an ambiguity in the contract.").[2] Moreover, HMD cannot be heard to assert in its motion to dismiss (filed in the underlying action) that ██████████████ is unambiguous, while pursuing in this matter a legal argument that requires ambiguity ███████████████
██████████ *See, e.g.,* Chouraki Dec., Ex. B at pp. 9-11 █████████████████
███████████████████████████████████████████████████████████████
█████████████ Chouraki Dec., Ex. D at p. 2 ("████████████████████t
███████████████████ thus confirms" HMD's theory of the case). Indeed, the cases cited by HMD all rely upon ***ambiguities*** in a written agreement as a justification for the relevance of evidence beyond the four corners of the agreement. HMD Memo at 12:6-19. As such, the discovery that HMD seeks is irrelevant as a matter of law, and HMD's motion should be denied. *See Belden v. County of San Bernardino*, 2020 WL 3129208, *4 (C.D. Cal. 2020) (Kato, M.J.) (Denying motion

---

[2] New York state law applies. Chouraki Dec., Ex. A at ¶ 6.15 (choice of law provision).

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

to compel where requests, which included emails, related to documents and actions
that were not relevant to claims in the case).

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████

       Thus, ███████████████ itself states that the information HMD seeks (even
the hypothetical documents HMD imagines in its sections of its Motion), cannot
possibly alter the unambiguous terms of ██████████████, as any and all prior
understandings or prior negotiations are incorporated into █████████████ and
superseded by its terms. *See id; Town New Dev. Sales & Mktg. LLC v. Price*, 127
A.D.3d 549, 549, 5 N.Y.S.3d 734 (1st Dep't 2015) ("by the mechanism of an
integration clause the parties make explicit their intent to have the current
agreement be exclusive with respect to the object of their contract and to bar either
party from introducing evidence of a collateral agreement"). As such, the full
application of the parol evidence rule applies. *Schron*, 20 N.Y.3d at 436 ("where a
contract contains a merger clause, a court is obliged to require full application of
the parol evidence rule in order to bar the introduction of extrinsic evidence to vary
or contradict the terms of the writing.") (internal quotes omitted).

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

HMD's reference to the Starboard Patent Security Agreement is another attempt to manufacture a standing argument where none exists. In the Starboard transaction, CCE – the sole owner of the '923 patent – granted a security interest in the '923 patent and other assets as collateral ███████████████████████ ███████████████████. Booth Dec. at ¶ 18. That security interest was later released. Booth Dec. at ¶ 20. The Starboard Patent Security Agreement itself forecloses any argument that ARC owns the '923 patent or transferred any rights in connection with the Starboard transaction, as it explicitly states that "nothing in this Patent Security Agreement or the Security Agreement assigns or transfers to [Starboard] any control or ownership interest in any of the Collateral, and such Grantor [CCE] retains any and all such rights." Wood Dec., Ex. C at CCE_HMD_000490. Accordingly, the Starboard Patent Security Agreement cannot alter CCE's standing in the underlying Eastern District of Texas case. Further, during the meet and confer process leading up to HMD's previous draft joint stipulation, counsel for ARC told HMD's counsel that documents related to the Starboard Patent Security Agreement would be produced by CCE in the underlying Eastern District of Texas litigation. *See* Chouraki Dec., Ex. R. And prior to the filing of HMD's Motion, CCE had already produced all documents and agreements in its possession (excluding emails) that are related to Starboard's release of its security interest in the '923 patent. Wood Dec. at ¶ 2. Further, as of ARC's filing of this Response, CCE has produced all documents and agreements in its possession (excluding emails) that are related to Starboard's Patent Security Agreement. Wood Dec. at ¶ 3.

Similar to ████████████, the unambiguous terms of the Starboard Patent Security Agreement do not support any argument that ARC (and not CCE) owns the '923 patent. Accordingly, HMD's motion to compel production of the Starboard Security Agreement is moot, and the Court should refuse HMD's fishing expedition for irrelevant emails and other documents "related" to the Starboard

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

Patent Security Agreement, as there is no reasonable basis to argue that documents related to the Starboard Patent Security Agreement will somehow show that ARC owns the '923 patent.

In an attempt to support its motion, HMD proposes multiple hypothetical communications and documents that are based on nothing more than HMD's conjecture, speculation, and wishful thinking. *See* HMD Memo at 9:6-10; 11:13-16; 14:7-12. But a "mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel." *Bresk v. Unimerica Ins. Co.*, 2017 WL 10439831, *5 (C.D. Cal. 2017) (Segal, M.J.). "Rather, the moving party must have a colorable basis for is belief that relevant, responsive documents exist and are being improperly withheld." *Id*. HMD has no such "colorable basis" for these hypothetical documents. Rather, this is a classic fishing expedition; indeed, HMD admits as much in its Motion, conceding that it "has no idea whether these documents exist, of course." HMD Memo at 9:11. *See Strategic Partners, Inc. v. FIGS, Inc.*, 2020 WL 4354172, *9 (C.D. Cal. 2020) (Stevenson, M.J.) (In denying motion to compel: "The Court strains to understand how that request is anything other than a fishing expedition to discovery support for a conclusory [] defense, or how access to that information would assist [movant] in defending against [respondent's] claims.")

**B. HMD's Requests are Not Proportional to the Needs of the Case.**

Not only are HMD's requests directed to irrelevant subject matter, but they are also not "proportional to the needs of the case" as required by Rule 26. When evaluating proportionality, Rule 26 requires that the Court consider: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). All of the proportionality factors weigh in ARC's favor. Two of the

factors, "the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," weigh particularly strongly against HMD's requests. *Id.*; *see also Laub. v. Horbaczewski*, 2020 WL 5093089, *9 (C.D. Cal. 2020) (Stevenson, M.J.) (denying defendant additional discovery in the form of examination of text messages where defendant had already filed a motion for summary judgment, and "their insistence that additional responsive text messages must exist [was] entirely speculative").

### 1. HMD's Requests Have No Importance in Resolving the Motion to Dismiss.

As discussed above, HMD's requests relating to CCE's standing with respect to ARC can have no import to the issues at hand in the underlying litigation for two reasons. First, any documents that HMD might hope to use to alter the terms of ███████████ would be inadmissible under the parol evidence doctrine, and therefore irrelevant. *See Schron*, 20 N.Y.3d at 436 (2013) Documents that cannot possibly be used as evidence to support the motion cannot reasonably be considered "important" in resolving the motion. Second, HMD's standing argument requires proving that a <u>written agreement</u> conveys to ARC rights to the '923 patent, which HMD cannot prove, with or without discovery. No amount of discovery will unveil something that does not exist: there is no written agreement, either responsive to HMD's requests or otherwise, that conveys any rights in the '923 patent to ARC. Thus, as a matter of law, ARC has no rights in the '923 patent. *See Enzo*, 134 F.3d at 1093 (Fed. Cir. 1998). The discovery HMD seeks cannot change that fact; therefore, the discovery has no import to resolving the Motion to Dismiss.

HMD's own actions bolster the fact that its discovery requests are unimportant to resolving its motion. HMD's motion to dismiss is fully briefed and ripe for resolution before the Eastern District of Texas. *See* Chouraki Dec., Exs. B-E. Since HMD believes its motion can be resolved without this discovery, its

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

requests are at best tangential to the motion to dismiss—and certainly not "important" to the issues. *See Laub.*, 2020 WL 5093089 at *9 (C.D. Cal. 2020).

Additionally, HMD's requests relating to the Starboard security interest and its release are also not important to the issues in the Motion to Dismiss. As with ███ ████████████ the Starboard agreements do not convey any rights in the '923 patent to ARC and no amount of irrelevant parol evidence can change that fact. Thus, the requests regarding Starboard are equally unimportant. *See Enzo*, 134 F.3d at 1093 (Fed. Cir. 1998).

## 2. HMD's Requests are Overly Burdensome and Inappropriate in Light of Discovery Limitations in Place in the Underlying Litigation.

In its summary of the subpoena, HMD omits many of its requests in an attempt to downplay the enormous burden that would be required of ARC if ordered to comply with the requests. Importantly, ten of the document requests in the subpoena explicitly ask for documents related to "communications," which would require ARC to conduct an extensive, expensive, and time-consuming search for and review of emails. But, demanding email production via a subpoena is inappropriate for HMD, a party to the underlying lawsuit. By broadly seeking communications in this manner, HMD attempts to avoid specific procedures and limitations on requests for email discovery, limitations to which it agreed in the underlying litigation between CCE and HMD. Specifically, HMD and CCE agreed to the "Court's Model Order Regarding E-Discovery in Patent Cases" (the "ESI Order"). http://www.txed.uscourts.gov/sites/default/ files/forms/E-Discovery_Patent_Order.pdf. Among other terms, the ESI Order provides:

General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail parties must propound specific e-mail production requests.

*See* ESI Order, ¶ 6. The ESI Order also requires the parties to exchange specific lists of custodians prior to any email production requests, and email production requests must identify the proper custodians, search terms, and time frame for the request. *Id.* at ¶ 7. Demanding that ARC produce emails is an attempt to circumvent the limitations and procedures to which HMD agreed. Even if HMD denies such circumvention, the request is still inappropriate; it is unreasonable to expose a non-party like ARC to greater discovery burdens than those of the parties to the underlying litigation. *See Arista Records LLC v. Lime Grp. LLC*, 2011 WL 781198, *2 (C.D. Cal. 2011) (Wood, J.) ("When balancing the relevance of a particular discovery request against the burden of production, special weight should be given to the burden on non-parties of producing documents to parties involved in the litigation.") (internal quotes omitted).

Indeed, to produce emails responsive to these requests, ARC would be required to retrieve archived emails from employees who are no longer with the company, and painstakingly search through them, all at a significant estimated expense of multiple millions of dollars. Declaration of Eric Lucas at ¶¶ 10-18. Should responsive emails from ARC even exist, they are not segregated from emails relating to hundreds of patent-owning subsidiaries in a way that would allow for easy collection and production. *Id.* ARC estimates that it would take at least 60 days just to locate and segregate all responsive emails, plus an additional *six to eight months* to review each email communication to determine whether the email was sent on behalf of ARC and, if so, whether it relates to any of the thousands of agreements covered by the extremely broad subpoena. *Id. See Northrop Grumman Corp. v. Factory Mutual Ins. Co.*, 2012 WL 12875772, *7 (C.D. Cal. 2012) (Abrams, M.J.) (finding a request as overly burdensome where party was required to restore electronic media).

Additionally, all contract negotiations are conducted with the input of outside counsel. Lucas Dec. at ¶ 12. The information HMD seeks would therefore

require substantial additional levels of review in order to find, log, and redact privileged information from any responsive communications or documents.

Further, as noted above, HMD seeks information that is irrelevant as a matter of law under the parol evidence rule. *Schron*, 20 N.Y.3d at 436. Accordingly, the burden of compliance with HMD's overbroad email request—especially the massive undertaking required to review and produce these email communications—is unjustifiable. Notably, HMD has not and cannot refute that this substantial burden to ARC, an affiliate of the party suing HMD for patent infringement in the Eastern District of Texas, outweighs the irrelevant and inadmissible nature of the discovery it seeks.

### 3.  The Remaining Proportionality Factors Strongly Favor ARC.

One of the remaining factors is "importance of the issues at stake." Fed. R. Civ. P. 26(b)(1). While standing is an important issue in litigation, the documents HMD seeks, if they exist at all, have no bearing on CCE's standing in the underlying litigation. As discussed above, the documents HMD seeks are inadmissible parol evidence that cannot be used to alter the unambiguous terms of ███████████. *See Enzo*, 134 F.3d at 1093 (Fed. Cir. 1998). Thus, while HMD may try to paint the already-briefed dispute as "important," the collateral email evidence it seeks cannot possibly alter the agreements by any measure. Accordingly, this factor weighs heavily against HMD.

Another factor is "the parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1). While ARC technically has access to its own emails, "access" in this case implicates a far greater concern. HMD seeks emails relating to patent rights owned by CCE. It is highly likely that any emails in ARC's possession relating to the '923 patent would involve CCE, the sole owner of the patent. As discussed above, HMD's attempt to access these emails violates the limitations to which it agreed to regarding email discovery. Any demand to obtain these emails from ARC should be deferred at least until HMD pursues the avenue available to it

to obtain email discovery in the underlying litigation. And although ARC is unaware of any non-email documents that would be responsive to the subpoena that have not already been produced by CCE in the underlying litigation, CCE, as the party and the owner of the patent is in the best position to respond to any alleged deficiencies in production. Thus, this factor weighs in favor of ARC due to HMD's ability to seek discovery from CCE in the underlying litigation.

The remaining factors, the amount in controversy and the parties' resources, also weigh strongly in ARC's favor. The estimated cost of the email production that HMD seeks ranges from ████████████████. Lucas Dec. at ¶¶ 16, 18. Although the amount in controversy ████████████████████████ ████████████████████████████████████████ ████████████████ ARC, a non-party to this case, should not be forced to pay for extensive discovery into irrelevant matters. Further, regardless of ARC's resources, "consideration of the parties' resources does not … justify unlimited discovery requests addressed to a wealthy party." Fed. R. Civ. P. 26, Advisory Committee's Notes. As discussed above, HMD has made overbroad requests for irrelevant information, in spite of ARC's attempts to compromise. Thus, irrespective of what resources ARC may have, HMD's requests also fail this factor of proportionality.

After taking all the factors into consideration, HMD's discovery requests are not proportional to the needs of the case and therefore are outside the scope of discovery provided by Rule 26. Accordingly, HMD's motion should be denied.

## C. HMD Refused All Efforts of ARC to Compromise.

HMD incorrectly asserts throughout its Motion that ARC has refused to produce documents in response to HMD's subpoena. *See, e.g.*, HMD Memo at 4:23-26. However, it is HMD who has refused to compromise on the discovery sought from ARC—which highlights the unreasonableness of HMD's requests. In addition to numerous letters exchanged between HMD and ARC, ARC participated

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL

in many telephonic meet-and-confer conferences. In its first meet-and-confer of October 26, counsel for HMD insisted that HMD's attorney, Matt Warren, was the only person capable of making decisions regarding the ARC subpoena. Chouraki Dec., Ex. N. Despite multiple requests for Mr. Warren to participate in the meet and confer process, counsel for HMD was unwilling to do so. Chouraki Dec., Ex. O. As such, while ARC offered compromises to avoid burdening the Court, HMD was unable to offer any compromise or accept any of ARC's comprises. Although the documents are irrelevant, ARC agreed to produce all documents (other than email) in an attempt to avoid this dispute; indeed, ARC agreed that, with respect to most requests, ARC either has no responsive information or will provide it to CCE for production. Chouraki Dec., Ex. R. And even with respect to emails, ARC attempted to reach a compromise and asked for HMD to cooperate with providing search terms to substantially narrow the scope of the documents that HMD requested. *See* Chouraki Dec., Ex. J. Yet HMD consistently refused to tailor its requests in any respect, confirming HMD's indifference to the extraordinary burden and expense its discovery demands would place upon ARC, and suggesting that HMD's true motive is to harass and burden ARC, and increase the overall costs of this litigation. *Id.*

### D. This Court is Authorized to Transfer this Action to the Eastern District of Texas

The Eastern District of Texas court is in the best position to determine whether the discovery that HMD seeks is relevant and whether it would aid that court's decision on the fully briefed motion pending before it. As such, to conserve the resources expended by this Court, the Eastern District of Texas court, and both parties, the Court should transfer HMD's motion to the Eastern District of Texas pursuant to Rule 45(f). Not only is the Eastern District of Texas court in the best position to determine whether the evidence sought by HMD is discoverable, relevant, and even admissible, but the Eastern District of Texas is also in the best

position to issue limiting guidelines to narrow HMD's requests so that they are proportional with the needs of the underlying case. This Court would be relieved of the resources necessary to decide an issue that relates only to a fully briefed motion before a court in an entirely different forum, and the Eastern District of Texas Court would never need to slog through reams of supposed "evidence" that is on its face inadmissible. Pursuant to Rule 45(f), ARC consents to the Court transferring this motion to the court in the Eastern District of Texas overseeing the underlying litigation, and ARC is filing contemporaneously with this response a motion requesting transfer under Rule 45(f).

**E. If ARC Must Produce the Documents, HMD Should Bear the Costs.**

If this Court determines that ARC must produce emails according to HMD's requests, then HMD should bear the costs of the production instead of non-party ARC. Rule 45 provides that an order compelling discovery "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). If discovery against a non-party to a lawsuit results in a significant expense, "the Court must shift costs to the party serving the subpoena until the burden is no longer 'significant.'" *Federal Deposit Ins. Corp. v. LSI Appraisal LLC*, 2014 WL 12561102, *1 (C.D. Cal. 2014) (Carter, J.) (quoting *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013)). Additionally, this Court has found that, as email discovery "is not presumptively relevant to litigation" and results in an "imbalance of benefit and burden," cost-shifting is an option to resolve the imbalance. *Northrop Grumman*, 2012 WL 12875772 at *2 (C.D. Cal. 2012). In denying that motion to compel, the Court in *Northrop Grumman* further found that, even where a party failed to preserve emails, the burden to that party and the Court in delaying the action by searching for the emails "outweighs the likely benefit of the requested documents." *Id*. at *7. *See also Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003) (Seeking electronic data from expensive backup media is "particularly

complicated," and "the solution has been to consider cost-shifting"). ARC is not a party to the underlying litigation and has never had any ownership rights over the '923 patent, the sole patent at issue. Further, the overreaching nature of HMD's requests would lead to a significant expense for ARC. To the extent that this Court would grant the motion and impose an extraordinary expense ranging from ██████████████████ HMD should be ordered to bear those costs.

## IV.   CONCLUSION

ARC requests that this Court transfer the Motion to the Eastern District of Texas, the court overseeing the underlying litigation. In the alternative, ARC respectfully requests that this Court deny HMD's Motion to Compel. Should this Court grant HMD's Motion, ARC, as a non-party to the underlying litigation, requests that the Court shift the costs of discovery to HMD.

Dated: December 31, 2020

Respectfully submitted,

/s/ *Stephanie R. Wood*
Stephanie R. Wood
California Bar No. 242572
Jeffrey R. Bragalone (*pro hac vice* pending)
Texas Bar No. 02855775

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
swood@bcpc-law.com
jbragalone@bcpc-law.com

Ben M. Davidson
California Bar No. 181464
**DAVIDSON LAW GROUP, ALC**
4500 Park Granada Blvd., Suite 202
Calabasas, California 91302
Tel: (818) 918-4622
Ben@dlgla.com

Attorneys for Respondent
**ACACIA RESEARCH CORPORATION**

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL