REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Matthew S. Warren (Bar No. 230565)
Jennifer A. Kash (Bar No. 203679)
Maissa Chouraki (Bar No. 307711)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-127@cases.warrenlex.com

*Attorneys for HMD Global Oy*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| HMD GLOBAL OY, <br><br>     Movant, <br><br> v. <br><br> ACACIA RESEARCH CORPORATION, <br><br>     Respondent. | Case No. 8:20-mc-127 <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION BY HMD GLOBAL OY TO COMPEL PRODUCTION OF DOCUMENTS FROM ACACIA RESEARCH CORPORATION** <br><br> Judge:  [TBD] <br> Date:  [TBD] <br> Time:  [TBD] <br> Place:  [TBD] <br> Discovery Cutoff:  March 18, 2021 <br> Pretrial Conference:  June 29, 2021 <br> Trial Date:  August 2, 2021 |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# **TABLE OF CONTENTS**

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.   ARC is a Sophisticated Litigant in the Business of Litigation. . . . . . . . . . . . . . . . 2

B.   ███████████████████████████. . . . . . . . . . . . . . . . . 2

C.   The Underlying Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

D.   HMD Global's Motion to Dismiss for Lack of Standing. . . . . . . . . . . . . . . . . . 3

E.   The Starboard Security Interest May Further Undermine CCE's Standing. . . . . . . 4

F.   HMD Global Subpoenas CCE's Parent ARC at its Home, in This District. . . . . . 4

G.   ARC Refuses to Participate in This Court's Joint Stipulation Process. . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    Parties May Seek Discovery That is Relevant and Proportional to the Case. . . . . . 5

II.   ARC Cannot Block Discovery Because it Disagrees with HMD Global's
      Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  HMD Global Seeks Documents Directly Relevant to CCE's Standing Claims. . . . 8

      A.   ARC's Licenses of its Subsidiaries' Patents. . . . . . . . . . . . . . . . . . . . . . 8

           1.   Documents Concerning ████████████████. . . . . . . . . 8

           2.   Documents Concerning Other Licenses of its
                Subsidiaries' Patents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           3.   Agreements Executed Concurrently With Those Agreements. . . . . . 11

           4.   Communications Regarding Agreements and Negotiations. . . . . . . 11

           5.   All of These Categories Are Highly Relevant to
                CCE's Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      B.   Documents Concerning the '923 Patent. . . . . . . . . . . . . . . . . . . . . . . . 14

      C.   Documents Concerning the Relationship Between ARC and CCE. . . . . . . 15

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

|   |   |   |   |
|---|---|---|---|
| | D. | Documents Concerning the Assignment from ARG to CCE. | 16 |
| | E. | Documents Concerning the Starboard Security Agreement. | 17 |
| | F. | Documents Concerning '923 Litigation or Other CCE Litigation. | 19 |
| III. | | HMD Global's Email Production Requests are Not Unduly Burdensome. | 20 |
| | A. | ARC Has Failed to Meet Its Burden to Show Burdensomeness. | 20 |
| | B. | ARC's Duty to Preserve Documents Attached when ███████████████████████████████████████ | 21 |
| | C. | ARC Cannot Shift Its Burden Onto HMD Global. | 23 |
| | D. | The Court Should Not Grant ARC Consideration as a Non-Party. | 24 |
| | E. | Production of Emails is Routine in this District. | 24 |
| Conclusion. | | | 25 |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# **TABLE OF AUTHORITIES**

*Cases*                                                                                                              **Pages**

*67 Wall St. Co. v. Franklin Nat'l Bank,*
   37 N.Y.2d 245, 248-49 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 18

*Acceleration Bay LLC v. Activision Blizzard, Inc.,*
   No. 16-453, 2017 WL 3668597 (D. Del. Aug. 24, 2017). . . . . . . . . . . . . . . . . . 3

*Alpine View Co. v. Atlas Copco AB,*
   205 F.3d 208, 221 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Aquastar Pool Prods., Inc. v. Color Match Pool Fittings, Inc.,*
   No. 18-mc-94, 2019 WL 856860 (C.D. Cal. Jan. 23, 2019). . . . . . . . . . . . . . . . 25

*Blankenship v. Hearst Corp.,*
   519 F.2d 418, 429 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.,*
   No. 17-430, 2019 WL 2210686 (E.D. Tex. May 22, 2019). . . . . . . . . . . . . . . . 7

*Castelan-Gutierrez v. Bodega Latina Corp.,*
   No. 17-1877, 2018 WL 4050493 (D. Nev. Mar. 30, 2018). . . . . . . . . . . . . . . . 7

*City of Colton v. American Promotional Events, Inc.,*
   No. 09-1864, 2011 WL 13223947 (C.D. Cal. Oct. 6, 2011). . . . . . . . . . . . . 21, 22

*Cellular Communications Equipment LLC v. HMD Global Oy,*
   No. 20-78 (E.D. Tex. March 17, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cellular Commc'n Equip. LLC v. HTC Corp.,
   No. 15-2373 (S.D. Cal. Dec. 16, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

 *Credit Suisse Sec. (USA) LLC,*
   No. 11-232, 2013 WL 5312511 (S.D.N.Y. Sept. 23, 2013) . . . . . . . . . . . . . . . . 12

*Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.,*
   No. 15-979, 2016 WL 7486606  (C.D. Cal. Oct. 27, 2016). . . . . . . . . . . . . . . . 6

*Dataflow, Inc. v. Peerless Ins. Co.,*
   No. 11-1127, 2014 WL 148685, at *4 (S.D.N.Y. Jan. 13, 2014). . . . . . . . . . .12, 18

*Davidson v. Goord,*
   215 F.R.D. 73 (W.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Faulkner v. Nat'l Geographic Soc.,*
   452 F. Supp. 2d 369, 381 (S.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 9

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Fed. Ins. Co. v. Americas Ins. Co.*,
    258 A.D.2d 39, 44 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

*G.E. Funding Capital Mkt. Servs., Inc. v. Nebraska Inv. Fin. Auth.*,
    No. 15-1069, 2017 WL 2880555 (S.D.N.Y. July 6, 2017). . . . . . . . . . . . . . . . . 10

*Infanzon v. Allstate Ins. Co.*,
    335 F.R.D. 305, 312 (C.D. Cal. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Inland Concrete Enters., Inc. v. Kraft Ams., L.P.*,
    No. 10-1776, 2011 WL 13209258 (C.D. Cal. May 12, 2011). . . . . . . . . . . . . . . 6

*In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litig.*,
    No. 11-2274, 2012 WL 10450139 (C.D. Cal. June 7, 2012). . . . . . . . . . . . . 21, 24

*Kajeet, Inc. v. Qustodio, LLC*,
    No. 18-1519, 2019 WL 8060078 (C.D. Cal. Oct. 22, 2019). . . . . . . . . . . . . . . . 22

*Keith H. v. Long Beach Unified School Dist.*,
    228 F.R.D. 652, 655-56 (C.D. Cal. May 18, 2005). . . . . . . . . . . . . . . . . . . . . . 21

*Kor Media Grp., LLC v. Green*,
    294 F.R.D. 579, 583 (D. Nev. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Las Vegas Sun, Inc. v. Adelson*,
    No. 19-1667, 2020 WL 2114352 (D. Nev. May 4, 2020). . . . . . . . . . . . . . . . . . . 7

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
    No. 19-15, Docket. No. 33 (C.D. Cal. Feb. 28, 2019). . . . . . . . . . . . . . . . . . . . 25

*Micron Technology, Inc. v. Rambus Inc.*,
    645 F.3d 1311, 1320 (Fed. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*,
    No. 17-715, 2019 WL 1399927 (E.D. Tex. Mar. 28, 2019). . . . . . . . . . . . . . . . 13

*Skellerup Indus. Ltd. v. City of Los Angeles*,
    163 F.R.D. 598, 600 (C.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Soundgarden v. UMG Recordings, Inc.*,
    No. 19-5449, 2019 WL 10093965 (C.D. Cal. Dec. 2, 2019). . . . . . . . . . . . . . . . 7

*Sound View Innovations, LLC v. Hulu, LLC*,
    No. 17-4146, 2018 WL 6164271 (C.D. Cal. June 12, 2018). . . . . . . . . . . . . . . . 22

*Tradebay, LLC v. eBay, Inc.*,
    278 F.R.D. 597, 600 (D. Nev. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Trilegiant Corp. v. Sitel Corp.*,
   272 F.R.D. 360, 364-65 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Uniloc USA, Inc. v. Apple Inc.*,
   No. 18-358, Docket No. 165 (N.D. Cal. Dec. 4, 2020). . . . . . . . . . . . . . . 7, 17, 18

*United States v. Procter & Gamble Co.*,
   356 U.S. 677, 682 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

(USA) LLC v. Grand Circle LLC,
   No. 11-232, 2013 WL 5312511 (S.D.N.Y. Sept. 23, 2013). . . . . . . . . . . . . . . . 12

*WiAV Sols. LLC v. Motorola Inc.*,
   631 F.3d 1257, 1266 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# **<u>TABLE OF AUTHORITIES</u>**

*Statutes and Rules*                                                                 **Pages**

Fed. R. Civ. P. 26(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Local Rule 37-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Local Rule 37-2.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**INTRODUCTION**

The question before this Court is simple:  must Acacia Research Corporation produce documents showing whether its wholly owned subsidiary, Cellular Communications Equipment LLC, has standing to pursue claims of infringement in its underlying litigation against HMD Global Oy?  The answer is "yes."  ARC seems to know this, because it has done everything it can to avoid this question.  First, ARC claimed that HMD Global could not even seek discovery on CCE's standing, because ARC believes that CCE does have standing.  ARC's supporting logic was risible—it claimed that ███ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ █████████████████████████████████████████—but better arguments would not help ARC, because that is not how discovery works:  if a party could avoid discovery because it disagreed with an underlying claim, there would be no discovery.

Next, ARC claimed that discovery would be burdensome, but never provided any specific information to back up this claim, despite multiple opportunities to do so.  Nor would such information help ARC in any event, since ARC itself created any burdens it now claims through its own record-keeping decisions, and did so while obligated to preserve relevant documents for litigation.  ARC, a sophisticated litigant in the business of litigation, cannot engineer its way out of production obligations through its own decisions.

Finally, and most troublingly, ARC refused to participate in the joint stipulation process required by this Court, while its subsidiary CCE, represented by the same counsel, asked the Eastern District of Texas, which presides over the underlying litigation, to block HMD Global from bringing this motion.  Even worse, CCE did so by attacking this Court, which it repeatedly called an "unknown court," and by arguing that disclosing confidential documents *to this Court's own personnel* "could prove disastrous" to ARC and CCE.  Of course ARC and CCE could not support their slurs on this Court and its personnel, and the Eastern District of Texas properly ruled that HMD Global could file this motion, seeking in ARC's home Court documents maintained at ARC's sole office, within this District.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

After all of ARC and CCE's attempts to distract attention from the man behind the curtain, the question before this Court remains:  must ARC produce documents showing whether its wholly owned subsidiary CCE has standing to pursue its claims on infringement in its underlying litigation against HMD Global Oy?  The answer to this question remains "yes," and so this Court should grant HMD Global's motion to compel.

## **BACKGROUND**

**A.    ARC is a Sophisticated Litigant in the Business of Litigation**

Respondent Acacia Research Corporation ("ARC") is a sophisticated litigant in the business of Federal litigation.  As a patent monetization company, ARC admits in public filings, "often we must resort to litigation," and that monetization effort "often begins with the filing of patent infringement litigation" rather than a licensing request not backed by a Federal complaint.  Declaration of Maissa Chouraki Ex. BB at 4, 2.  (Further exhibit citations are to the same declaration.)  As a result, ARC spends "a significant amount of our financial and management resources to pursue our current litigation matters."  *Id.* at 8.  In 2020 alone, Acacia and its subsidiaries have filed 11 district court cases.  Ex. CC.  In 2016, ██████████████████████████████████████████████████████ ARC and its subsidiaries filed 14 district court cases.  Ex. DD.  Over the last twenty years, ARC and its subsidiaries have filed 1,430 district court cases.  Ex. EE.  Litigation is essential to ARC's business, and ARC's business is essentially litigation.

**B.**   ████████████████████████████████
████████████████████████████████████████████
████████████████  Ex. A.  ████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████  *Id.* at 4.  ████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

2

3

4

5

6

7

8

9   **C.     The Underlying Action**

10      On March 17, 2020, Cellular Communications Equipment LLC ("CCE") sued HMD

11   Global for infringement of a single patent, U.S. Patent No. 7,218,923 ("the '923 patent").

12   *Cellular Communications Equipment LLC v. HMD Global Oy*, Case No. 20-78, Docket

13   No. 1 (E.D. Tex. March 17, 2020).  On August 10, 2020, CCE effected service on HMD

14   Global through the Hague Convention.  *Id.*, Docket No. 30 (E.D. Tex. Aug. 10, 2020).

15   **D.     HMD Global's Motion to Dismiss for Lack of Standing**

16      On September 17, 2020, CCE produced licenses covering the '923 patent including

17   ████████████████████████████████  On September 21, HMD Global

18   moved to dismiss on grounds including CCE's lack of standing to sue.  Ex. B.  HMD

19   Global argued that a plaintiff such as CCE "lacks standing to sue a party who has the

20   ability to obtain such a license from another party with the right to grant it."  *WiAV Sols.*

21   *LLC v. Motorola Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010); *see also, e.g., Acceleration*

22   *Bay LLC v. Activision Blizzard, Inc.*, No. 16-453, 2017 WL 3668597, at *3 (D. Del. Aug.

23   24, 2017).  HMD Global explained that, ████████████████████████████

24   ████████  CCE cannot establish that it has the right to exclude others from practicing

25   the '923 patent, and thus lacks standing to sue for infringement.  Ex. B at 2-4, 7-11; Ex. D

26   at 1-8; Ex. A.  Opposing, CCE made the striking claim that the ██████████████████

27   ███████████████████████████████████

28   ████████████████████████████████  Ex. C at 6, 7.  CCE has never produced

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   any later-granted license ████████████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ████████████    The parties briefed this motion, Exs. C, D, E, which remains pending.

4   **E.    The Starboard Security Interest May Further Undermine CCE's Standing**

5   HMD Global discovered publicly available filings that further questioned CCE's

6   standing.  A "Patent Security Agreement" filed with the Patent and Trademark Office

7   granted Starboard a security interest in the '923 patent.  A "Release of Security Interest in

8   Patents" filed with the P.T.O. shows that on June 30, Starboard rescinded its security

9   interest.  These transactions may independently undermine CCE's standing in its case.

10  **F.    HMD Global Subpoenas CCE's Parent ARC at its Home, in This District**

11  On September 25, HMD Global served ARC with a subpoena, Ex. F, for documents

12  regarding ████████████████████████████████████  and the security interest:

13  ●    documents concerning ████████████████████████████████  and other

14       agreements in which ████████████████████████  (Requests 1-12);

15  ●    documents concerning actual or potential agreements concerning the '923, its

16       ownership, or valuations of the '923 or any portfolio including it (Requests 13-15);

17  ●    documents concerning the relationship between ARC and CCE (Requests 16-17);

18  ●    documents concerning the security interest and its release (Requests 18-23); and

19  ●    documents concerning litigation concerning the '923 patent (Requests 24-26).

20  On October 9, 2020, ARC served objections and responses to the subpoena, in which it

21  refused to produce a single document.  Ex. G.

22  **G.    ARC Refuses to Participate in This Court's Joint Stipulation Process**

23  On October 16, HMD Global sought to meet and confer on the subpoena.  Ex. H.

24  HMD Global and ARC had two lengthy telephone conferences, and exchanged multiple

25  letters and emails regarding the subpoena.  Exs. I, J, K.  ARC continued to refuse to

26  produce a single document.  On November 3, HMD Global triggered Local Rule 37-1 with

27  a detailed letter, giving ARC had ten days to conduct a final conference.  Ex. L.  After still

28  more letters (Exs. M, N, O), ARC agreed to meet and confer on November 13, the last

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

possible day.  Ex. P, Q, R.  The parties conferred by telephone for a third and final time.  On November 16, HMD Global served its portion of a draft joint stipulation, along with "all declarations and exhibits to be offered in support of the moving party's position," as required by Local Rule 37-2.2.  Ex. S.  ARC had a week, until Monday, November 23, to return its "portion of the stipulation, together with all declarations and exhibits to be offered in support of the moving party's position."  Loc. R. 37-2.2.

On Friday, November 20, the last business day before ARC's deadline to submit its portion of the joint stipulation, ARC and CCE sought to derail HMD Global's motion.  Represented by the same counsel, ARC and CCE wrote tandem letters to HMD Global:  CCE claimed for the first time that the Eastern District of Texas protective order governing confidentiality barred disclosure of "confidential information produced by CCE in this Action to a Central District of California court or its personnel" (Ex. T), while ARC refused to provide its portion of the joint stipulation on the grounds that "it is improper to file the joint stipulation that would result in such violation."  Ex. U.  CCE filed a "Motion to Enforce" the Eastern District protective order before that Court, including troubling claims about the trustworthiness of this Court.  CCE repeatedly called this Court an "unknown court," Ex. W at 1, 5, 7, 8, 11, and claimed that disclosure of information to its judges and other personnel "could prove disastrous" to ARC and CCE.  *Id.* at 8.  CCE and HMD Global briefed this issue, Exs. W, X, Y, Z, and last week the Eastern District denied CCE's motion, ruling that HMD Global may file papers here "as is necessary to comply with that Court's Local Rules to facilitate that Court's resolution of this discovery dispute," and ordering CCE and HMD Global to provide this Court with a copy of the order.  Ex. V.

## <u>ARGUMENT</u>

### I.    Parties May Seek Discovery That is Relevant and Proportional to the Case

Rule 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense" so long as it is "proportional to the needs of the case."  "A 'relevant matter' under Rule 26(b)(1) is any matter that 'bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'  Relevancy

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

should be 'construed "liberally and with common sense" and discovery should be allowed unless the information sought has no conceivable bearing on the case.'" *Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*, Case No. 15-979, 2016 WL 7486606, at *3 (C.D. Cal. Oct. 27, 2016) (citations omitted). "Under the general relevance requirements set forth in Rule 26(b), [a] subpoena may command the production of documents that are 'nonprivileged' and are 'relevant to any party's claim or defense.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

## II.    ARC Cannot Block Discovery Because it Disagrees with HMD Global's Claims

ARC argues that all or nearly all of HMD Global's requested discovery is improper because, in ARC's view, HMD Global will eventually lose the legal issue which those documents might inform. Specifically, in its letter of November 12, ARC states:

> ARC has never been party to any agreement that assigned it rights in the '923 patent. Thus, by law, ARC does not have the right to license the '923 patent. ███████████████████████████████████████████████████████ No amount of parole (sic) evidence or materials regarding the course of dealing can change the fact that, by law, ARC does not have the right to license the '923 patent. As such, the materials covered by Request Nos. 1-12 are irrelevant and intended merely to harass ARC.

Ex. R. In other words, ARC argues that because it believes it will eventually win the underlying dispute, it would be "irrelevant and intended merely to harass ARC" for HMD Global to obtain discovery that might show that ARC should lose the underlying dispute.

Even setting aside the factual problems with this argument—which depends on the contention that ████████████████████████████████████████████████████████████████████████████████████████████ that is not how discovery works. "The obvious and overall purpose of discovery under the Federal Rules of Civil Procedure is to require disclosure of all relevant information, so that the ultimate resolution of disputed issues is based on a full and accurate understanding of the facts and therefore embodies a fair and just result." *Inland Concrete Enters., Inc. v. Kraft Ams., L.P.*, Case No. 10-1776, 2011 WL 13209258,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   at \*2 (C.D. Cal. May 12, 2011) (citing *United States v. Procter & Gamble Co.*, 356 U.S.

2   677, 682 (1958)).  If a target of discovery could escape its obligations to produce

3   documents by claiming that its side would ultimately win the underlying dispute, there

4   would be no discovery.  *Castelan-Gutierrez v. Bodega Latina Corp.*, Case No. 17-1877,

5   2018 WL 4050493, at \*2 (D. Nev. Mar. 30, 2018) ("The mere fact that a party may

6   articulate some legal argument that may allow it to prevail on a particular claim, even

7   when presented in a currently-pending dispositive motion, is simply insufficient to justify

8   denying discovery to its opponent.").  Indeed, the "Federal Rules of Civil Procedure do not

9   provide for automatic or blanket stays of discovery when a potentially dispositive motion

10  is pending," *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 312 (C.D. Cal. 2020) (quoting

11  *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011)), and discovery will

12  proceed unless the "party seeking a stay of discovery carries a heavy burden of making a

13  'strong showing' why discovery should be denied."  *Soundgarden v. UMG Recordings,*

14  *Inc.*, Case No. 19-5449, 2019 WL 10093965, at \*6 (C.D. Cal. Dec. 2, 2019) (quoting

15  *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995)); *see*

16  *also Las Vegas Sun, Inc. v. Adelson*, Case No. 19-1667, 2020 WL 2114352, at \*5 (D. Nev.

17  May 4, 2020) ("Generally, there must be no question in the court's mind that the

18  dispositive motion will prevail, and therefore, discovery is a waste of effort.") (quoting

19  *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 583 (D. Nev. 2013)).

20          Furthermore, the only ruling that could moot HMD Global's subpoena is a complete

21  dismissal of CCE's complaint.  Even if the Eastern District of Texas were to deny HMD

22  Global's pending motion to dismiss, because standing is a "threshold jurisdictional issue"

23  (Ex. D at 7-8) which CCE admitted "may be raised at anytime" (Ex. C at 11), HMD Global

24  can present facts beyond the pleadings to support its claim, has no time limit to make this

25  claim, and can take discovery and use that discovery to support a renewed motion.  *Uniloc*

26  *USA, Inc. v. Apple Inc.*, No, 18-358, Docket No. 165 (N.D. Cal. Dec. 4, 2020) (granting

27  renewed motion to dismiss for lack of standing based on new evidence obtained through

28  discovery); *see also Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.*, No. 17-430, 2019 WL

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

2210686, at *3 (E.D. Tex. May 22, 2019) ("[J]urisdictional discovery should only be denied where it is *impossible* that the discovery 'could . . . add[] any significant facts' that might bear on the jurisdictional determination.") (alteration and emphasis in original) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)).  In addition, documents sought by the subpoena are relevant to other possible standing claims as well as internal analysis and valuations of the '923 patent, prior royalties paid for it, and potential damages for infringement.  For at least these reasons, no ruling on HMD Global's motion to dismiss, short of a complete dismissal, will moot the subpoena and ARC must produce documents responsive to HMD Global's requests.

## III.   HMD Global Seeks Documents Directly Relevant to CCE's Standing Claims

### A.   ARC's Licenses of its Subsidiaries' Patents

Requests 1-12 seek documents concerning ARC's licenses of its subsidiaries' patents.  These requests fall into four categories:  documents concerning the agreements themselves by which ARC has licensed  its subsidiaries' patents (███████████████ ███████████████████████████████████); agreements executed concurrently with those agreements, which are necessary to understand them, and communications and negotiations regarding any of these agreements.

### 1.   Documents Concerning ████████████████

Request No. 1 seeks "documents concerning any agreement between persons ███████████████████████ that includes any patent license," Ex. F at 7, including ██████████████████████████████████████████ but also including any *other* license agreements ███████████████ ARC refuses to produce any documents regarding this request.  Ex. R at 2-3; *see* Ex. S at 9-16.

Documents sought by this request are directly relevant to CCE's standing claims.  They would include, for example, drafts of ████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

████████████████████████████████████ These documents would also include any

analyses of ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ Documents that would be responsive to

this request would include, for example:

● A prior draft of the ██████████████████████████████████

█████████████████████████████████████████

● An email from ████████████████████████████████████

██████████████████████████████████████ or

● An email from ██████████████████████████████

HMD Global has no idea whether these documents exist, of course, but that is precisely

why it needs discovery.  This request also seeks documents concerning any prior patent

licenses ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████ *See, e.g.*, *Faulkner v. Nat'l Geographic Soc.*, 452 F. Supp. 2d 369,

381 (S.D.N.Y. 2006) (explaining that "the parties' course of dealing throughout the life of

a contract is highly relevant to determining the meaning of the terms of the agreement")

(citations omitted); *see also Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 364-65

(S.D.N.Y. 2010) (holding that "anything that might further the interpretation" of the

disputed contract provision "is relevant and subject to discovery") (collecting cases).  ARC

must produce these documents.  *See Trilegiant Corp.*, 272 F.R.D. at 364-65 (ordering

plaintiff to produce documents concerning disputed contract provisions and "the drafting

and use of such contract language" in order to aid in the interpretation of those provisions).

### 2. Documents Concerning Other Licenses of its Subsidiaries' Patents

Request Nos. 5 and 9 seek documents concerning other licenses that ARC has

executed covering its subsidiaries' patents.  Request No. 5 seeks "documents concerning

any agreement between ARC and any other person or persons that includes any patent

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   license including a patent owned in whole or part by one or more Acacia Entities," and

2   Request No. 9 seeks "documents concerning any agreement between ARC and any other

3   person or persons that includes any patent license including a patent that one or more

4   Acacia Entities has authority to license." Ex. F at 8, 9; *see* Ex. S at 25-27, 33-36. There is

5   likely substantial overlap between patents "owned in whole or part by one or more Acacia

6   Entities" and patents "that one or more Acacia Entities has authority to license"; HMD

7   Global used both definitions to minimize the chance that artful reading could exclude

8   documents. ARC refuses to produce any documents regarding these requests. Ex. R. at 3.

9    HMD Global's standing motion rests on the argument that ARC can and does hold

10  the right to license patents held by its subsidiaries directly, rather than through the

11  subsidiaries themselves. *See generally* Exs. B, D. If HMD Global is correct, then ARC

12  subsidiaries such as CCE either lack standing to sue entirely, or lack standing to sue

13  without ARC's participation as a plaintiff in the case. These requests ask a simple

14  question: ██████████████████████████████████████████████

15  ████████████████████████████████████████

16  ████████████████████████████████████████████

17  ████████████████████████████████████

18  ██████████████████████████████  *See, e.g., G.E. Funding Capital*

19  *Mkt. Servs., Inc. v. Nebraska Inv. Fin. Auth.*, Case No. 15-1069, 2017 WL 2880555, at *4

20  (S.D.N.Y. July 6, 2017) (parol evidence may include "conversations, negotiations and

21  agreements made prior to or contemporaneous with the execution of a written agreement").

22  These agreements are particularly necessary to rebut one of CCE's arguments to the

23  Eastern District of Texas, which is that without a "written agreement assigning rights to

24  AR Corp., it is impossible for AR Corp. to have rights in the '923 patent." Ex. C at 5; *see*

25  Ex. E at 1-2. HMD Global could rebut this argument by showing that ARC has a history

26  of licensing its subsidiaries' patents with or without the "written agreement assigning

27  rights" that CCE claims is required—but only with discovery into ARC's history of

28  licensing its subsidiaries' patents, which these requests seek. ARC cannot block discovery

necessary to rebut arguments of its subsidiary CCE.  Finally, even if ARC has *never* executed any other agreements that license its subsidiaries' patents, that too is relevant, and ARC should confirm that no such agreements exist.

### 3. Agreements Executed Concurrently With Those Agreements

Request Nos. 2, 6, and 10 seek "documents concerning any agreement executed concurrently with," respectively, agreements identified in Request Nos. 1, 5, and 9.  Ex. F. at 7, 8, 9; *see* Ex. S at 17-19, 27-29, 36-39.  ARC refuses to produce documents regarding these requests.  Ex. R. at 2-3.  Agreements identified in Request Nos. 1, 5, and 9 are directly relevant to CCE's standing to bring its claim, *see supra* §§ III.A.1, III.A.2, and concurrent agreements are equally relevant because one cannot understand an agreement without understanding its full context including concurrent agreements.  Consider: ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Concurrent agreements often contain such related provisions, which affect understanding of a variety of provisions.  Without the documents HMD Global seeks, it cannot know if any concurrent agreements have provisions relevant to the dispute.  ARC must produce these documents.  *See Trilegiant Corp.*, 272 F.R.D. at 364-65 (ordering plaintiff to produce documents concerning disputed contract provisions and "the drafting and use of such contract language" in order to aid in the interpretation of those provisions).

### 4. Communications Regarding Agreements and Negotiations

Request Nos. 3, 7, and 11 seek "communications concerning any agreement" identified, respectively, in Request Nos. 1-2, 5-6, and 9-10.  Ex. F at 7, 8, 9; *see* Ex. S at 19-23, 29-31, 38-40.  And Request Nos. 4, 8, and 12 seek "communications concerning negotiations leading to any agreement" identified, respectively, in Request Nos. 1-2, 5-6, and 9-10.  Ex. F at 8, 9; *see* Ex. S at 23-24, 31-32, 40-42.  There is some overlap between

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

"communications concerning negotiations" and other "communications concerning any agreement," but not total overlap, as "communications concerning negotiations" would not yield communications occuring after execution of an agreement.  ARC refuses to produce any documents responsive to these requests.  Ex. R. at 2-3.  But the communications HMD Global requests are directly relevant to CCE's standing claims.

The negotiation history of a contract is highly relevant to understanding its meaning. 67 *Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 248-49 (1975) (recognizing that the court can look to the "surrounding facts and circumstances to determine the intent of the parties," including "evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution" in order to explain ambiguities in a written agreement).  Similarly, communications after execution of any agreements are highly relevant as showing the course of performance.  *See Fed. Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 44 (1999) ("the parties' course of performance under the contract is considered to be the most persuasive evidence of the agreed intention of the parties") (internal quotation marks and citation omitted); *Credit Suisse Sec. (USA) LLC v. Grand Circle LLC*, Case No. 11-232, 2013 WL 5312511, at *11 (S.D.N.Y. Sept. 23, 2013) ("The parties' objective manifestations of their intent—namely, their words to each other and their deeds—are significantly more probative than uncommunicated subjective intent.") (internal quotation marks and citation omitted).

Communications within ARC are also highly relevant, as they shed light on how ARC interpreted any agreements.  *See Dataflow, Inc. v. Peerless Ins. Co.*, Case No. 11-1127, 2014 WL 148685, at *4 (S.D.N.Y. Jan. 13, 2014) (finding that defendant's internal communications showing its interpretation of a written agreement are relevant to its interpretation of the agreement).  And communications between ARC and CCE are highly relevant.  For example, in opposing HMD Global's motion to dismiss, CCE claimed that █████████████████████████████████████████████████████████████
█████████████████████████████████████████ Ex. C at 6, 7; *see* Ex. E at 3 ████████
████████████████████████████████████████████████████████████████

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1         CCE further claimed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮ *Id.* Ex. E at 4 (*citing Polaris PowerLED Techs., LLC v. Samsung Elecs. Am.,*

4 *Inc.*, Case No. 17-715, 2019 WL 1399927, at *3 (E.D. Tex. Mar. 28, 2019); Ex. C at 6.

5 HMD Global is entitled to test those claims by probing the communications that actually

6 occurred. Did ARC ever actually ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ HMD Global is entitled to that evidence as well.

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮ *See* Exs. FF, GG, HH, II, JJ, KK. ▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮ *Id.* §§ 1.6, 1.9. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮ *Id.* § 4.4. ▮▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮▮▮▮▮▮ Ex. JJ § II.13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. at CCE_HMD_001643.

27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. FF § 4.4; Ex. JJ § II.13. ██████████████████████████████ ████████████████████████████ All these communications would be highly relevant to HMD Global's claims, because they address ████████████████ ████████████████████████████ *See 67 Wall St.*, 37 N.Y.2d at 248-49. For example, ███████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ would be highly relevant for the same reasons.

### 5.   All of These Categories Are Highly Relevant to CCE's Standing

HMD Global's Request Nos. 1-12 seek information summarized in this chart:

| Categories of agreements addressed by Request Nos. 1-12 and documents sought regarding each, shown by their request numbers in HMD Global's subpoena to ARC of September 25, 2020: | Documents concerning agreements | Documents concerning concurrent agreements | Documents concerning communications | Documents concerning negotiations |
| --- | --- | --- | --- | --- |
| ████████████████ | 1 | 2 | 3 | 4 |
| ARC agreements including a patent owned by an ARC subsidiary | 5 | 6 | 7 | 8 |
| ARC agreements including a patent which an ARC subsidiary has authority to license | 9 | 10 | 11 | 12 |

For the reasons HMD Global has explained, *see supra*, each of these requests is highly relevant to CCE's standing to bring its claims, and the Court should order production.

### B.   Documents Concerning the '923 Patent

Request Nos. 13-15 seek documents concerning the '923 patent, including "documents concerning all communications, including any proposals to license, negotiations, discussions, offers to license, presentations, or any other communications,

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

regarding any potential agreement concerning the '923 patent, including any potential license including the '923 patent" (Request No. 13); "documents concerning any right, title, or interest in the '923 patent" (Request No. 14); and "documents concerning any valuations or attempts to value the '923 patent or any portfolio containing the '923 patent." Request No. 15.  Ex. F at 9; *see* Ex. S at 42-44, 44-46, 46-48.  ARC agrees to produce some documents "relating to the ownership of the '923 patent," but refuses to search emails, and refuses to search for all documents "concerning any right, title, or interest in the '923 patent."  Ex. R at 3.  ARC says it will produce "valuations concerning the '923 patent," but again refuses to search emails.  ARC refuses to produce anything responsive to Request No. 13—hardly a surprise, since it refuses to produce anything responsive to Request Nos. 1-12, which overlap Request No. 13 to the extent that any agreement, ███ ████████████████████████████████████████████ includes the '923.

Documents responsive to these requests are directly relevant to CCE's standing in the underlying action.  For example, if ARC sent a series of proposals to license a portfolio including the '923 patent ████████████████ those communications would be highly relevant to HMD Global's motion to dismiss because they would show ██████████ ████████████████████████████████████████████ Similarly, ████████████████████████ regarding any portfolio including the '923 patent would be highly relevant not only regarding standing, but also regarding the value of the '923 patent compared to others in ARC's collective portfolio, thus providing evidence relevant to its value and thus potential damages against HMD Global.  Finally, in opposing HMD Global's motion to dismiss, CCE claimed "that all rights to the '923 patent belong to CCE."  Ex. C at 3.  HMD Global is entitled to test this assertion through discovery into "documents concerning any right, title, or interest in the '923 patent," not merely the lesser category of documents "relating to the ownership of the '923 patent" offered by ARC.

### C.    Documents Concerning the Relationship Between ARC and CCE

Requests Nos. 16-17 seek "documents concerning the relationship between ARC and CCE" (Request No. 16) and "communications concerning the relationship between

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

ARC and CCE." Request No. 17. Ex. F. at 10; Ex. S at 48-50. ARC stated that, if HMD Global "agrees to exclude emails from its request, ARC is willing to search for non-public, responsive documents related to these requests." Ex. R at 3. ARC thus admits the relevance of these documents, but refuses to search for them unless HMD Global agrees to exclude emails from its search, rendering the search useless since ARC and CCE have overlapping officers who work in the same offices and share ARC's email system.

These requests address CCE's main argument in opposition to HMD's motion to dismiss. CCE claims that ███████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. E at 3. HMD Global is entitled to test these assertions by understanding the full scope of the relationship between ARC and CCE. ████████████████████████████ ██████████████████████████████████████ How does ARC generally supervise the activities of its subsidiary CCE? What records does it keep? ████████████████████ ███████████████████████████████████████████████████ ██████████ All of these questions and many others would be answered by this discovery; without those answers, HMD Global cannot fairly assess CCE's standing to bring its case.

**D.    Documents Concerning the Assignment from ARG to CCE**

Request No. 18 seeks documents concerning the "Assignment and Assumption Agreement," which assigned patents including the '923 patent from Acacia Research Group LLC ("ARG"), an ARC subsidiary, to CCE. Ex. F at 10; Ex. S at 52-53. ARC stated that, if HMD Global "agrees to exclude emails from its request, ARC is willing to search for non-public, responsive documents related to these requests." Ex. R at 3. ARC thus admits the relevance of these documents, but refuses to search for them unless HMD Global agrees to exclude emails from its search, rendering the search useless since ARC, ARG and CCE have overlapping officers who work in the same offices and share ARC's email system. Documents responsive to this request concern the chain of title of the '923

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

patent.  In opposing HMD Global's motion to dismiss, CCE claimed "that all rights to the '923 patent belong to CCE."  Ex. C at 3.  HMD Global is entitled to test this assertion through discovery.  Request No. 18 concerns the agreement CCE contends "transferred all rights in the '923 patent that AR Group received from NSN to CCE."  Ex. C at 2.  Suppose, for example, that contemporaneous documents exist that explain the purpose of this assignment and how the assignment affects any rights ARC or ARG may have concerning CCE or the '923 patent.  Such responsive documents would be highly relevant to the ownership of the '923 patent and the authority to license it.

### E.    Documents Concerning the Starboard Security Agreement

ARC's security interest to Starboard, and its later rescinding of the security interest, may further undermine CCE's standing to bring its claims.  *See supra* § E.  This issue is not hypothetical:  just this month a patent monetization conglomerate, similar in structure to ARC, lost standing to pursue claims due to a security agreement.  *Uniloc USA, Inc. v. Apple Inc.*, No, 18-358, Docket No. 165 (N.D. Cal. Dec. 4, 2020).  Requests 19-23 seek documents concerning the security interest (Request No. 19, *see* Ex. F at 10, Ex. S at 54-56); documents concerning the release of the security interest filed a few months later, thus raising the question of whether ARC saw the *Uniloc* issues developing and realized that it had a similar problem (Request No. 20, *see* Ex. F at 10, Ex. S at 56-58); documents concerning communications regarding the agreements or release (Request No. 21, *see* Ex. F at 10, Ex. S at 59-61); "documents concerning any relationship between ARC and Starboard" and "communications concerning any relationship between ARC and Starboard."  Request Nos. 22-23, *see* Ex. F at 10, Ex. S at 61-66).  ARC stated that, if HMD Global "agrees to exclude emails from its request, ARC is willing to search for non-public, responsive documents related to these requests."  Ex. R at 3.  ARC thus admits the relevance of these documents, but refuses to search for them unless HMD Global agrees to exclude emails from its search, rendering the search useless since negotiations leading up to these agreements and discussions after them surely happened almost entirely

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

over email, not least because the Starboard security agreement was executed, filed and released this year, and was thus almost certainly negotiated all or mostly by email.

Documents concerning these agreements, especially the emails showing negotiation of the security interest and its revocation, may independently undermine CCE's standing in this case. *See Uniloc USA, Inc. v. Apple Inc.*, 784 Fed. App'x at 765, 767-68 (remanding to the district court to "supplement the record, determine whether Uniloc has standing in the first instance, and, if appropriate, cure any jurisdictional defects"); *Uniloc USA, Inc. v. Apple, Inc.*, Case No. 18-358, Docket No. 186 (N.D. Cal. Dec. 4, 2020) (dismissing case for lack of standing based on security agreement). These requests seek to probe these issues, which go directly to CCE's standing to sue HMD Global for infringement.

Communications regarding these agreements are highly relevant for the same reasons as communications regarding the other agreements HMD Global seeks: negotiation history of a contract is key to understanding its meaning, *see 67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 248-49 (1975), later communications show course of performance (particularly relevant here where the parties to the agreement revoked it rather quickly), *Fed. Ins. Co.*, 258 A.D.2d at 44, and communications within ARC show how ARC interpreted any agreements. *Dataflow, Inc. v. Peerless Ins. Co.*, Case No. 11-1127, 2014 WL 148685, at *4 (S.D.N.Y. Jan. 13, 2014); *see generally supra* § III.A.3.

Finally, the relationship between ARC and Starboard is highly relevant for reasons similar to those regarding the relationship between ARC and CCE. *See supra* § III.C. Without the context of this overall relationship, one cannot understand the security interest and its revocation. Was Starboard otherwise invested in ARC? Did Starboard have some other interest that led it to first demand the security interest and then allow its revocation? Without answers to these questions, HMD Global cannot fully understand whether the Starboard transaction and its reversal separately undermine CCE's standing to bring its claims. The Court should therefore grant this discovery.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### F.    Documents Concerning '923 Litigation or Other CCE Litigation

Request Nos. 24-26 seek documents concerning this litigation or other CCE litigation.  In fact, Request No. 24 seeks precisely "documents concerning this litigation or other CCE litigation."  Ex. F. at 10; *see* Ex. S at 66-68.  Request No. 25 seeks "documents concerning communications between ARC and CCE concerning this litigation or other CCE litigation," and Request No. 26 seeks "documents concerning communications between ARC and CCE concerning any actual or potential litigation concerning the '923 patent."  Ex. F. at 10; *see* Ex. S at 68-72.  There is likely substantial overlap between these categories, as they all seek documents concerning ARC's supervision of litigation involving CCE or the '923 patent.  ARC stated that, if HMD Global "agrees to exclude emails from its request, ARC is willing to search for non-public, responsive documents related to these requests," but then immediately admitted that this offer was an empty one, because "it is ARC's understanding that these documents would have already been produced by CCE in the underlying litigation."  Ex. R at 3.  Setting aside whether this latter statement is correct—and CCE has not produced any documents regarding ARC's supervision of any of its litigation—it confirms that ARC will produce these documents only if ordered to do so by this Court.

This Court should order that production, because documents concerning ARC's supervision of CCE's litigation are highly relevant to CCE's standing claims.  In opposing HMD Global's motion to dismiss, CCE claimed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C at 6, 7; Ex. E at 3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Documents responsive to these requests will show not only any communications around this time on this point, but also the baseline level of communication between ARC and CCE regarding supervision of its litigation, providing the denominator necessary to understand the numerator.  Documents concerning ARC's supervision of CCE's litigation, as well as any other litigation regarding the '923

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

patent, will also show whether ARC is the true plaintiff.  If ARC makes every decision about CCE's litigation, for example, rather than allowing CCE to make decisions and providing supervision and support, it will bolster the argument that ARC sees no distinction between itself and CCE, ███████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████ Exs. B, D. Responsive documents concerning ARC's control over CCE and the '923 patent may also show the relationship between ARC and CCE and the '923 patent and thus would also be highly relevant to the claims raised in HMD Global's motion to dismiss.  The Court should compel production of these documents as well.

## IV.    HMD Global's Requests are Not Unduly Burdensome

### A.    ARC Has Failed to Meet Its Burden to Show Burdensomeness

ARC's burden objection extends only to email production.  Ex. R at 2.  Regarding the ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ █████████████ and that "[r]estoring the electronic records of former employees is a significant burden."  Ex. R at 2.  But four years is hardly ancient history, many of HMD Global's requests seek much more recent information, and most importantly ARC provides no evidence to back up these claims, no names of these departed employees and no specifics regarding its burden.  Nor does ARC provide any further explanation of its burden regarding HMD Global's other requests.  *Id.*  To the contrary, ARC's own explanation of its burden reveals significant gaps.  Although ARC claims that "many, if not all, of the individuals who had ████████████████████████ are no longer employed by ARC," it does not say who they are, or when they left, or what happened to their records.  Ex. R at 2.  ARC conspicuously does not say that *all* "individuals who had ████████████████████████████████" have left ARC, and surely would have if it could

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   have.  Indeed, if most ████████████████████████████████████ have

2   left the company, ARC's search may be *easier* than if they had stayed, because ARC

3   would have transferred their records to new custodians, making a search simpler, not more

4   complicated as ARC intimates.

5   "The party who resists discovery has the burden to show discovery should not be

6   allowed, and has the burden of clarifying, explaining, and supporting its objections."

7   *Keith H. v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 655-56 (C.D. Cal. May 18,

8   2005) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); *see also,*

9   *e.g.*, *In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litig.*,

10  Case No. 11-2274, 2012 WL 10450139, at *4 (C.D. Cal. June 7, 2012) ("Generalized

11  objections that a discovery request is burdensome without resort to specific reasons is . . .

12  insufficient to justify a refusal to respond.") (quoting *Davidson v. Goord*, 215 F.R.D. 73

13  (W.D.N.Y. 2003) (alterations in original)).  ARC has not met this burden; it has not come

14  close.

15     **B.     ARC's Duty to Preserve Documents Attached when** ████████

16     ██████████████████████████████████████████████████

17

18  ARC cannot cite burden to evade its production obligations for another reason:  its

19  civil duty to preserve documents attached at their creation.  "The duty to preserve evidence

20  begins when litigation is pending or reasonably foreseeable."  *City of Colton v. American*

21  *Promotional Events, Inc.,* Case No. 09-1864, 2011 WL 13223947 at *3 (C.D. Cal. Oct. 6,

22  2011).  "This is an objective standard, asking not whether the party in fact reasonably

23  foresaw litigation, but whether a reasonable party in the same factual circumstances would

24  have reasonably foreseen litigation."  *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d

25  1311, 1320 (Fed. Cir. 2011).  As soon as ARC had "notice" or "should have known that the

26  evidence may be relevant to future litigation" ARC had a duty to preserve these

27  documents.  *Id.*  For the documents HMD Global seeks in the subpoena, that obligation

28  attached at the time of their creation.  As a sophisticated litigant in the business of

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

litigation, *see supra* § A, ARC knew this well; if it failed to preserve its documents properly, it has only itself to blame, and cannot use its own failure as an excuse.

Patent licenses are part of the standard document production in any patent litigation suit.  *Kajeet, Inc. v. Qustodio, LLC*, Case No. 18-1519, 2019 WL 8060078 at *8 (C.D. Cal. Oct. 22, 2019) (ordering plaintiff "to produce all documents relating to settlement and license negotiations with third parties involving any of the Patents-in-Suit."); *Sound View Innovations, LLC v. Hulu, LLC*, 2018 WL 6164271 at *2 (C.D. Cal. June 12, 2018) ("the Court grants the Motion to Compel to the extent that defendant must produce all patent license agreements.").  CCE's prompt production of license agreements relating to the '923 patent shows that ARC understands the relevance of these agreements in patent litigation.  This common practice was enough to trigger ARC's obligation to preserve ███████████ ██████████████████████████████████████████████████████████████████

ARC's civil duty to preserve documents attached for another, more specific reason as well:  in 2010, the Federal Circuit found explicitly that an infringement plaintiff "lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it."  *WiAV Sols. LLC, v. Motorola, Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010).  This ruling is central to HMD Global's motion to dismiss, which establishes ████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ it was "reasonably foreseeable" that this ██████████████████████████████████████████ *City of Colton*, 2011 WL 13223947 at *3; *see* Ex. A §§ 1.2, 2.2. ████████████████████ ████████████████████████████, *see supra* § A, and for that entire time ARC should have known, and sophisticated litigation business ARC surely *did* know, that ████████ ████████████████████████████████████████████ Since at least █████████████████████████████████████ ██████████████████████████████████████████████████████████████████

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  has had a duty to preserve documents regarding this agreement.  The same will be true of

2  any other agreements in which ARC licenses patents held by its subsidiaries.

3       ARC cannot claim it is burdensome to recover from its own records documents it

4  had a duty to preserve.  Knowing its duty, ARC should have stored these documents in a

5  place from which it could easily retrieve them.  If it failed to do so, that is its own fault,

6  and ARC cannot use its own failure to store its documents well to evade its production

7  obligations.  Although this is particularly true for documents subject to the duty to

8  preserve, for a litigation company such as ARC it is generally true as well.  ARC or its

9  subsidiaries have filed 1,430 district court actions over the last twenty years, an average of

10 more than 70 per year.  *See* Ex. EE.  ARC has surely received dozens of subpoenas, if not

11 more, and its subsidiaries over a thousand.  ARC is sophisticated enough to decide, should

12 it wish to do so, to store its records in a way that makes them harder to retrieve in

13 litigation, thus providing it with an additional argument against discovery.  This Court

14 should not allow ARC to engineer its way out of discovery obligations through sloppy

15 record-keeping.

16      **C.   ARC Cannot Shift Its Burden Onto HMD Global**

17      ARC tries to shift the burden onto HMD Global, arguing that because HMD Global

18 could not identify custodians and search terms, ARC need not search at all.  Ex. R at 2.

19 But ARC asks HMD Global to provide information it *does not know*.  HMD Global does

20 not know who at ███████████████████████████████████████████████

21 ███  and thus cannot provide custodians to search.  HMD Global does not know whether

22 ████████████████████████████████████████████████████████████████

23 ████████████████████████████████  and thus cannot provide search terms.  ARC's

24 attempt to push the burden onto HMD Global serves no purpose except to avoid discovery.

25      Conversely, the burden on ARC of searching for documents would be minimal.

26 Public records show that ARC has fewer than 20 employees.  Ex. BB.  ARC can easily

27 find out who on its staff worked on these agreements and search their emails for relevant

28 documents, and can consult its central repositories as well.  A core part of ARC's business

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  is negotiating and executing license agreements, and ARC surely has a procedure for

2  storing documents regarding those core functions.  Finally, ARC claims that it "does not

3  believe any" documents in certain categories exist.  Ex. R at 3.  Surely ARC knows this

4  more surely and can thus make a more definite statement, but in any event if no such

5  agreements exist, it will not be hard to confirm that they do not.  Otherwise, ARC can lose

6  its cake and have it too, by claiming it is too hard to search for documents because they

7  might not exist, while depriving HMD Global of the evidentiary value of learning that

8  documents do not exist.

9        **D.**    **The Court Should Not Grant ARC Consideration as a Non-Party**

10        ARC claims that it should be subject to special consideration as a non-party to the

11  underlying litigation.  But ARC is not a non-party to the underlying action in any

12  reasonable sense.  ARC owns all of CCE (through an intermediary which it also owns),

13  has the same lawyers as CCE, and communicates on the same channels and in the same

14  letters as CCE.  Ex. A at 2-3; Ex. U ("CCE and ARC are jointly represented by the same

15  counsel in this matter.").  ███████████████████████████████████

16  ███████████████████████████████████████████████████

17  ████████████████████████████████  Nor can ARC benefit

18  from any agreement between CCE and HMD Global regarding the conduct of the

19  underlying action, having chosen not to be a plaintiff in that action and thus to avoid the

20  obligations concomitant with that status.  As other courts have recognized, the

21  "relationship between the plaintiff and Acacia suggests that Acacia is entitled to less

22  deference regarding convenience than a true third party.  Acacia appears to have an interest

23  in the outcome of this litigation."  *Cellular Commc'n Equip. LLC v. HTC Corp.*, Case No.

24  15-2373, Docket No. 19 (S.D. Cal. Dec. 16, 2015).

25        **E.**    **Production of Emails is Routine in This District**

26        Even if ARC were not a sophisticated party familiar with the litigation procedures of

27  patent disputes and entwined in this litigation as CCE's parent company, HMD Global's

28  requests would not be burdensome.  Courts routinely order searching of emails, *In re*

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Citimortgage, Inc.*, 2012 WL 10450139, at *5 ("Defendant must search all of its email servers and produce all emails to/from/relating to the named plaintiffs, including defendan's internal communications concerning those emails"); *Aquastar Pool Prods., Inc. v. Color Match Pool Fittings, Inc.*, Case No. 18-mc-94, 2019 WL 856860, at *4 (C.D. Cal. Jan. 23, 2019) ("With these additions to the list, defendant must search for and produce emails responsive to RFP Nos. 12-14 as narrowed."), even to third-party subpoena respondents contesting enforcement. *Liqwd, Inc. v. L'Oreal USA, Inc.*, Case No. 19-15, Docket. No. 33 (C.D. Cal. Feb. 28, 2019).  ARC fails to articulate the specific burden it would suffer, and it must produce documents responsive to HMD Global's requests.

## CONCLUSION

For the foregoing reasons, HMD Global respectfully requests that the Court grant HMD Global's motion to compel production of all documents responsive to Requests for Production Nos. 1-26 in HMD Global's Subpoena To Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action.


Date:  December 21, 2020                    Respectfully submitted,


                                           */s/ Matthew S. Warren*
                                           Matthew S. Warren (Bar No. 230565)
                                           Jennifer A. Kash (Bar No. 203679)
                                           Maissa Chouraki (Bar No. 307711)
                                           WARREN LEX LLP
                                           2261 Market Street, No. 606
                                           San Francisco, California, 94114
                                           +1 (415) 895-2940
                                           +1 (415) 895-2964 facsimile
                                           20-127@cases.warrenlex.com