Stephanie R. Wood (SBN: 242572)
  *swood@bcpc-law.com*
Jeffrey R. Bragalone (*pro hac vice* application to be filed)
  *jbragalone@bcpc-law.com*
**BRAGALONE CONROY PC**
2200 Ross Ave., Suite 4500W
Dallas, Texas 75201
Tel: (214) 785-6670
Fax: (214) 785-6680

Ben M. Davidson (SBN:181464)
  *ben@dlgla.com*
**DAVIDSON LAW GROUP, ALC**
4500 Park Granada Blvd., Suite 202
Calabasas, California 91302
Tel: (818) 918-4622

Attorneys for Respondent
Acacia Research Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| HMD GLOBAL OY,<br><br>                Movant,<br><br>    vs.<br><br>ACACIA RESEARCH CORPORATION,<br><br>              Respondent. | Case No. 8:20-mc-127<br><br>**DECLARATION OF ERIC LUCAS IN SUPPORT OF HMD GLOBAL OY'S APPLICATION FOR LEAVE TO FILE UNDER SEAL**<br><br>**CONTAINS INFORMATION THAT IS HIGHLY CONFIDENTIAL**<br><br>Judge: John D. Early<br>Date: January 21, 2021<br>Time: 10:00 a.m. PST<br>Place: [TBD]<br>Discovery Cutoff: March 18, 2021<br>Pretrial Conference: June 29, 2021<br>Trial Date: August 2, 2021 |

**[FILED UNDER SEAL PURSUANT TO LOCAL RULE 79-5.2.2(b)]**

*REDACTED VERSION OF DOCUMENT INADVERTENTLY FILED PUBLICLY ON 12/31/2020 AS DKT. 17 AND FILED UNDER SEAL ON 12/31/2020 AS DKT. 26 PURSUANT TO LOCAL RULE 79.5.2.2(B)]*

I, Eric Lucas, hereby declare as follows:

1.    I submit this declaration based on personal knowledge and following a reasonable investigation. If called upon as a witness, I could and would competently testify to the truth of each statement herein.

2.    I am the Senior Vice President of Acacia Research Corporation ("ARC"), a publicly traded corporation.

3.    I am also the President of Cellular Communications Equipment LLC ("CCE"), a subsidiary of ARC.

4.    I am generally familiar with CCE's patent infringement case against HMD Global Oy ("HMD"), filed on or about March 17, 2020.

5.    I have reviewed and am generally familiar with the subpoena issued to ARC on or about September 25, 2020.

6.    I have also reviewed HMD's Application for Leave to File Under Seal in connection with its Motion to Compel Production of Documents from ARC, filed on or about December 21, 2020.

7.    The following materials included in HMD's Application for Leave to File Under Seal (listed by their exhibit labels in HMD's Declaration of Maissa Chouraki ("Chouraki Dec."), filed alongside the application) should be sealed in their entirety:



---

1

DECLARATION OF ERIC LUCAS

8. Additionally, the following materials included in HMD's Application for Leave to File Under Seal (listed by their exhibit labels in the Chouraki Dec.), filed alongside the application) include information from the documents listed in ¶ 7 and should be redacted as proposed in HMD's Application:

- Ex. B – HMD's Motion to Dismiss, filed on September 21, 2020.
- Ex. C – CCE's Response to HMD's Motion to Dismiss, filed on October 5, 2020.
- Ex. D – HMD's Reply to CCE's Response, filed on October 13, 2020.
- Ex. E – CCE's Sur-reply to HMD's Reply, filed on October 21, 2020.
- Ex. F – HMD's Subpoena to ARC, dated September 25, 2020.
- Ex. G – ARC's Objections and Responses to HMD's Subpoena, dated October 9, 2020.
- Ex. H – October 16, 2020 Letter from Jennifer Kash to Jonathan Rastegar regarding HMD's Subpoena.
- Ex. I – October 26, 2020 Letter from Jennifer Kash to Jonathan Rastegar regarding HMD's Subpoena.
- Ex. K – October 28, 2020 Letter from Jennifer Kash to Jonathan Rastegar regarding HMD's Subpoena.
- Ex. L – November 3, 2020 Letter from Jennifer Kash to Jonathan Rastegar regarding HMD's Subpoena.

DECLARATION OF ERIC LUCAS

- Ex. R – November 12, 2020 Letter from Jonathan Rastegar to Jennifer Kash regarding HMD's Subpoena.
- Ex. S – HMD's Proposed Joint Stipulation Regarding Motion to Compel Production of Documents from ARC, served on November 16, 2020.
- Ex. T – November 20, 2020 Letter from Jeffrey Bragalone on behalf of CCE to Jennifer Kash regarding disclosure of documents in HMD's Proposed Joint Stipulation.
- Ex. W – November 20, 2020 Letter from Jeffrey Bragalone on behalf of ARC and CCE to Jennifer Kash regarding disclosure of documents in HMD's Proposed Joint Stipulation.
- Ex. X – HMD's Opposition to CCE's Motion to Enforce the Protective Order, filed on December 2, 2020.
- Ex. Y – CCE's Reply to HMD's Opposition, filed on December 4, 2020.
- Ex. Z – HMD's Sur-reply to CCE's Reply, filed on December 7, 2020.

9. In the underlying lawsuit, CCE marked the documents listed in ¶¶ 7 and 8 (the "Designated Material") as HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEY'S EYES ONLY pursuant to the Protective Orders entered by the Eastern District of Texas in that case. A copy of the Protective Order is attached hereto as Exhibit A and a copy of the Stipulated Supplemental Protective Order is attached hereto as Exhibit B.

10. On December 16, 2020, the Eastern District of Texas, in resolving a dispute between CCE and HMD regarding the Designated Material, issued an order requiring that the Designated Material be filed under seal. *See Cellular Communications Equipment LLC v. HMD Global Oy,* C.A. No. 2:20-cv-00078- JRG, Dkt. No. 78 ("E.D. Texas Order") at 2. A copy of this order is attached hereto as

DECLARATION OF ERIC LUCAS

Exhibit C.

11. Additionally, the Memorandum of Law in Support of Motion by HMD Global Oy to Compel Production of Documents from Acacia Research Corporation and should be redacted as proposed in the highlighted version attached as Exhibit D to this declaration.

12. CCE's designation of the highlighted information in Exhibit D is necessary and proper, and there is good cause for the highlighted sections to be filed under seal. The material relates to highly confidential



13. CCE's designation of the Designated Material as HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEY'S EYES ONLY was necessary and proper, and there is good cause for the Designated Material to be filed under seal. The material relates to highly confidential

DECLARATION OF ERIC LUCAS

1

2

3

4

5

6

7        14.

8

9

10

11

12

13

14

15

16

17

18        I declare under penalty of perjury that the foregoing is true and correct.

19

20

21

22    Executed on December 31, 2020

Eric Lucas

23

24

25

26

27

28

DECLARATION OF ERIC LUCAS

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS | § | |
| EQUIPMENT LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:20-CV-00078-JRG |
| | § | |
| HMD GLOBAL OY, | § | |
| | § | |
| *Defendant*. | § | |

## PROTECTIVE ORDER

WHEREAS, Plaintiff Cellular Communications Equipment LLC and Defendant HMD Global Oy, hereafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.	Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information or material ("Protected Material"). Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information or material as follows: "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE."

1

The word(s) "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word(s) "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

2.      Any document produced under Patent Rules 2-2, 3-2, and/or 3-4 before issuance of this Order with the designation "Confidential" or "Confidential - Outside Attorneys' Eyes Only" shall receive the same treatment as if designated "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" under this Order, unless and until such document is redesignated to have a different classification under this Order.

3.      With respect to documents, information, or material designated "CONFIDENTIAL, "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE," both individually and collectively.

Case 2:20-cv-00676-JRC Document 171 Filed 08/14/20 Page 9 of 17 PageID #: 256
Case 2:20-cv-00676-JRC Document 171-1 Filed 08/14/20 Page 9 of 64 PageID #: 320
#:1626

marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.    A designation of Protected Material (*i.e.*, "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information or material derived from or based thereon.

5.    "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, upon order of the Court, or as set forth in paragraph 12 herein:

    (a)    outside counsel of record in this Action for the Parties;

    (b)    employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

(c)     in-house counsel for the Parties, including outside counsel performing the functions of in-house counsel, who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel of record in the litigation of this Action, provided that such in-house and outside counsel complete the Undertaking attached as Appendix A hereto and the same is served upon the producing Party;

(d)     up to and including three (3) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that either party may in good faith request the other party's consent to designate one or more additional representatives, the other party shall not unreasonably withhold such consent, and the requesting party may seek leave of Court to designate such additional representative(s) if the requesting party believes the other party has unreasonably withheld such consent;

(e)     outside consultants or experts (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert at least ten (10) days before access to the Protected Material is to be given to that consultant or Undertaking to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order;

(f)     independent litigation support services, including persons working for or as court reporters, graphics or design services, interpreters or translators, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action; and

(g)     the Court and its personnel.

6.     A Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party

reasonably believes it owes an obligation of confidentiality with respect to such documents, information or material.

7. Documents, information or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "HIGHLY CONFIDENTIAL - SOURCE CODE."

9. For Protected Material designated HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-c) and (e-g); provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client.

10. For Protected Material designated HIGHLY CONFIDENTIAL - SOURCE CODE, the following additional restrictions apply:

(a) Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be connected to (i) a printer, or (ii) a device capable of temporarily storing electronic copies solely for the limited purposes permitted pursuant to paragraphs 10 (h and k) below. Additionally, except as provided in paragraph 10(k) below, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel;

(b) The receiving Party shall inform the producing Party of its intent to inspect the stand-alone computer(s) at least three days prior to any inspection. The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m., local time. However, upon reasonable notice from the receiving party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action;

(c) The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s);

(d) The producing Party will produce Source Code Material in native format on the stand-alone computer(s) as described above. The producing Party shall install tools that are sufficient for viewing the Source Code Material. The receiving Party's outside counsel and/or experts/consultants may request that additional commercially available software tools be installed on the stand-alone computer, provided, however, that (a) the receiving Party provides an appropriate license to such software tools; (b) the producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the receiving Party to perform its review of the Source Code Material consistent with all of the protections herein. The producing Party shall not unreasonably withhold approval of reasonable requests for additional commercially available software tools. The receiving Party must provide the producing Party with the CD, DVD, file path, or Advanced Package Tool package containing such licensed software tool(s) at least five (5) business days in advance of the date upon which the receiving Party wishes to have the additional software tools available for use on the standalone computer;

6

(e)     Access to Protected Material designated HIGHLY CONFIDENTIAL - SOURCE CODE shall be limited to outside counsel and its employees and outside consultants or experts[2] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above, as well as those individuals in paragraphs 5(b), 5(f), and 5(g) above. A receiving Party may include excerpts of Source Code Material in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, provided that the Source Code Materials are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders;

(f)     To the extent portions of Source Code Material are quoted in a Source Code Document, either (1) the entire Source Code Document will be stamped and treated as HIGHLY CONFIDENTIAL - SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as HIGHLY CONFIDENTIAL - SOURCE CODE;

(g)     Except as set forth in paragraph 10(k) below, no electronic copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically;

(h)     The receiving Party shall be permitted to make three sets of printouts (including two sets of photocopies) of Source Code Material, all of which shall be designated and clearly labeled "HIGHLY CONFIDENTIAL - SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied. The receiving Party may print no more than a reasonable number of pages, unless otherwise agreed by the Parties, whose reasonable request for agreement shall not be withheld. The producing Party must ensure that all printed pages must indicate the original file name of the Source Code Material, and must additionally include either page and line numbers for the printed Source Code Material where applicable and/or some other coordinates or markers that identify the portion of the Source Code Material printed. Upon printing any such portions of Source Code, the printed pages shall be collected by the producing Party. The producing Party shall put Bates and line numbers, copy, and clearly label as "HIGHLY CONFIDENTIAL - SOURCE CODE" any pages printed by the receiving Party. Within three (3) business days of a request for pages, the producing Party shall either (i) provide one copy of such unobjected pages to the receiving Party and (ii) inform the requesting Party of its objection, if any, that the printed portions withheld are excessive and/or not done for a permitted purpose. Lead counsel shall meet and confer within four

---

[2] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert.

business days of any such objection. If, after a lead counsel meet and confer, the producing Party and the receiving Party cannot resolve the objection, the receiving Party may file a Motion to Compel Production with the Court;

(i)    Should such printouts or photocopies be transferred back to electronic media, such media shall be labeled "HIGHLY CONFIDENTIAL - SOURCE CODE" and shall continue to be treated as such;

(j)    If the receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or deposition); and

(k)    A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 10(e) above to another person authorized under paragraph 10(e) above, on paper or removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express or other similarly reliable courier. Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. Source Code Material may only be transported electronically for the purpose of Court proceeding(s) or deposition(s) as set forth in paragraph 10(j) above and is at all times subject to the transport restrictions set forth herein. But, for those purposes only, the Source Code Materials may be loaded onto a stand-alone computer.

11.    Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY and/or HIGHLY CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit on behalf of the

receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after its conclusion, including any appeals. For purposes of this paragraph, "prosecution" includes drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims. Prosecution includes, for example, original prosecution, reissue, and reexamination. To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party in a proceeding that challenges a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination, *inter partes* reexamination, post grant review, covered business method patent review, or *inter partes* review). To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent as described above.

12. Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or

immunity may obtain the return or destruction of such documents, information or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information or other material. At the producing Party's election, the recipient(s) shall, gather and destroy or return all copies of such documents, information or other material to the producing Party. In the event the producing Party elects return of the documents, any pages containing privileged or otherwise protected markings by the recipient(s) shall instead be destroyed and certified as such to the producing Party.

13.     There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

14.     Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (vi)

an independent contractor, consultant, and/or expert retained for the purpose of this litigation and has been approved to receive DESIGNATED MATERIAL pursuant to section 5(e); (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

15. Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEY' EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as confidential.

16. Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court. The filing party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing. Exhibits to a filing shall conform to the labeling requirements set forth in this Order. If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on confidential documents, information or material, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

17. The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

18. A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to redesignation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rules of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

19. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

20. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contended the discovery sought

18

involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

21. To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" any documents, information or other material, in whole or in part, produced or given by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information or other material so produced or given shall be treated as "CONFIDENTIAL" in accordance with this Order.

22. Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by a letter furnished to the producing Party. Notwithstanding this provision, outside counsel for the Parties may retain one set of pleadings, correspondence, and attorney and consultant work product (but not document productions) for archival purposes, but must return or destroy any pleadings, correspondence, and consultant work product that contain Source Code Material.

23. The failure to designate documents, information or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a

motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

24.    Any Party knowing or believing that any other party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

25.    Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

26.    Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

27.    Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

So ORDERED and SIGNED this 14th day of August, 2020.


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § | CIVIL ACTION NO.  2:20-CV-00078-JRG |
| | § | |
| HMD GLOBAL OY, | § § | |
| *Defendant*. | § § | |

## APPENDIX A
### UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER

I, _____, declare that:

1. My address is _____. My current employer is _____. My current occupation is _____.

2. I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE" that is disclosed to me.

4. Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES

22

ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.


Signature _____

Date _____

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS | § | |
| EQUIPMENT LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:20-CV-00078-JRG |
| | § | |
| HMD GLOBAL OY, | § | |
| | § | |
| *Defendant*. | § | |

## STIPULATED SUPPLEMENTAL PROTECTIVE ORDER REGARDING CERTAIN NON-PARTY CONFIDENTIAL INFORMATION

WHEREAS, The Honorable Judge Rodney Gilstrap entered a Protective Order in this matter on August 14, 2020 to govern discovery in the above-captioned matter (Dk. No. 31, the "Protective Order");

WHEREAS, Plaintiff Cellular Communications Equipment LLC ("Plaintiff") and Defendant HMD Global Oy ("Defendant") (collectively, the "Parties") may produce documents that include or incorporate confidential non-party information;

WHEREAS, a Party may be contractually obligated to produce certain documents that include or incorporate confidential non-party information pursuant to a confidentiality designation of Outside Attorneys' Eyes Only;

IT IS HEREBY ORDERED that documents which a Party is contractually obligated to produce with confidentiality designation of Outside Attorneys' Eyes Only or higher, may be designated as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY." The Definition of Protected Material in the Protective Order shall include documents designated as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY."

"HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" documents, information, and material may be disclosed only to the persons identified in Paragraph 5(a-b) and (e-g) of the Protective Order, except upon receipt of the prior written consent of the designating party, upon order of the Court, or as set forth in paragraph 12 of the Protective Order.

**So ORDERED and SIGNED this 9th day of September, 2020.**


_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO.  2:20-CV-00078-JRG |
| HMD GLOBAL OY, | § § § | |
| *Defendant*. | § | |

## ORDER

Before the Court is Plaintiff Cellular Communications Equipment LLC's ("CCE") Motion to Enforce the Protective Orders (the "Motion"). (Dkt. No. 68). In the same, CCE seeks an order preventing Defendant HMD Global OY ("HMD") from filing certain documents subject to the Court's Protective Order (Dkt. No. 31) in the United States District Court for the Central District of California. (*Id.* at 1).

HMD served a third-party subpoena under Federal Rule of Civil Procedure 45(c)(2)(A) on CCE's corporate parent, Acacia Research Corporation ("ARC"), on September 25, 2020. (Dkt. No. 70, at 4). According to HMD, ARC did not produce the requested documents. (*Id.*). HMD seeks to compel discovery in the district court local to ARC, the Central District of California. (*Id.*).

The Local Rules of the Central District of California require parties to file with any motions to compel a joint stipulation framing the issues in dispute. C.D. Cal. R. 37-2. "If the allegations made in a prior filing are relevant, a copy of that prior filing should be attached as an exhibit." C.D. Cal. R. 37-2.1. HMD contends that this Local Rule requires certain filings and documents from the above-captioned matter to be filed in the joint stipulation. (Dkt. No. 70, at 4–5). CCE

contends that such a filing in the Central District of California would violate this Court's Protective Order. (Dkt. No. 68, at 7–8).

The Court is mindful of the need to avoid interfering with a sister Court's resolution of this discovery dispute on the merits. In view of the foregoing, it is **ORDERED** that the parties have leave to file such papers in the Central District of California as is necessary to comply with that Court's Local Rules to facilitate that Court's resolution of this discovery dispute. It is further **ORDERED** that such papers shall be filed **UNDER SEAL** pursuant to that Court's procedures. The parties are further directed to furnish a copy of this Order to the Clerk of the Central District of California. Nothing in this Order shall be construed as limiting the application or enforceability of the Protective Order in this case, and the papers filed in the Central District of California remain subject to this Court's Protective Order in all other respects.[1]

In view of such leave being granted, CCE's Motion is **DENIED**.

**So ORDERED and SIGNED this 16th day of December, 2020.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[1] As CCE and ARC are jointly represented by the same counsel in this matter (*see, e.g.*, Opp. Ex. O, Dkt. No. 70-17), the practical effect of this Order does not go beyond permitting persons already subject to the Protective Order to litigate before a sister Court.

# EXHIBIT D

# CONTAINS INFORMATION THAT IS HIGHLY CONFIDENTIAL

UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Matthew S. Warren (Bar No. 230565)
Jennifer A. Kash (Bar No. 203679)
Maissa Chouraki (Bar No. 307711)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-127@cases.warrenlex.com

*Attorneys for HMD Global Oy*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

|  |  |
|---|---|
| HMD GLOBAL OY,<br><br>    Movant,<br><br>v.<br><br>ACACIA RESEARCH CORPORATION,<br><br>    Respondent. | Case No. 8:20-mc-127<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY HMD GLOBAL OY TO COMPEL PRODUCTION OF DOCUMENTS FROM ACACIA RESEARCH CORPORATION**<br><br>Judge: [TBD]<br>Date: [TBD]<br>Time: [TBD]<br>Place: [TBD]<br>Discovery Cutoff:  March 18, 2021<br>Pretrial Conference: June 29, 2021<br>Trial Date: August 2, 2021 |

**UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**CONFIDENTIAL**

31

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 33 of 64   Page ID
#:1649
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 33 of 64
Page ID #:1529
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## TABLE OF CONTENTS

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.   ARC is a Sophisticated Litigant in the Business of Litigation. . . . . . . . . . . . . . . . 2

B.   ███████████████████████ . . . . . . . . . . . . . . . . . . . . . 2

C.   The Underlying Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

D.   HMD Global's Motion to Dismiss for Lack of Standing. . . . . . . . . . . . . . . . . . . 3

E.   The Starboard Security Interest May Further Undermine CCE's Standing. . . . . . . 4

F.   HMD Global Subpoenas CCE's Parent ARC at its Home, in This District. . . . . . . 4

G.   ARC Refuses to Participate in This Court's Joint Stipulation Process. . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.   Parties May Seek Discovery That is Relevant and Proportional to the Case. . . . . . 5

II.   ARC Cannot Block Discovery Because it Disagrees with HMD Global's
Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.   HMD Global Seeks Documents Directly Relevant to CCE's Standing Claims. . . . 8

A.   ARC's Licenses of its Subsidiaries' Patents. . . . . . . . . . . . . . . . . . . . . . . 8

1.   Documents Concerning ███████████████ . . . . . . 8

2.   Documents Concerning Other Licenses of its
Subsidiaries' Patents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3.   Agreements Executed Concurrently With Those Agreements. . . . . . 11

4.   Communications Regarding Agreements and Negotiations. . . . . . . 11

5.   All of These Categories Are Highly Relevant to
CCE's Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.   Documents Concerning the '923 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . 14

C.   Documents Concerning the Relationship Between ARC and CCE. . . . . . . 15

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 34 of 64   Page ID
#:1650
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 34 of 64
Page ID #:1580
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

D.   Documents Concerning the Assignment from ARG to CCE. . . . . . . . . . . . 16

E.   Documents Concerning the Starboard Security Agreement. . . . . . . . . . . . . 17

F.   Documents Concerning '923 Litigation or Other CCE Litigation. . . . . . . . 19

III.   HMD Global's Email Production Requests are Not Unduly Burdensome. . . . . . . 20

A.   ARC Has Failed to Meet Its Burden to Show Burdensomeness. . . . . . . . .  20

B.   ARC's Duty to Preserve Documents Attached when ███████████
█████████████████████████████████████████████████████. 21

C.   ARC Cannot Shift Its Burden Onto HMD Global. . . . . . . . . . . . . . . . . . . . 23

D.   The Court Should Not Grant ARC Consideration as a Non-Party. . . . . . . . 24

E.   Production of Emails is Routine in this District. . . . . . . . . . . . . . . . . . . . . . 24

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

– ii –

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 35 of 64   Page ID
#:1651
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 35 of 64
Page ID #:1582
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### TABLE OF AUTHORITIES

| *Cases* | **Pages** |
|---|---|

*67 Wall St. Co. v. Franklin Nat'l Bank,*
    37 N.Y.2d 245, 248-49 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 18

*Acceleration Bay LLC v. Activision Blizzard, Inc.,*
    No. 16-453, 2017 WL 3668597 (D. Del. Aug. 24, 2017) . . . . . . . . . . . . . . . . . . . 3

*Alpine View Co. v. Atlas Copco AB,*
    205 F.3d 208, 221 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Aquastar Pool Prods., Inc. v. Color Match Pool Fittings, Inc.,*
    No. 18-mc-94, 2019 WL 856860 (C.D. Cal. Jan. 23, 2019) . . . . . . . . . . . . . . . . . 25

*Blankenship v. Hearst Corp.,*
    519 F.2d 418, 429 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.,*
    No. 17-430, 2019 WL 2210686 (E.D. Tex. May 22, 2019) . . . . . . . . . . . . . . . . . 7

*Castelan-Gutierrez v. Bodega Latina Corp.,*
    No. 17-1877, 2018 WL 4050493 (D. Nev. Mar. 30, 2018) . . . . . . . . . . . . . . . . . 7

*City of Colton v. American Promotional Events, Inc.,*
    No. 09-1864, 2011 WL 13223947 (C.D. Cal. Oct. 6, 2011) . . . . . . . . . . . . . . 21, 22

*Cellular Communications Equipment LLC v. HMD Global Oy,*
    No. 20-78 (E.D. Tex. March 17, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cellular Commc'n Equip. LLC v. HTC Corp.,
    No. 15-2373 (S.D. Cal. Dec. 16, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Credit Suisse Sec. (USA) LLC,*
    No. 11-232, 2013 WL 5312511 (S.D.N.Y. Sept. 23, 2013) . . . . . . . . . . . . . . . . 12

*Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.,*
    No. 15-979, 2016 WL 7486606  (C.D. Cal. Oct. 27, 2016) . . . . . . . . . . . . . . . . . 6

*Dataflow, Inc. v. Peerless Ins. Co.,*
    No. 11-1127, 2014 WL 148685, at *4 (S.D.N.Y. Jan. 13, 2014) . . . . . . . . . . . 12, 18

*Davidson v. Goord,*
    215 F.R.D. 73 (W.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Faulkner v. Nat'l Geographic Soc.,*
    452 F. Supp. 2d 369, 381 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fed. Ins. Co. v. Americas Ins. Co.*,
   258 A.D.2d 39, 44 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

*G.E. Funding Capital Mkt. Servs., Inc. v. Nebraska Inv. Fin. Auth.*,
   No. 15-1069, 2017 WL 2880555 (S.D.N.Y. July 6, 2017). . . . . . . . . . . . . . . . . 10

*Infanzon v. Allstate Ins. Co.*,
   335 F.R.D. 305, 312 (C.D. Cal. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Inland Concrete Enters., Inc. v. Kraft Ams., L.P.*,
   No. 10-1776, 2011 WL 13209258 (C.D. Cal. May 12, 2011). . . . . . . . . . . . . . . 6

*In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litig.*,
   No. 11-2274, 2012 WL 10450139 (C.D. Cal. June 7, 2012). . . . . . . . . . . . . 21, 24

*Kajeet, Inc. v. Qustodio, LLC*,
   No. 18-1519, 2019 WL 8060078 (C.D. Cal. Oct. 22, 2019). . . . . . . . . . . . . . . 22

*Keith H. v. Long Beach Unified School Dist.*,
   228 F.R.D. 652, 655-56 (C.D. Cal. May 18, 2005). . . . . . . . . . . . . . . . . . . . . . 21

*Kor Media Grp., LLC v. Green*,
   294 F.R.D. 579, 583 (D. Nev. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Las Vegas Sun, Inc. v. Adelson*,
   No. 19-1667, 2020 WL 2114352 (D. Nev. May 4, 2020). . . . . . . . . . . . . . . . . . 7

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
   No. 19-15, Docket. No. 33 (C.D. Cal. Feb. 28, 2019). . . . . . . . . . . . . . . . . . . . 25

*Micron Technology, Inc. v. Rambus Inc.*,
   645 F.3d 1311, 1320 (Fed. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*,
   No. 17-715, 2019 WL 1399927 (E.D. Tex. Mar. 28, 2019). . . . . . . . . . . . . . . . 13

*Skellerup Indus. Ltd. v. City of Los Angeles*,
   163 F.R.D. 598, 600 (C.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Soundgarden v. UMG Recordings, Inc.*,
   No. 19-5449, 2019 WL 10093965 (C.D. Cal. Dec. 2, 2019). . . . . . . . . . . . . . . . 7

*Sound View Innovations, LLC v. Hulu, LLC*,
   No. 17-4146, 2018 WL 6164271 (C.D. Cal. June 12, 2018). . . . . . . . . . . . . . . 22

*Tradebay, LLC v. eBay, Inc.*,
   278 F.R.D. 597, 600 (D. Nev. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 37 of 64   Page ID
#:1653
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 37 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Trilegiant Corp. v. Sitel Corp.*,
   272 F.R.D. 360, 364-65 (S.D.N.Y. 2010)................................ 9, 11

*Uniloc USA, Inc. v. Apple Inc.*,
   No. 18-358, Docket No. 165 (N.D. Cal. Dec. 4, 2020)............... 7, 17, 18

*United States v. Procter & Gamble Co.*,
   356 U.S. 677, 682 (1958)......................................... 7

(USA) LLC v. Grand Circle LLC,
   No. 11-232, 2013 WL 5312511 (S.D.N.Y. Sept. 23, 2013)............. 12

*WiAV Sols. LLC v. Motorola Inc.*,
   631 F.3d 1257, 1266 (Fed. Cir. 2010).............................. 3, 22

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 38 of 64   Page ID
#:1654
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 38 of 64
Page ID #:1582
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

## __TABLE OF AUTHORITIES__

2

*Statutes and Rules*                                                          **Pages**

3     Fed. R. Civ. P. 26(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

4     Local Rule 37-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

5     Local Rule 37-2.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

– vi –                                                    Case No. 8:20-mc-127

# **INTRODUCTION**

The question before this Court is simple:  must Acacia Research Corporation produce documents showing whether its wholly owned subsidiary, Cellular Communications Equipment LLC, has standing to pursue claims of infringement in its underlying litigation against HMD Global Oy?  The answer is "yes."  ARC seems to know this, because it has done everything it can to avoid this question.  First, ARC claimed that HMD Global could not even seek discovery on CCE's standing, because ARC believes that CCE does have standing.  ARC's supporting logic was risible—it claimed that an ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████—but better arguments would not help ARC, because that is not how discovery works:  if a party could avoid discovery because it disagreed with an underlying claim, there would be no discovery.

Next, ARC claimed that discovery would be burdensome, but never provided any specific information to back up this claim, despite multiple opportunities to do so.  Nor would such information help ARC in any event, since ARC itself created any burdens it now claims through its own record-keeping decisions, and did so while obligated to preserve relevant documents for litigation.  ARC, a sophisticated litigant in the business of litigation, cannot engineer its way out of production obligations through its own decisions.

Finally, and most troublingly, ARC refused to participate in the joint stipulation process required by this Court, while its subsidiary CCE, represented by the same counsel, asked the Eastern District of Texas, which presides over the underlying litigation, to block HMD Global from bringing this motion.  Even worse, CCE did so by attacking this Court, which it repeatedly called an "unknown court," and by arguing that disclosing confidential documents *to this Court's own personnel* "could prove disastrous" to ARC and CCE.  Of course ARC and CCE could not support their slurs on this Court and its personnel, and the Eastern District of Texas properly ruled that HMD Global could file this motion, seeking in ARC's home Court documents maintained at ARC's sole office, within this District.

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 40 of 64   Page ID #:1656
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 40 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

| | |
|---|---|
| 1 | After all of ARC and CCE's attempts to distract attention from the man behind the |
| 2 | curtain, the question before this Court remains:  must ARC produce documents showing |
| 3 | whether its wholly owned subsidiary CCE has standing to pursue its claims on |
| 4 | infringement in its underlying litigation against HMD Global Oy?  The answer to this |
| 5 | question remains "yes," and so this Court should grant HMD Global's motion to compel. |

**BACKGROUND**

**A.      ARC is a Sophisticated Litigant in the Business of Litigation**

Respondent Acacia Research Corporation ("ARC") is a sophisticated litigant in the business of Federal litigation.  As a patent monetization company, ARC admits in public filings, "often we must resort to litigation," and that monetization effort "often begins with the filing of patent infringement litigation" rather than a licensing request not backed by a Federal complaint.  Declaration of Maissa Chouraki Ex. BB at 4, 2.  (Further exhibit citations are to the same declaration.)  As a result, ARC spends "a significant amount of our financial and management resources to pursue our current litigation matters."  *Id.* at 8.  In 2020 alone, Acacia and its subsidiaries have filed 11 district court cases.  Ex. CC.  In 2016, ██████████████████████████████████████████████████████████  ARC and its subsidiaries filed 14 district court cases.  Ex. DD.  Over the last twenty years, ARC and its subsidiaries have filed 1,430 district court cases.  Ex. EE.  Litigation is essential to ARC's business, and ARC's business is essentially litigation.

**B.**      ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████████

Case 8:20-mc-00127-JLS-JDE    Document 31-1    Filed 01/05/21    Page 41 of 64    Page ID
#:1657
Case 8:20-mc-00127-JLS-JDE    Document 26 (Ex Parte)    Filed 12/31/20    Page 41 of 64
Page ID #:1587

UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ██████████████████████████████████████

9  ## C.    The Underlying Action

10  On March 17, 2020, Cellular Communications Equipment LLC ("CCE") sued HMD

11  Global for infringement of a single patent, U.S. Patent No. 7,218,923 ("the '923 patent").

12  *Cellular Communications Equipment LLC v. HMD Global Oy*, Case No. 20-78, Docket

13  No. 1 (E.D. Tex. March 17, 2020). On August 10, 2020, CCE effected service on HMD

14  Global through the Hague Convention. *Id.*, Docket No. 30 (E.D. Tex. Aug. 10, 2020).

15  ## D.    HMD Global's Motion to Dismiss for Lack of Standing

16  On September 17, 2020, CCE produced licenses covering the '923 patent including

17  ████████████████████████████████████ On September 21, HMD Global

18  moved to dismiss on grounds including CCE's lack of standing to sue. Ex. B. HMD

19  Global argued that a plaintiff such as CCE "lacks standing to sue a party who has the

20  ability to obtain such a license from another party with the right to grant it." *WiAV Sols.*

21  *LLC v. Motorola Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010); *see also, e.g., Acceleration*

22  *Bay LLC v. Activision Blizzard, Inc.*, No. 16-453, 2017 WL 3668597, at *3 (D. Del. Aug.

23  24, 2017). HMD Global explained that, ██████████████████████████████

24  ██████████), CCE cannot establish that it has the right to exclude others from practicing

25  the '923 patent, and thus lacks standing to sue for infringement. Ex. B at 2-4, 7-11; Ex. D

26  at 1-8; Ex. A. Opposing, CCE made the striking claim that the "████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████████ Ex. C at 6, 7. CCE has never produced

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 42 of 64   Page ID #:1658

Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 42 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  any later-granted license ████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ██████████████ parties briefed this motion, Exs. C, D, E, which remains pending.

4  **E.   The Starboard Security Interest May Further Undermine CCE's Standing**

5       HMD Global discovered publicly available filings that further questioned CCE's

6  standing.  A "Patent Security Agreement" filed with the Patent and Trademark Office

7  granted Starboard a security interest in the '923 patent.  A "Release of Security Interest in

8  Patents" filed with the P.T.O. shows that on June 30, Starboard rescinded its security

9  interest.  These transactions may independently undermine CCE's standing in its case.

10 **F.   HMD Global Subpoenas CCE's Parent ARC at its Home, in This District**

11      On September 25, HMD Global served ARC with a subpoena, Ex. F, for documents

12 regarding ████████████████████████████████████ " and the security interest:

13 •    documents concerning ████████████████████████████ ' and other

14      agreements in which ████████████████████████ (Requests 1-12);

15 •    documents concerning actual or potential agreements concerning the '923, its

16      ownership, or valuations of the '923 or any portfolio including it (Requests 13-15);

17 •    documents concerning the relationship between ARC and CCE (Requests 16-17);

18 •    documents concerning the security interest and its release (Requests 18-23); and

19 •    documents concerning litigation concerning the '923 patent (Requests 24-26).

20 On October 9, 2020, ARC served objections and responses to the subpoena, in which it

21 refused to produce a single document. Ex. G.

22 **G.   ARC Refuses to Participate in This Court's Joint Stipulation Process**

23      On October 16, HMD Global sought to meet and confer on the subpoena. Ex. H.

24 HMD Global and ARC had two lengthy telephone conferences, and exchanged multiple

25 letters and emails regarding the subpoena. Exs. I, J, K.  ARC continued to refuse to

26 produce a single document.  On November 3, HMD Global triggered Local Rule 37-1 with

27 a detailed letter, giving ARC had ten days to conduct a final conference. Ex. L.  After still

28 more letters (Exs. M, N, O), ARC agreed to meet and confer on November 13, the last

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 43 of 64   Page ID #:1659
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 43 of 64   Page ID #:1589
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

possible day. Ex. P, Q, R. The parties conferred by telephone for a third and final time. On November 16, HMD Global served its portion of a draft joint stipulation, along with "all declarations and exhibits to be offered in support of the moving party's position," as required by Local Rule 37-2.2. Ex. S. ARC had a week, until Monday, November 23, to return its "portion of the stipulation, together with all declarations and exhibits to be offered in support of the moving party's position." Loc. R. 37-2.2.

On Friday, November 20, the last business day before ARC's deadline to submit its portion of the joint stipulation, ARC and CCE sought to derail HMD Global's motion. Represented by the same counsel, ARC and CCE wrote tandem letters to HMD Global: CCE claimed for the first time that the Eastern District of Texas protective order governing confidentiality barred disclosure of "confidential information produced by CCE in this Action to a Central District of California court or its personnel" (Ex. T), while ARC refused to provide its portion of the joint stipulation on the grounds that "it is improper to file the joint stipulation that would result in such violation." Ex. U. CCE filed a "Motion to Enforce" the Eastern District protective order before that Court, including troubling claims about the trustworthiness of this Court. CCE repeatedly called this Court an "unknown court," Ex. W at 1, 5, 7, 8, 11, and claimed that disclosure of information to its judges and other personnel "could prove disastrous" to ARC and CCE. *Id.* at 8. CCE and HMD Global briefed this issue, Exs. W, X, Y, Z, and last week the Eastern District denied CCE's motion, ruling that HMD Global may file papers here "as is necessary to comply with that Court's Local Rules to facilitate that Court's resolution of this discovery dispute," and ordering CCE and HMD Global to provide this Court with a copy of the order. Ex. V.

## **ARGUMENT**

### I.   **Parties May Seek Discovery That is Relevant and Proportional to the Case**

Rule 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense" so long as it is "proportional to the needs of the case." "A 'relevant matter' under Rule 26(b)(1) is any matter that 'bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.' Relevancy

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 44 of 64   Page ID
#:1660
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 44 of 64
Page ID #:1640
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  should be 'construed "liberally and with common sense" and discovery should be allowed

2  unless the information sought has no conceivable bearing on the case.'" *Dale Evans*

3  *Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*, Case No. 15-979, 2016 WL 7486606,

4  at *3 (C.D. Cal. Oct. 27, 2016) (citations omitted). "Under the general relevance

5  requirements set forth in Rule 26(b), [a] subpoena may command the production of

6  documents that are 'nonprivileged' and are 'relevant to any party's claim or defense.'" *Id.*

7  (quoting Fed. R. Civ. P. 26(b)(1)).

8  **II.    ARC Cannot Block Discovery Because it Disagrees with HMD Global's Claims**

9       ARC argues that all or nearly all of HMD Global's requested discovery is improper

10  because, in ARC's view, HMD Global will eventually lose the legal issue which those

11  documents might inform.  Specifically, in its letter of November 12, ARC states:

12      ARC has never been party to any agreement that assigned it rights in the '923
13      patent.  Thus, by law, ARC does not have the right to license the '923 patent.
14      ████████████████████████████████████████████████████████████████
15      ███████████████████████████████████    No amount of parole (sic) evidence
16      or materials regarding the course of dealing can change the fact that, by law, ARC
        does not have the right to license the '923 patent.  As such, the materials covered by
17      Request Nos. 1-12 are irrelevant and intended merely to harass ARC.

18  Ex. R.  In other words, ARC argues that because it believes it will eventually win the

19  underlying dispute, it would be "irrelevant and intended merely to harass ARC" for HMD

20  Global to obtain discovery that might show that ARC should lose the underlying dispute.

21      Even setting aside the factual problems with this argument—which depends on the

22  contention that ██████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████████████████

24  ██████████████████████that is not how discovery works.  "The obvious and overall

25  purpose of discovery under the Federal Rules of Civil Procedure is to require disclosure of

26  all relevant information, so that the ultimate resolution of disputed issues is based on a full

27  and accurate understanding of the facts and therefore embodies a fair and just result."

28  *Inland Concrete Enters., Inc. v. Kraft Ams., L.P.*, Case No. 10-1776, 2011 WL 13209258,

Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 45 of 64   Page ID #:1594

UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

at *2 (C.D. Cal. May 12, 2011) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). If a target of discovery could escape its obligations to produce documents by claiming that its side would ultimately win the underlying dispute, there would be no discovery. *Castelan-Gutierrez v. Bodega Latina Corp.*, Case No. 17-1877, 2018 WL 4050493, at *2 (D. Nev. Mar. 30, 2018) ("The mere fact that a party may articulate some legal argument that may allow it to prevail on a particular claim, even when presented in a currently-pending dispositive motion, is simply insufficient to justify denying discovery to its opponent."). Indeed, the "Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending," *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 312 (C.D. Cal. 2020) (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011)), and discovery will proceed unless the "party seeking a stay of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied." *Soundgarden v. UMG Recordings, Inc.*, Case No. 19-5449, 2019 WL 10093965, at *6 (C.D. Cal. Dec. 2, 2019) (quoting *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995)); *see also Las Vegas Sun, Inc. v. Adelson*, Case No. 19-1667, 2020 WL 2114352, at *5 (D. Nev. May 4, 2020) ("Generally, there must be no question in the court's mind that the dispositive motion will prevail, and therefore, discovery is a waste of effort.") (quoting *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 583 (D. Nev. 2013)).

Furthermore, the only ruling that could moot HMD Global's subpoena is a complete dismissal of CCE's complaint. Even if the Eastern District of Texas were to deny HMD Global's pending motion to dismiss, because standing is a "threshold jurisdictional issue" (Ex. D at 7-8) which CCE admitted "may be raised at anytime" (Ex. C at 11), HMD Global can present facts beyond the pleadings to support its claim, has no time limit to make this claim, and can take discovery and use that discovery to support a renewed motion. *Uniloc USA, Inc. v. Apple Inc.*, No, 18-358, Docket No. 165 (N.D. Cal. Dec. 4, 2020) (granting renewed motion to dismiss for lack of standing based on new evidence obtained through discovery); *see also Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.*, No. 17-430, 2019 WL

– 7 –

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 46 of 64   Page ID
#:1662
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 46 of 64
Page ID #:1542
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

2210686, at *3 (E.D. Tex. May 22, 2019) ("[J]urisdictional discovery should only be

denied where it is *impossible* that the discovery 'could . . . add[] any significant facts' that

might bear on the jurisdictional determination.") (alteration and emphasis in original)

(quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)).  In

addition, documents sought by the subpoena are relevant to other possible standing claims

as well as internal analysis and valuations of the '923 patent, prior royalties paid for it, and

potential damages for infringement.  For at least these reasons, no ruling on HMD Global's

motion to dismiss, short of a complete dismissal, will moot the subpoena and ARC must

produce documents responsive to HMD Global's requests.

## III.   HMD Global Seeks Documents Directly Relevant to CCE's Standing Claims

### A.   ARC's Licenses of its Subsidiaries' Patents

Requests 1-12 seek documents concerning ARC's licenses of its subsidiaries'

patents.  These requests fall into four categories:  documents concerning the agreements

themselves by which ARC has licensed  its subsidiaries' patents█████████████████

███████████████████████████████ agreements executed

concurrently with those agreements, which are necessary to understand them, and

communications and negotiations regarding any of these agreements.

### 1.   Documents Concerning ███████████████

Request No. 1 seeks "documents concerning any agreement between persons

███████████████████████ that includes any patent license," Ex. F at 7,

including████████████████████████████████████████

also including any *other* license agreements████████████ ARC refuses to

produce any documents regarding this request.  Ex. R at 2-3; *see* Ex. S at 9-16.

Documents sought by this request are directly relevant to CCE's standing claims.

They would include, for example, drafts of█████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

– 8 –                                     Case No. 8:20-mc-127

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 47 of 64   Page ID
#:1663
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 47 of 64
Page ID #:1543

UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   ████████████████████████████ These documents would also include any

2   analyses of ████████████████████████████████████████

3   ███████████████████████████████████████████████████

4   ██████████████████████████████ " Documents that would be responsive to

5   this request would include, for example:

6   • A prior draft of ████████████████████████████████████

7   ████████████████████████████████████████

8   • An email from ████████████████████████████████

9   ████████████████████████████████████

10  • An email from ████████████████████████████████

11  HMD Global has no idea whether these documents exist, of course, but that is precisely

12  why it needs discovery.  This request also seeks documents concerning any prior patent

13  licenses ████████████████████████████████████████

14  ████████████████████████████████████████████

15  ███████████████████████████████████████████████

16  ████████████████  *See, e.g.*, *Faulkner v. Nat'l Geographic Soc.*, 452 F. Supp. 2d 369,

17  381 (S.D.N.Y. 2006) (explaining that "the parties' course of dealing throughout the life of

18  a contract is highly relevant to determining the meaning of the terms of the agreement")

19  (citations omitted); *see also Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 364-65

20  (S.D.N.Y. 2010) (holding that "anything that might further the interpretation" of the

21  disputed contract provision "is relevant and subject to discovery") (collecting cases).  ARC

22  must produce these documents.  *See Trilegiant Corp.*, 272 F.R.D. at 364-65 (ordering

23  plaintiff to produce documents concerning disputed contract provisions and "the drafting

24  and use of such contract language" in order to aid in the interpretation of those provisions).

25        **2.     Documents Concerning Other Licenses of its Subsidiaries' Patents**

26        Request Nos. 5 and 9 seek documents concerning other licenses that ARC has

27  executed covering its subsidiaries' patents.  Request No. 5 seeks "documents concerning

28  any agreement between ARC and any other person or persons that includes any patent

– 9 –

1  license including a patent owned in whole or part by one or more Acacia Entities," and

2  Request No. 9 seeks "documents concerning any agreement between ARC and any other

3  person or persons that includes any patent license including a patent that one or more

4  Acacia Entities has authority to license." Ex. F at 8, 9; *see* Ex. S at 25-27, 33-36. There is

5  likely substantial overlap between patents "owned in whole or part by one or more Acacia

6  Entities" and patents "that one or more Acacia Entities has authority to license"; HMD

7  Global used both definitions to minimize the chance that artful reading could exclude

8  documents. ARC refuses to produce any documents regarding these requests. Ex. R. at 3.

9       HMD Global's standing motion rests on the argument that ARC can and does hold

10  the right to license patents held by its subsidiaries directly, rather than through the

11  subsidiaries themselves. *See generally* Exs. B, D. If HMD Global is correct, then ARC

12  subsidiaries such as CCE either lack standing to sue entirely, or lack standing to sue

13  without ARC's participation as a plaintiff in the case. These requests ask a simple

14  question: ███████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████

18  ██████████████████████████████████ *See, e.g., G.E. Funding Capital*

19  *Mkt. Servs., Inc. v. Nebraska Inv. Fin. Auth.*, Case No. 15-1069, 2017 WL 2880555, at *4

20  (S.D.N.Y. July 6, 2017) (parol evidence may include "conversations, negotiations and

21  agreements made prior to or contemporaneous with the execution of a written agreement").

22  These agreements are particularly necessary to rebut one of CCE's arguments to the

23  Eastern District of Texas, which is that without a "written agreement assigning rights to

24  AR Corp., it is impossible for AR Corp. to have rights in the '923 patent." Ex. C at 5; *see*

25  Ex. E at 1-2. HMD Global could rebut this argument by showing that ARC has a history

26  of licensing its subsidiaries' patents with or without the "written agreement assigning

27  rights" that CCE claims is required—but only with discovery into ARC's history of

28  licensing its subsidiaries' patents, which these requests seek. ARC cannot block discovery

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 49 of 64   Page ID
#:1665
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 49 of 64
Page ID #:1645
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

necessary to rebut arguments of its subsidiary CCE.  Finally, even if ARC has *never*
executed any other agreements that license its subsidiaries' patents, that too is relevant,
and ARC should confirm that no such agreements exist.

### 3.   Agreements Executed Concurrently With Those Agreements

Request Nos. 2, 6, and 10 seek "documents concerning any agreement executed
concurrently with," respectively, agreements identified in Request Nos. 1, 5, and 9.  Ex. F.
at 7, 8, 9; *see* Ex. S at 17-19, 27-29, 36-39.  ARC refuses to produce documents regarding
these requests.  Ex. R. at 2-3.  Agreements identified in Request Nos. 1, 5, and 9 are
directly relevant to CCE's standing to bring its claim, *see supra* §§ III.A.1, III.A.2, and
concurrent agreements are equally relevant because one cannot understand an agreement
without understanding its full context including concurrent agreements.  Consider: ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Concurrent agreements often contain such
related provisions, which affect understanding of a variety of provisions.  Without the
documents HMD Global seeks, it cannot know if any concurrent agreements have
provisions relevant to the dispute.  ARC must produce these documents.  *See Trilegiant
Corp.*, 272 F.R.D. at 364-65 (ordering plaintiff to produce documents concerning disputed
contract provisions and "the drafting and use of such contract language" in order to aid in
the interpretation of those provisions).

### 4.   Communications Regarding Agreements and Negotiations

Request Nos. 3, 7, and 11 seek "communications concerning any agreement"
identified, respectively, in Request Nos. 1-2, 5-6, and 9-10.  Ex. F at 7, 8, 9; *see* Ex. S at
19-23, 29-31, 38-40.  And Request Nos. 4, 8, and 12 seek "communications concerning
negotiations leading to any agreement" identified, respectively, in Request Nos. 1-2, 5-6,
and 9-10.  Ex. F at 8, 9; *see* Ex. S at 23-24, 31-32, 40-42.  There is some overlap between

– 11 –

Case No. 8:20-mc-127

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 50 of 64   Page ID
#:1666
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 50 of 64
Page ID #:1545
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   "communications concerning negotiations" and other "communications concerning any

2   agreement," but not total overlap, as "communications concerning negotiations" would not

3   yield communications occuring after execution of an agreement.  ARC refuses to produce

4   any documents responsive to these requests.  Ex. R. at 2-3.  But the communications HMD

5   Global requests are directly relevant to CCE's standing claims.

6        The negotiation history of a contract is highly relevant to understanding its meaning.

7   67 *Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 248-49 (1975) (recognizing that the

8   court can look to the "surrounding facts and circumstances to determine the intent of the

9   parties," including "evidence of conversations, negotiations and agreements made prior to

10   or contemporaneous with the execution" in order to explain ambiguities in a written

11   agreement).  Similarly, communications after execution of any agreements are highly

12   relevant as showing the course of performance.  *See Fed. Ins. Co. v. Americas Ins. Co.*,

13   258 A.D.2d 39, 44 (1999) ("the parties' course of performance under the contract is

14   considered to be the most persuasive evidence of the agreed intention of the parties")

15   (internal quotation marks and citation omitted); *Credit Suisse Sec. (USA) LLC v. Grand

16   Circle LLC*, Case No. 11-232, 2013 WL 5312511, at *11 (S.D.N.Y. Sept. 23, 2013) ("The

17   parties' objective manifestations of their intent—namely, their words to each other and

18   their deeds—are significantly more probative than uncommunicated subjective intent.")

19   (internal quotation marks and citation omitted).

20        Communications within ARC are also highly relevant, as they shed light on how

21   ARC interpreted any agreements.  *See Dataflow, Inc. v. Peerless Ins. Co.*, Case No.

22   11-1127, 2014 WL 148685, at *4 (S.D.N.Y. Jan. 13, 2014) (finding that defendant's

23   internal communications showing its interpretation of a written agreement are relevant to

24   its interpretation of the agreement).  And communications between ARC and CCE are

25   highly relevant.  For example, in opposing HMD Global's motion to dismiss, CCE claimed

26   ██████████████████████████████████████████████████

27   ██████████████████████████ Ex. C at 6, 7; *see* Ex. E at 3 ████████

28   ██████████████████████████████████████████████████

– 12 –                                              Case No. 8:20-mc-127

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

1      ███████████   CCE further claimed that "████████████████████

2      ███████████████████████████████████████

3      ████     *Id.* Ex. E at 4 (*citing Polaris PowerLED Techs., LLC v. Samsung Elecs. Am.,*

4      *Inc.*, Case No. 17-715, 2019 WL 1399927, at *3 (E.D. Tex. Mar. 28, 2019); Ex. C at 6.

5      HMD Global is entitled to test those claims by probing the communications that actually

6      occurred.  Did ARC ever actually ████████████████████

7      ███████████████████████████████████████

8      ███████████████████████████████████████

9      ███████████████████████████████████████

10     ███████████████████████████████████████

11     ███████████████████████████████████████

12     ███████████   HMD Global is entitled to that evidence as well.

13     ███████████████████████████████████████

14     ███████████████████████████████████████

15     ███████████   *See* Exs. FF, GG, HH, II, JJ, KK.   ████████████

16     ███████████████████████████████████████

17     ███████████████████████████████████████

18     ███████████████████████████████████████

19     ████   *Id.* §§ 1.6, 1.9.   ████████████████

20     ███████████████████████████████████████

21     ███████████████████████████████████████

22     ████████████   *Id.* § 4.4.   ████████████

23     ███████████████████████████████████████

24     ███████████████████████████████████████

25     ███████   Ex. JJ § II.13.   ████████████████

26     ████████████████   *Id.* at CCE_HMD_001643.

27     ███████████████████████████████████████

28     ███████████████████████████████████████

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 52 of 64   Page ID #:1668
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 52 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████" All these communications

would be highly relevant to HMD Global's claims, because they address the██████

██████████████████████████████████████to ███████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████ would be highly relevant for the same reasons.

### 5.   All of These Categories Are Highly Relevant to CCE's Standing

HMD Global's Request Nos. 1-12 seek information summarized in this chart:



| Categories of agreements addressed by Request Nos. 1-12 and documents sought regarding each, shown by their request numbers in HMD Global's subpoena to ARC of September 25, 2020 | Documents concerning agreements | Documents concerning concurrent agreements | Documents concerning communications | Documents concerning negotiations |
|---|---|---|---|---|
| ARC agreements with LG including a patent license | 1 | 2 | 3 | 4 |
| ██████████████████████ | 5 | 6 | 7 | 8 |
| ARC agreements including a patent which an ARC subsidiary has authority to license | 9 | 10 | 11 | 12 |

For the reasons HMD Global has explained, *see supra*, each of these requests is highly relevant to CCE's standing to bring its claims, and the Court should order production.

### B.   Documents Concerning the '923 Patent

Request Nos. 13-15 seek documents concerning the '923 patent, including "documents concerning all communications, including any proposals to license, negotiations, discussions, offers to license, presentations, or any other communications,

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 53 of 64   Page ID #:1669
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 53 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL   Page ID #:849

regarding any potential agreement concerning the '923 patent, including any potential license including the '923 patent" (Request No. 13); "documents concerning any right, title, or interest in the '923 patent" (Request No. 14); and "documents concerning any valuations or attempts to value the '923 patent or any portfolio containing the '923 patent." Request No. 15. Ex. F at 9; *see* Ex. S at 42-44, 44-46, 46-48. ARC agrees to produce some documents "relating to the ownership of the '923 patent," but refuses to search emails, and refuses to search for all documents "concerning any right, title, or interest in the '923 patent." Ex. R at 3. ARC says it will produce "valuations concerning the '923 patent," but again refuses to search emails. ARC refuses to produce anything responsive to Request No. 13—hardly a surprise, since it refuses to produce anything responsive to Request Nos. 1-12, which overlap Request No. 13 to the extent that any ███████████ ██████████████████████████' includes the '923.

　　Documents responsive to these requests are directly relevant to CCE's standing in the underlying action. For example, if ARC sent a series of proposals to license a portfolio including the '923 patent ██████████████ those communications would be highly relevant to HMD Global's motion to dismiss because they would show ████████ ██████████████████████████████y. Similarly, ████████████████ regarding any portfolio including the '923 patent would be highly relevant not only regarding standing, but also regarding the value of the '923 patent compared to others in ARC's collective portfolio, thus providing evidence relevant to its value and thus potential damages against HMD Global. Finally, in opposing HMD Global's motion to dismiss, CCE claimed "that all rights to the '923 patent belong to CCE." Ex. C at 3. HMD Global is entitled to test this assertion through discovery into "documents concerning any right, title, or interest in the '923 patent," not merely the lesser category of documents "relating to the ownership of the '923 patent" offered by ARC.

## C.　Documents Concerning the Relationship Between ARC and CCE

　　Requests Nos. 16-17 seek "documents concerning the relationship between ARC and CCE" (Request No. 16) and "communications concerning the relationship between

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 54 of 64   Page ID
#:1670
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 54 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

ARC and CCE." Request No. 17. Ex. F. at 10; Ex. S at 48-50. ARC stated that, if HMD

Global "agrees to exclude emails from its request, ARC is willing to search for non-public,

responsive documents related to these requests." Ex. R at 3. ARC thus admits the

relevance of these documents, but refuses to search for them unless HMD Global agrees to

exclude emails from its search, rendering the search useless since ARC and CCE have

overlapping officers who work in the same offices and share ARC's email system.

These requests address CCE's main argument in opposition to HMD's motion to

dismiss. CCE claims that ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████ " Ex. E at

3. HMD Global is entitled to test these assertions by understanding the full scope of the

relationship between ARC and CCE. ███████████████████████████

██████████████████████████ How does ARC generally supervise the

activities of its subsidiary CCE? What records does it keep? ████████████████

█████████████████████████

████████████ All of these questions and many others would be answered by this discovery;

without those answers, HMD Global cannot fairly assess CCE's standing to bring its case.

**D.    Documents Concerning the Assignment from ARG to CCE**

Request No. 18 seeks documents concerning the "Assignment and Assumption

Agreement," which assigned patents including the '923 patent from Acacia Research

Group LLC ("ARG"), an ARC subsidiary, to CCE. Ex. F at 10; Ex. S at 52-53. ARC

stated that, if HMD Global "agrees to exclude emails from its request, ARC is willing to

search for non-public, responsive documents related to these requests." Ex. R at 3. ARC

thus admits the relevance of these documents, but refuses to search for them unless HMD

Global agrees to exclude emails from its search, rendering the search useless since ARC,

ARG and CCE have overlapping officers who work in the same offices and share ARC's

email system. Documents responsive to this request concern the chain of title of the '923

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 55 of 64   Page ID
#:1671
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 55 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL
Page ID #:1582

patent.  In opposing HMD Global's motion to dismiss, CCE claimed "that all rights to the
'923 patent belong to CCE."  Ex. C at 3.  HMD Global is entitled to test this assertion
through discovery.  Request No. 18 concerns the agreement CCE contends "transferred all
rights in the '923 patent that AR Group received from NSN to CCE."  Ex. C at 2.
Suppose, for example, that contemporaneous documents exist that explain the purpose of
this assignment and how the assignment affects any rights ARC or ARG may have
concerning CCE or the '923 patent.  Such responsive documents would be highly relevant
to the ownership of the '923 patent and the authority to license it.

> ### E.   Documents Concerning the Starboard Security Agreement

ARC's security interest to Starboard, and its later rescinding of the security interest,
may further undermine CCE's standing to bring its claims.  *See supra* § E.  This issue is
not hypothetical:  just this month a patent monetization conglomerate, similar in structure
to ARC, lost standing to pursue claims due to a security agreement.  *Uniloc USA, Inc. v.
Apple Inc.*, No, 18-358, Docket No. 165 (N.D. Cal. Dec. 4, 2020).  Requests 19-23 seek
documents concerning the security interest (Request No. 19, *see* Ex. F at 10, Ex. S at
54-56); documents concerning the release of the security interest filed a few months later,
thus raising the question of whether ARC saw the *Uniloc* issues developing and realized
that it had a similar problem (Request No. 20, *see* Ex. F at 10, Ex. S at 56-58); documents
concerning communications regarding the agreements or release (Request No. 21, *see* Ex.
F at 10, Ex. S at 59-61); "documents concerning any relationship between ARC and
Starboard" and "communications concerning any relationship between ARC and
Starboard."  Request Nos. 22-23, *see* Ex. F at 10, Ex. S at 61-66).  ARC stated that, if
HMD Global "agrees to exclude emails from its request, ARC is willing to search for
non-public, responsive documents related to these requests."  Ex. R at 3.  ARC thus admits
the relevance of these documents, but refuses to search for them unless HMD Global
agrees to exclude emails from its search, rendering the search useless since negotiations
leading up to these agreements and discussions after them surely happened almost entirely

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 56 of 64   Page ID
#:1672
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 56 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

over email, not least because the Starboard security agreement was executed, filed and
released this year, and was thus almost certainly negotiated all or mostly by email.

Documents concerning these agreements, especially the emails showing negotiation
of the security interest and its revocation, may independently undermine CCE's standing in
this case. *See Uniloc USA, Inc. v. Apple Inc.*, 784 Fed. App'x at 765, 767-68 (remanding
to the district court to "supplement the record, determine whether Uniloc has standing in
the first instance, and, if appropriate, cure any jurisdictional defects"); *Uniloc USA, Inc. v.
Apple, Inc.*, Case No. 18-358, Docket No. 186 (N.D. Cal. Dec. 4, 2020) (dismissing case
for lack of standing based on security agreement). These requests seek to probe these
issues, which go directly to CCE's standing to sue HMD Global for infringement.

Communications regarding these agreements are highly relevant for the same
reasons as communications regarding the other agreements HMD Global seeks:
negotiation history of a contract is key to understanding its meaning, *see 67 Wall St. Co. v.
Franklin Nat'l Bank*, 37 N.Y.2d 245, 248-49 (1975), later communications show course of
performance (particularly relevant here where the parties to the agreement revoked it
rather quickly), *Fed. Ins. Co.*, 258 A.D.2d at 44, and communications within ARC show
how ARC interpreted any agreements. *Dataflow, Inc. v. Peerless Ins. Co.*, Case No.
11-1127, 2014 WL 148685, at *4 (S.D.N.Y. Jan. 13, 2014); *see generally supra* § III.A.3.

Finally, the relationship between ARC and Starboard is highly relevant for reasons
similar to those regarding the relationship between ARC and CCE. *See supra* § III.C.
Without the context of this overall relationship, one cannot understand the security interest
and its revocation. Was Starboard otherwise invested in ARC? Did Starboard have some
other interest that led it to first demand the security interest and then allow its revocation?
Without answers to these questions, HMD Global cannot fully understand whether the
Starboard transaction and its reversal separately undermine CCE's standing to bring its
claims. The Court should therefore grant this discovery.

**F.    Documents Concerning '923 Litigation or Other CCE Litigation**

Request Nos. 24-26 seek documents concerning this litigation or other CCE litigation. In fact, Request No. 24 seeks precisely "documents concerning this litigation or other CCE litigation." Ex. F. at 10; *see* Ex. S at 66-68. Request No. 25 seeks "documents concerning communications between ARC and CCE concerning this litigation or other CCE litigation," and Request No. 26 seeks "documents concerning communications between ARC and CCE concerning any actual or potential litigation concerning the '923 patent." Ex. F. at 10; *see* Ex. S at 68-72. There is likely substantial overlap between these categories, as they all seek documents concerning ARC's supervision of litigation involving CCE or the '923 patent. ARC stated that, if HMD Global "agrees to exclude emails from its request, ARC is willing to search for non-public, responsive documents related to these requests," but then immediately admitted that this offer was an empty one, because "it is ARC's understanding that these documents would have already been produced by CCE in the underlying litigation." Ex. R at 3. Setting aside whether this latter statement is correct—and CCE has not produced any documents regarding ARC's supervision of any of its litigation—it confirms that ARC will produce these documents only if ordered to do so by this Court.

This Court should order that production, because documents concerning ARC's supervision of CCE's litigation are highly relevant to CCE's standing claims. In opposing HMD Global's motion to dismiss, CCE claimed that ██████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████ Documents responsive to these requests will show not only any communications around this time on this point, but also the baseline level of communication between ARC and CCE regarding supervision of its litigation, providing the denominator necessary to understand the numerator. Documents concerning ARC's supervision of CCE's litigation, as well as any other litigation regarding the '923

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 58 of 64   Page ID
#:1674
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 58 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL
Page ID #:1584

patent, will also show whether ARC is the true plaintiff.  If ARC makes every decision

about CCE's litigation, for example, rather than allowing CCE to make decisions and

providing supervision and support, it will bolster the argument that ARC sees no

distinction between itself and CCE, ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Exs. B, D.

Responsive documents concerning ARC's control over CCE and the '923 patent may also

show the relationship between ARC and CCE and the '923 patent and thus would also be

highly relevant to the claims raised in HMD Global's motion to dismiss.  The Court should

compel production of these documents as well.

## IV.   HMD Global's Requests are Not Unduly Burdensome

### A.   ARC Has Failed to Meet Its Burden to Show Burdensomeness

ARC's burden objection extends only to email production. Ex. R at 2.  Regarding

the ██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████ and that "[r]estoring the electronic records of former employees is a

significant burden." Ex. R at 2.  But four years is hardly ancient history, many of HMD

Global's requests seek much more recent information, and most importantly ARC provides

no evidence to back up these claims, no names of these departed employees and no

specifics regarding its burden.  Nor does ARC provide any further explanation of its

burden regarding HMD Global's other requests.  *Id.*  To the contrary, ARC's own

explanation of its burden reveals significant gaps.  Although ARC claims that "many, if

not all, of the individuals who had ███████████████████████████ are no longer

employed by ARC," it does not say who they are, or when they left, or what happened to

their records. Ex. R at 2.  ARC conspicuously does not say that *all* "individuals who had

████████████████████████████ have left ARC, and surely would have if it could

– 20 –                                          Case No. 8:20-mc-127

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 59 of 64   Page ID #:1675
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 59 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    have.  Indeed, if most ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮' have

2    left the company, ARC's search may be *easier* than if they had stayed, because ARC

3    would have transferred their records to new custodians, making a search simpler, not more

4    complicated as ARC intimates.

5         "The party who resists discovery has the burden to show discovery should not be

6    allowed, and has the burden of clarifying, explaining, and supporting its objections."

7    *Keith H. v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 655-56 (C.D. Cal. May 18,

8    2005) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); *see also,*

9    *e.g.*, *In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litig.*,

10   Case No. 11-2274, 2012 WL 10450139, at *4 (C.D. Cal. June 7, 2012) ("Generalized

11   objections that a discovery request is burdensome without resort to specific reasons is . . .

12   insufficient to justify a refusal to respond.") (quoting *Davidson v. Goord*, 215 F.R.D. 73

13   (W.D.N.Y. 2003) (alterations in original)).  ARC has not met this burden; it has not come

14   close.

15        **B.    ARC's Duty to Preserve Documents Attached when** ▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17

18        ARC cannot cite burden to evade its production obligations for another reason:  its

19   civil duty to preserve documents attached at their creation.  "The duty to preserve evidence

20   begins when litigation is pending or reasonably foreseeable." *City of Colton v. American*

21   *Promotional Events, Inc.,* Case No. 09-1864, 2011 WL 13223947 at *3 (C.D. Cal. Oct. 6,

22   2011).  "This is an objective standard, asking not whether the party in fact reasonably

23   foresaw litigation, but whether a reasonable party in the same factual circumstances would

24   have reasonably foreseen litigation." *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d

25   1311, 1320 (Fed. Cir. 2011).  As soon as ARC had "notice" or "should have known that the

26   evidence may be relevant to future litigation" ARC had a duty to preserve these

27   documents. *Id.*  For the documents HMD Global seeks in the subpoena, that obligation

28   attached at the time of their creation.  As a sophisticated litigant in the business of

– 21 –                                        Case No. 8:20-mc-127

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 60 of 64   Page ID #:1676
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 60 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  litigation, *see supra* § A, ARC knew this well; if it failed to preserve its documents

2  properly, it has only itself to blame, and cannot use its own failure as an excuse.

3      Patent licenses are part of the standard document production in any patent litigation

4  suit. *Kajeet, Inc. v. Qustodio, LLC*, Case No. 18-1519, 2019 WL 8060078 at *8 (C.D. Cal.

5  Oct. 22, 2019) (ordering plaintiff "to produce all documents relating to settlement and

6  license negotiations with third parties involving any of the Patents-in-Suit."); *Sound View*

7  *Innovations, LLC v. Hulu, LLC*, 2018 WL 6164271 at *2 (C.D. Cal. June 12, 2018) ("the

8  Court grants the Motion to Compel to the extent that defendant must produce all patent

9  license agreements."). CCE's prompt production of license agreements relating to the '923

10  patent shows that ARC understands the relevance of these agreements in patent litigation.

11  This common practice was enough to trigger ARC's obligation to preserve ▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13      ARC's civil duty to preserve documents attached for another, more specific reason

14  as well: in 2010, the Federal Circuit found explicitly that an infringement plaintiff "lacks

15  standing to sue a party who has the ability to obtain such a license from another party with

16  the right to grant it." *WiAV Sols. LLC, v. Motorola, Inc.*, 631 F.3d 1257, 1266 (Fed. Cir.

17  2010). This ruling is central to HMD Global's motion to dismiss, which establishes ▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "reasonably

21  foreseeable" that this ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮ WL 13223947 at *3; *see* Ex. A §§ 1.2, 2.2. ▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮ business ARC surely *did* know, tha ▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

– 22 –            Case No. 8:20-mc-127

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 61 of 64   Page ID
#:1677
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 61 of 64
UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

has had a duty to preserve documents regarding this agreement.  The same will be true of

any other agreements in which ARC licenses patents held by its subsidiaries.

ARC cannot claim it is burdensome to recover from its own records documents it

had a duty to preserve.  Knowing its duty, ARC should have stored these documents in a

place from which it could easily retrieve them.  If it failed to do so, that is its own fault,

and ARC cannot use its own failure to store its documents well to evade its production

obligations.  Although this is particularly true for documents subject to the duty to

preserve, for a litigation company such as ARC it is generally true as well.  ARC or its

subsidiaries have filed 1,430 district court actions over the last twenty years, an average of

more than 70 per year.  *See* Ex. EE.  ARC has surely received dozens of subpoenas, if not

more, and its subsidiaries over a thousand.  ARC is sophisticated enough to decide, should

it wish to do so, to store its records in a way that makes them harder to retrieve in

litigation, thus providing it with an additional argument against discovery.  This Court

should not allow ARC to engineer its way out of discovery obligations through sloppy

record-keeping.

### C.   ARC Cannot Shift Its Burden Onto HMD Global

ARC tries to shift the burden onto HMD Global, arguing that because HMD Global

could not identify custodians and search terms, ARC need not search at all.  Ex. R at 2.

But ARC asks HMD Global to provide information it *does not know*.  HMD Global does

not know who at ███████████████████████████████████████████

███ and thus cannot provide custodians to search.  HMD Global does not know whether

████████████████████████████████████████████████████████

█████████████████████████and thus cannot provide search terms.  ARC's

attempt to push the burden onto HMD Global serves no purpose except to avoid discovery.

Conversely, the burden on ARC of searching for documents would be minimal.

Public records show that ARC has fewer than 20 employees.  Ex. BB.  ARC can easily

find out who on its staff worked on these agreements and search their emails for relevant

documents, and can consult its central repositories as well.  A core part of ARC's business

Case 8:20-mc-00127-JLS-JDE   Document 31-1   Filed 01/05/21   Page 62 of 64   Page ID
#:1678
Case 8:20-mc-00127-JLS-JDE   Document 26 (Ex Parte)   Filed 12/31/20   Page 62 of 64

UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

is negotiating and executing license agreements, and ARC surely has a procedure for storing documents regarding those core functions. Finally, ARC claims that it "does not believe any" documents in certain categories exist. Ex. R at 3. Surely ARC knows this more surely and can thus make a more definite statement, but in any event if no such agreements exist, it will not be hard to confirm that they do not. Otherwise, ARC can lose its cake and have it too, by claiming it is too hard to search for documents because they might not exist, while depriving HMD Global of the evidentiary value of learning that documents do not exist.

### D.     The Court Should Not Grant ARC Consideration as a Non-Party

ARC claims that it should be subject to special consideration as a non-party to the underlying litigation. But ARC is not a non-party to the underlying action in any reasonable sense. ARC owns all of CCE (through an intermediary which it also owns), has the same lawyers as CCE, and communicates on the same channels and in the same letters as CCE. Ex. A at 2-3; Ex. U ("CCE and ARC are jointly represented by the same counsel in this matter."). ██████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████ Nor can ARC benefit from any agreement between CCE and HMD Global regarding the conduct of the underlying action, having chosen not to be a plaintiff in that action and thus to avoid the obligations concomitant with that status. As other courts have recognized, the "relationship between the plaintiff and Acacia suggests that Acacia is entitled to less deference regarding convenience than a true third party. Acacia appears to have an interest in the outcome of this litigation." *Cellular Commc'n Equip. LLC v. HTC Corp.*, Case No. 15-2373, Docket No. 19 (S.D. Cal. Dec. 16, 2015).

### E.     Production of Emails is Routine in This District

Even if ARC were not a sophisticated party familiar with the litigation procedures of patent disputes and entwined in this litigation as CCE's parent company, HMD Global's requests would not be burdensome. Courts routinely order searching of emails, *In re*

– 24 –                                              Case No. 8:20-mc-127

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Citimortgage, Inc.*, 2012 WL 10450139, at *5 ("Defendant must search all of its email servers and produce all emails to/from/relating to the named plaintiffs, including defendan's internal communications concerning those emails"); *Aquastar Pool Prods., Inc. v. Color Match Pool Fittings, Inc.*, Case No. 18-mc-94, 2019 WL 856860, at *4 (C.D. Cal. Jan. 23, 2019) ("With these additions to the list, defendant must search for and produce emails responsive to RFP Nos. 12-14 as narrowed."), even to third-party subpoena respondents contesting enforcement. *Liqwd, Inc. v. L'Oreal USA, Inc.*, Case No. 19-15, Docket. No. 33 (C.D. Cal. Feb. 28, 2019).  ARC fails to articulate the specific burden it would suffer, and it must produce documents responsive to HMD Global's requests.

### CONCLUSION

For the foregoing reasons, HMD Global respectfully requests that the Court grant HMD Global's motion to compel production of all documents responsive to Requests for Production Nos. 1-26 in HMD Global's Subpoena To Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action.

Date:  December 21, 2020                    Respectfully submitted,

                                           */s/ Matthew S. Warren*
                                           Matthew S. Warren (Bar No. 230565)
                                           Jennifer A. Kash (Bar No. 203679)
                                           Maissa Chouraki (Bar No. 307711)
                                           WARREN LEX LLP
                                           2261 Market Street, No. 606
                                           San Francisco, California, 94114
                                           +1 (415) 895-2940
                                           +1 (415) 895-2964 facsimile
                                           20-127@cases.warrenlex.com

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4500 Park Granada Boulevard, Suite 202, Calabasas, CA 91302.

      On December 31, 2020, I served the foregoing document(s): **DECLARATION OF ERIC LUCAS IN SUPPORT OF HMD GLOBAL OY's APPLICATION FOR LEAVE TO FILE UNDER SEAL** on the interested parties in this action addressed and sent as follows:

☒  **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  By agreement of counsel, I caused the document(s) listed above to be transmitted to the person(s) at the e-mail address(es) as indicated.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

☒  **FEDERAL:**  I declare that I am employed at the office of a member of the bar of this court at whose direction service was made.

      Executed on December 31, 2020, at Los Angeles County, California.

                /s/ Ben Davidson
              Ben M. Davidson