REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Matthew S. Warren (Bar No. 230565)
Jennifer A. Kash (Bar No. 203679)
Maissa Chouraki (Bar No. 307711)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-127@cases.warrenlex.com

*Attorneys for HMD Global Oy*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

|  |  |
|---|---|
| HMD GLOBAL OY,<br><br>　　Movant,<br><br>v.<br><br>ACACIA RESEARCH CORPORATION,<br><br>　　Respondent. | Case No. 8:20-mc-127 JLS (JDEx)<br><br>**REPLY IN SUPPORT OF MOTION BY HMD GLOBAL OY TO COMPEL PRODUCTION OF DOCUMENTS FROM ACACIA RESEARCH CORPORATION**<br><br>Judge:  John D. Early<br>Date:  January 21, 2021<br>Time:  10:00 a.m. PST<br>Place:  Telephonic Hearing<br>Discovery Cutoff:  March 18, 2021<br>Pretrial Conference:  June 29, 2021<br>Discovery Cutoff:  March 18, 2021<br>Trial Date:  August 2, 2021 |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# **TABLE OF CONTENTS**

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

I.   The Subpoenaed Documents Are Directly Relevant to the Key Issue
     of Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

     A.   ARC Does Not Oppose Most of HMD Global's Relevance Arguments . . . .  1

     B.   Disagreement Over a Legal Theory Cannot Block Discovery. . . . . . . . . . .  2

     C.   ARC's Own Arguments Show the Relevance of HMD Global's
          Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

     D.   Having Withheld the Documents Necessary to Argue in the Alternative
          if the Contract is Ambiguous, ARC Cannot Blame HMD Global for
          Failing to Argue in the Alternative if the Contract is Ambiguous. . . . . . . .  6

     E.   ARC Misstates New York Law, Which Allows Application of Parol
          Evidence to Determine the Meaning of Ambiguous Contracts, Even
          If  Those Contracts Contain Merger Clauses. . . . . . . . . . . . . . . . . . . . . . .  7

     F.   ARC's Opposition Confirms the Court Should Compel Discovery
          Concerning the Starboard Transactions. . . . . . . . . . . . . . . . . . . . . . . . . .  8

     G.   ARC's Arguments Confirm the Importance of HMD Global's
          Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

II.  HMD Global's Subpoena is Proportionate to the Needs of the Case. . . . . . . . . .  11

     A.   ARC Admits That Its Obligation to Preserve Documents Applied to the
          Documents Sought By HMD Global's Subpoena as of Their Creation,
          and Further Admits to Apparent Deliberate Spoliation of Evidence. . . . . .  13

     B.   ARC Should Receive No Special Consideration as a "Non-Party". . . . . . .  14

     C.   ARC Rehashes Relevance Arguments as Proportionality Arguments. . . . .  14

     D.   ARC's Claim of Burden Depends on Deficient Evidence. . . . . . . . . . . . .  15

          1.   Arc Falsely States That It Must Hire Outside Vendors. . . . . . . . . .  15

          2.   ARC Relies on Inadmissible Hearsay Evidence. . . . . . . . . . . . . . .  16

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

E.    After Refusing to Identify Any Custodians for Three Months, ARC in Its Opposition for the First Time Identified Custodians for Request Nos. 1-4, Admitting That It Can Do the Same For HMD Global's Other Requests. .  18

F.    ARC Should Provide This Production, Which it Can Easily Afford. . . . . .  18

G.    The Court Should Not Shift Costs of Any Production to HMD Global. . .  20

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

# <u>TABLE OF AUTHORITIES</u>

*Cases* **Pages**

*Ardestani v. BMW of N. Am., LLC*,
    No. 170721, 2018 WL 6016955 (C.D. Cal. May 4, 2018) . . . . . . . . . . . . . . . . . . 11

*Bresk v. Unimerica Ins. Co.*,
    No. 16-8893, 2017 WL 10439831 (C.D. Cal. Nov. 16, 2017). . . . . . . . . . . . . . . 11

*Carter v. Dawson*,
    No. 07-1325, 2010 WL 4483814 (E.D. Cal. Nov. 1, 2010). . . . . . . . . . . . . . . . . 11

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
    No. 15-2373 (S.D. Cal. Dec. 16, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cellular Commc'ns Equip. LLC v. One Plus Tech. Co.*,
    No. 20-79, Docket No. 30 (E.D. Tex. Dec. 10, 2020). . . . . . . . . . . . . . . . . . . . 19

*Cellular Commc'ns Equip. LLC v. TCL Corp.*,
    No. 20-80, Docket No. 26 (E.D. Tex. Nov. 5, 2020). . . . . . . . . . . . . . . . . . . . . 19

*City of Colton v. Am. Promotional Events, Inc.*,
    No. 09-6630, 2011 WL 13223880 (C.D. Cal. Nov. 22, 2011). . . . . . . . . . . . . . 13

*DIRECTV, Inc. v. Trone*,
    209 F.R.D. 455, 458 (C.D. Cal. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Enovsys LLC v. Nextel Commc'ns Inc.*,
    614 F.3d 1333, 1342 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Enzo APA & Sons, Inc. v. Geapag A.G.*,
    134 F.3d 1090, 1093 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Exxon Corp. v. Maryland Cas. Co.*,
    599 F.2d 659, 661 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Fuchs v. State Farm Gen. Ins. Co.*,
    No. 16-1844, 2017 WL 469272 (C.D. Cal. March 6, 2017). . . . . . . . . . . . . . . 16

*Greene v. Fast Eats Clifton Park, LLC*,
    183 A.D.3d 1215, 1220 n.5 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kabir v. Flagstar Bank, FSB*,
    No. 16-360, 2017 WL 8220425 (C.D. Cal. May 12, 2017). . . . . . . . . . . . . . 2, 13

*Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*,
    No. 11-2553, 2013 WL 4007785 (C.D. Cal. Aug. 5, 2013). . . . . . . . . . . . . 13, 20

*Pacesetter Inc. v. SurModics*,
  No. 11-3964, 2011 WL 507611 (C.D. Cal. Oct. 25, 2011). . . . . . . . . . . . . . . . . . . 6

*People Not Politicians Oregon v. Clarno*,
  826 F. App'x 581, 583 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Philips N. Am. LLC v. PKI Healthcare, Inc.*,
  No. 19-1765, 2020 WL 3031614 (C.D. Cal. Mar. 10, 2020). . . . . . . . . . 12, 16, 19

*Podwall v. Robinson*,
  No. 16-6088, 2019 WL 934973 (C.D. Cal. Feb. 26, 2019). . . . . . . . . . . . . . . . . . 6

*Ruiz v. Moss Bros. Auto Grp.*,
  232 Cal. App. 4th 836, 843 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schron v. Troutman Sanders LLP*,
  20 N.Y.3d 430, 436 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
  959 F.3d 1065, 1072 (Fed. Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Soundgarden v. UMG Recordings, Inc.*,
  No. 19-5449, 2019 WL 10093965 (C.D. Cal. Dec. 2, 2019). . . . . . . . . . . . . . . . 5

*Strategic Partners, Inc. v. FIGS, Inc.*,
  No. 19-2286, 2020 WL 4354172 (C.D. Cal. May 18, 2020). . . . . . . . . . . . . . . 11

*Tri-Star Elecs. Int'l Inc. v. Preci-Dip Durtal SA*,
  619 F.3d 1364, 1367 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Uniloc USA, Inc. v. Apple Inc.*,
  No. 18-358, 2020 WL 7122617 (N.D. Cal. Dec. 4, 2020). . . . . . . . . . . . . . 7, 9, 10

*Uniloc USA, Inc. v. Apple Inc.*,
  784 Fed. App'x 763, 768 (Fed. Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. McGraw-Hill Cos.*,
  No. 13-779, 2014 WL 1647385, at (C.D. Cal. Apr. 15, 2014). . . . . . . . . . . . 12, 16

*U.S. Bank N.A. v. Fuladian*,
  No. 12-10493, 2015 WL 12914324 (C.D. Cal. July 2, 2015). . . . . . . . . . . . . . . 17

*Vivir of L I, Inc. v. Ehrenkranz*,
  127 A.D.3d 962, 964 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Von Drake v. Liberty Mut. Auto. Ins. Co.*,
  No. 06-24, 2006 WL 1408343 (E.D. Tex. May 16, 2006). . . . . . . . . . . . . . . . . 20

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*WiAV Sols. LLC v. Motorola Inc.*,
  631 F.3d 1257, 1266 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Xyience Beverage Co., LLC v. Statewide Beverage Co., Inc.*,
  No. 15-2513, 2015 WL 13313487 (C.D. Cal. Oct. 30, 2015). . . . . . . . . . . . . . . .   4

*Zellerino v. Roosen*,
  No. 16-485, 2016 WL 10988763 (C.D. Cal. Aug. 22, 2016). . . . . . . . . . . . .   2, 13

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212, 218 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Case No. 8:20-mc-127

REPLY IN SUPPORT OF MOTION TO COMPEL BY HMD GLOBAL OY

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# **TABLE OF AUTHORITIES**

*Statutes and Rules* **Pages**

35 U.S.C. § 261. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 26. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Fed. R. Evid. 801(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Fed. R. Evid. 1002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Local Rule 7-7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Local Rule 37-2.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# INTRODUCTION

As HMD Global explained in its motion, the question before this Court is simple: must Acacia Research Corporation produce documents showing whether its wholly owned subsidiary, Cellular Communications Equipment LLC, has standing to pursue claims of infringement in its underlying litigation against HMD Global Oy?  After ARC's opposition to the motion, the answer is still "yes."

Following its practice throughout this matter, ARC's opposition does everything it can to avoid this question.  ARC largely ignores, and thus admits, most of HMD Global's relevance arguments, concentrating again on the doomed argument that the ███████ ██████████████████████████ is not a license, and that HMD Global cannot obtain discovery because ARC disagrees with its legal theory.  But if these excuses were valid, there would be no discovery.  Next ARC argues that discovery will be too expensive—but it admits that it was obliged all along to preserve these documents, and submits only one supporting declaration that is sometimes hearsay, sometimes multiple hearsay, and sometimes both of those and also improper expert testimony.  Finally, ARC asks the Court to shift costs of its production onto HMD Global, even though ARC admits that it can produce documents through its subsidiary CCE any time it wants, and indeed has done so in this action.  ARC thus asks the Court to endorse its game of "heads I win, tails you lose," allowing it to produce for free the documents it wants in the case, while charging HMD Global for the documents it wants out of it.  ARC's diversions and distractions cannot change the question before the Court:  must ARC produce documents showing CCE has standing to pursue HMD Global?  The answer to this question is still "yes."

# ARGUMENT

## I.    The Subpoenaed Documents Are Directly Relevant to the Key Issue of Standing

### A.    ARC Does Not Oppose Most of HMD Global's Relevance Arguments

In its motion, HMD Global explained in detail how each of its requests seeks documents squarely relevant to key issues including the Constitutional question of standing, without which no claims can proceed.  Mot. § III, at 8-20.  In its opposition brief,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   ARC "fails to respond" to most of these arguments or even to mention them, "thereby

2   conceding the point." *Zellerino v. Roosen*, No. 16-485, 2016 WL 10988763, at *5 (C.D.

3   Cal. Aug. 22, 2016); *see, e.g.*, *Kabir v. Flagstar Bank, FSB*, Case No. 16-360, 2017 WL

4   8220425, at *3 (C.D. Cal. May 12, 2017).  ARC hangs its relevance hat on two arguments:

5   first, that the ███████████████████████████████████████████████████████

6   ███████████████ and second, that HMD Global can use the Starboard security interests

7   only to make the same standing arguments it makes about the ███████████████████

8   ███████████████  Neither argument is correct.

9   **B.    Disagreement Over a Legal Theory Cannot Block Discovery**

10   In its motion, HMD Global explained that ARC cannot block discovery based on its

11   disagreement with the underlying legal theory.  Mot. § II, at 6-8.  Without addressing or

12   even mentioning HMD Global's arguments or case law, ARC's opposition argues primarily

13   that ARC *can* block discovery based on its disagreement with the underlying legal theory.

14   Opp. at 6-9.  ARC is wrong for the reasons HMD Global has already explained, *see* Mot.

15   § II, at 6-8, and ARC's arguments in opposition only support HMD Global's subpoena.

16   ARC first argues that "it is undisputed that <u>no written instrument</u> has ever conveyed

17   to ARC any ownership rights in the '923 Patent."  Opp. at 6:15-17 (emphasis in original).

18   This statement is false.  How could it be "undisputed" that "no written instrument has ever

19   conveyed to ARC any ownership rights" when ARC has not produced a single document?

20   HMD Global certainly agrees that CCE has not produced any such documents, but that is

21   an argument for the discovery HMD Global seeks, not against it.  If ARC does possess

22   documents showing ownership of the '923 patent or a portfolio including it, they would be

23   responsive to multiple requests in HMD Global's subpoena, likely including Request Nos.

24   5-12, 13-15, and 16-17, and potentially others depending on their context.

25   ARC next argues that, because "the Federal Circuit requires a written instrument in

26   order to obtain rights to a patent, it is established as a matter of law that ARC does not

27   have, nor has it ever had, any ownership rights to the '923 patent."  Opp. at 6:18-22 (citing

28   *Enzo APA & Sons, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998)).  Again,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1 even on its own terms, this argument supports HMD Global's proposed discovery, because

2 ARC has not produced its documents and thus HMD Global cannot probe whether such a

3 "written instrument" exists.

4 　　　But the Court should not accept ARC's *Enzo* argument on its own terms, because

5 ARC misapplies *Enzo*.  There, the Court of Appeals found that a patent plaintiff lacked

6 standing to bring suit because, as of the filing of its complaint, it was not an exclusive

7 licensee and failed "to join the patentee" to its complaint.  134 F.3d at 1094; *see generally*

8 *id*.  *Enzo* thus sets a bar for a patentee to *gain* standing to sue, but says nothing about how

9 a patentee can *lose* standing to sue, as HMD Global alleges that CCE lost standing here

10 when ARC licensed the '923 patent through, as CCE admits, ███████████████████

11 ████████████████████████████████████ Opp. at 6:26-27.

12 Twelve years after *Enzo*, the Court of Appeals confirmed that a patent plaintiff such as

13 CCE "lacks standing to sue a party who has the ability to obtain such a license from

14 another party with the right to grant it."  *WiAV Sols. LLC v. Motorola Inc.*, 631 F.3d 1257,

15 1266 (Fed. Cir. 2010).  Given the strong indication in the ████████████████████

16 ███████████ that "another party"—CCE's ultimate parent ARC—has "the right to

17 grant" licenses to the '923 patent, and ████████████████████████ *Enzo* has

18 no bearing, and HMD Global is entitled to explore how ARC acquired "the right to grant"

19 licenses to the '923 patent, which it seeks to do through its subpoena.

20 　　　ARC's *Enzo* argument works against ARC in yet another way.  Although ARC

21 implies that the "written instrument" it claims *Enzo* requires must be an official-looking

22 agreement with signature blocks, that is not so.  *Enzo* relies on 35 U.S.C. § 261, which

23 states that patent interests "shall be assignable in law by an instrument in writing."  134

24 F.3d at 1093.  As the Court of Appeals has recently confirmed, "an assignment must be

25 documented in an 'instrument in writing[,]' but there are no form or content requirements

26 for the written instrument specified in the statute."  *Schwendimann v. Arkwright Advanced*

27 *Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020) (quoting 35 U.S.C. § 261) (alteration

28 in original).  As a result, "[w]ho has legal title to a patent is a question of state law,"

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Schwendimann*, 959 F.3d at 1072 (quoting *Enovsys LLC v. Nextel Commc'ns Inc.*, 614 F.3d 1333, 1342 (Fed. Cir. 2010)), and assignments are "interpreted in accordance with contract statutes and common law in the state where the assignment took place." *Schwendimann*, 959 F.3d at 1072 (citing *Tri-Star Elecs. Int'l Inc. v. Preci-Dip Durtal SA*, 619 F.3d 1364, 1367 (Fed. Cir. 2010)).  ARC's headquarters is and always has been in California, and in California an exchange of emails can suffice.  *See Xyience Beverage Co., LLC v. Statewide Beverage Co., Inc.*, Case No. 15-2513, 2015 WL 13313487, at *7 (C.D. Cal. Oct. 30, 2015); *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 843 (2014).  Thus ARC's insistence on *Enzo* further explains why HMD Global seeks emails from ARC, and why it cannot discover the truth without them.

**C.    ARC's Own Arguments Show the Relevance of HMD Global's Discovery**

ARC then turns to the ███████████████████████████ itself, doubling down on its contorted construction of that agreement, which it claims ████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████████████ Opp. at 7:11-15 (emphasis in original); *see id.* at 6-8.  This argument cannot help ARC, but can and does help HMD Global.

To be clear:  ARC argues that the ████████████████████████████████ ████████████████████████ ARC makes this argument despite the inclusion, in the ████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████ Docket No. 3-2 at 4.  ARC makes this argument despite the statement in ██████████████████████████████████████████████████████ ████████ Docket No. 3-2 at 9.  But this Court need not and should not decide the underlying legal issue; it must instead consider only whether the party seeking to avoid

REPLY IN SUPPORT OF MOTION TO COMPEL BY HMD GLOBAL OY

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   discovery, here ARC, has met its "heavy burden of making a strong showing why

2   discovery should be denied." *Soundgarden v. UMG Recordings, Inc.*, Case No. 19-5449,

3   2019 WL 10093965, at *6 (C.D. Cal. Dec. 2, 2019) (internal quotation omitted); *see* Mot.

4   at 6-7.  ARC cannot square its argument with provisions of the ███████████████████

5   ██████████████████████████ it cannot meet this "heavy burden."  *Id.*

6          ARC's arguments do, however, further explain why HMD Global needs the

7   discovery it seeks.  ARC contends, both here and against HMD Global's motion to

8   dismiss, that it merely ████████████████████████████████████████████████████

9   ████████████████████  Opp. at 7:14-15 (emphasis in original); *see* Docket No. 3-4 at 6,

10  7; Docket No. 3-6 at 3; *see, e.g.*, Mot. at 12-13.  ████████████████████████████

11  ██████████████████████████ that no one has yet produced to HMD—and documents

12  regarding that license are not only parol evidence regarding the ██████████████████

13  ██████████████████ but *independently relevant* to HMD Global's claims in the

14  underlying action, as ARC's subsidiary CCE admitted by producing all of its other licenses

15  for the '923 patent—but not this one.

16         Such a license would be responsive to multiple requests in HMD Global's subpoena,

17  including Request Nos. 1-12.  HMD Global seeks discovery that would answer other,

18  equally relevant questions regarding ARC's unorthodox understanding of the ██████████

19  ██████████████████████████████████████████ ████████████████████████

20  ███████████████████████████████ (Request Nos. 1-12.) ████████████████████

21  ████████████████████████████████████ (Request Nos. 1-17, 24-26.)  Did

22  CCE do it?  How?  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████

24  (Request Nos. 1-12.)  What did ARC tell ██████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████

27  ███████████████████  (Request Nos. 1-15.)  Without answers to these questions, HMD

28  Global cannot rebut ARC's arguments that the ████████████████████████████████

REPLY IN SUPPORT OF MOTION TO COMPEL BY HMD GLOBAL OY

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████ ARC's

3 own arguments thus confirm the direct relevance of HMD Global's discovery.

**D.      Having Withheld the Documents Necessary to Argue in the Alternative if the Contract is Ambiguous, ARC Cannot Blame HMD Global for Failing to Argue in the Alternative if the Contract is Ambiguous**

6        ARC argues that HMD Global cannot seek discovery that "requires ambiguity" in

7 the ████████████████████████████████ because HMD Global's motion to

8 dismiss does not allege ambiguity in that contract.  Opp. at 8-9.  To begin with, HMD

9 Global's discovery does not, in fact, "require[] ambiguity" in the ████████████████

10 ████████████        For example, HMD Global seeks documents regarding the

11 mysterious ██████████████████████████████████████████████

12 ██████████ (Request Nos. 1-15, 24-25), ████████████████████████

13 ████████████████████████████████████ (Request Nos. 5-12,

14 16-17), documents concerning the '923 patent ownership and litigation (Request Nos.

15 13-15, 18, 24-25), and documents concerning a security agreement unrelated—as far as

16 HMD Global currently knows, without any discovery from ARC—to the ██████████

17 ████████████████████████ (Request Nos. 19-23.)

18        But even if the Court assumes that all of HMD Global's discovery "requires

19 ambiguity" in the ██████████████████████████████ HMD Global should

20 still receive discovery, because HMD Global's existing motion does not preclude it from

21 arguing ambiguity in the alternative.  HMD Global filed its motion to dismiss on

22 September 21, 2020, four days after CCE produced the ████████████████████

23 ██████████        Mot. § D.  It subpoenaed ARC four days after that.  *Id.* § F.  Although it is

24 common for litigants to argue ambiguity in the alternative even if they believe a contract is

25 unambiguous, *see, e.g.*, *Podwall v. Robinson*, Case No. 16-6088, 2019 WL 934973, at *4

26 (C.D. Cal. Feb. 26, 2019); *see, e.g.*, *Pacesetter Inc. v. SurModics*, Case No. 11-3964, 2011

27 WL 507611, at *2 n.2 (C.D. Cal. Oct. 25, 2011), when it filed its motion to dismiss HMD

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  Global had only the ███████████████████████████████ and thus did not argue

2  ambiguity in the alternative, because it had no additional evidence with which to do so.

3  　　　Because ARC has refused to respond to the subpoena, HMD Global *still* has no

4  additional evidence with which to argue ambiguity in the alternative—but that is an

5  argument for discovery, not against it.  Only after ARC produces documents could HMD

6  Global determine whether it should file a renewed motion to dismiss including such

7  alternative arguments.  *See Uniloc USA, Inc. v. Apple Inc.*, Case No. 18-358, 2020 WL

8  7122617 (N.D. Cal. Dec. 4, 2020) (granting renewed motion to dismiss for lack of

9  standing based on new evidence obtained through discovery); *see also* Mot. at 7:20 to 8:9.

10  　　**E.　　ARC Misstates New York Law, Which Allows Application of Parol**
11  　　　　**Evidence to Determine the Meaning of Ambiguous Contracts, Even If**
　　　　　**Those Contracts Contain Merger Clauses**

12  　　　ARC next argues that because the ██████████████████████████████

13  ████████████████████ the parol evidence rule excludes any other evidence to interpret

14  the agreement.  Opp. at 9.  To begin with, HMD Global's discovery will do much more

15  than help interpret the ██████████████████████████████ *See supra* § I.C.

16  But ARC's argument is not correct even on its own terms, because ARC misstates New

17  York law.  ARC cites *Schron v. Troutman Sanders LLP* for the proposition that when a

18  contract includes a merger clause, "the full application of the parol evidence rule applies."

19  Opp. at 9:24-28 (citing 20 N.Y.3d 430, 436 (2013)).  ARC implies that "the full application

20  of the parol evidence rule" means exclusion of any parol evidence, but that is not correct.

21  As *Schron* itself confirmed, New York courts consider parol evidence if there is "an

22  ambiguity in the contract," and *Schron* affirmed exclusion of parol evidence only after

23  explicitly finding that the disputed provision was unambiguous.  20 N.Y.3d at 436-37.

24  　　　*Schron* thus did nothing to change the normal rule, in New York as elsewhere, that

25  parol evidence is helpful to interpret an ambiguous contract, even if that contract contains

26  a merger clause.  Indeed, a recent case in New York cited *Schron* to support the proposition

27  that, in a lease dispute, "the ambiguity in the lease on the disputed issue permits

28  consideration of extrinsic evidence with regard to the parties' intent and understanding"

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    even though the "lease contains a general merger clause."  *Greene v. Fast Eats Clifton*

2    *Park, LLC*, 183 A.D.3d 1215, 1220 n.5 (2020) (collecting cases including *Schron*); *see*

3    *also, e.g.*, *Vivir of L I, Inc. v. Ehrenkranz*, 127 A.D.3d 962, 964 (2015) ("parol evidence

4    was properly admitted into evidence to explain the ambiguous phrase" in a disputed

5    contract including a merger clause).  ARC's argument thus fails even on its own terms,

6    because it relies on a misstatement of New York law.

### F.    ARC's Opposition Confirms the Court Should Compel Discovery Concerning the Starboard Transactions

9    HMD Global also seeks documents regarding ARC and CCE's security interests

10   with Starboard Value LP.  Mot. § E; Request Nos. 19-23.  Although CCE has produced

11   some documents regarding these security interests, most recently on December 30, 2020, it

12   production only confirms the need for a subpoena to ARC.[1]  According to ARC, after the

13   December 30 production, "CCE has produced all documents and agreements in its

14   possession (excluding emails) that are related to Starboard's Patent Security Agreement."

15   Opp. at 10.  But CCE's production is facially incomplete—it omits schedules and exhibits

16   to the controlling Patent Security Agreement between ARC and Starboard, including most

17   notably ███████████████████████████████  *See* Ex. A at CCE_HMD_004877.

18   ARC and CCE have now confirmed that at least the missing schedules and exhibits are not

19   in CCE's possession, an argument for discovery from ARC, not against it.

20   ARC also argues that "[t]he Starboard Patent Security Agreement itself forecloses

21   any argument that ARC owns the '923 patent or transferred any rights in connection with

22   the Starboard transaction, as it explicitly states that 'nothing in this Patent Security

23   Agreement or the Security Agreement assigns or transfers to [Starboard] any control or

24   ownership interest in any of the Collateral, and such Grantor [CCE] retains any and all

---

[1] ARC faults HMD Global for making "no mention" in its motion of CCE's
December 3 production of certain Starboard agreements.  Opp. at 5-6.  But ARC admits
that HMD Global does, in fact, discuss the Starboard agreements in its opening papers, and
further admits that CCE withheld these documents until "during the meet and confer
process leading up to HMD's previous draft joint stipulation" with ARC.  Opp at 10.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

such rights.'"  Opp. at 10.   Even if ARC could shield itself from discovery by simply

disagreeing with HMD Global's legal position—which it cannot, *see* Mot. § II at 7-8,

*supra* § B—ARC misses the point.  As HMD Global explained in its motion, the Starboard

transactions are *independently* relevant to CCE's standing.  Mot. § III.E.  CCE's recently

produced documents confirm this:  through a complicated series of agreements, Starboard



Ex. B at CCE_HMD_004939.  These rights are eerily similar to those the Northern District

of California recently found, in *Uniloc USA, Inc. v. Apple Inc.,* "divested the Unilocs of

standing to sue here."  2020 WL 7122617, at *1 (finding that "[t]he Revenue Sharing

Agreement granted Fortress a 'a non-exclusive, royalty free, license (including the right to

grant sublicenses) with respect to the Patents' but on the condition that Fortress 'shall only

use such license following an Event of Default'"); *see also id.* at 7.  Given *Uniloc,* HMD

Global should be allowed to probe this agreement further, which requires discovery.

Finally, ARC argues that HMD Global cannot take discovery into these transactions

because the "security interest was later released."  Opp. at 10:5-6.  Again, ARC is

mistaken.  Even CCE's limited production shows that the June 30 release

Ex. C at CCE_HMD_02293.

Ex. D at

REPLY IN SUPPORT OF MOTION TO COMPEL BY HMD GLOBAL OY

CCE_HMD_002526. ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ Ex. E at

CCE_HMD_001714, and further provides that ARC █████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

███████████████████ *Compare* Ex. F at CCE_HMD_002236 *with* Ex. B at

CCE_HMD_004939. ███████████████████████████████

██████████████ CCE_HMD_001714; *see also id*. Schedule C.

As in *Uniloc*, HMD Global is entitled to discovery concerning these transactions beyond the "plain language of both agreements." Opp at 10. Indeed, it was precisely such discovery into the intent, understanding and actions of the parties, and not the words on the face of any agreement, that ultimately revealed Uniloc's lack of standing to sue. The *Uniloc* court confirmed that its "prior order" denying dismissal "lacked some crucial facts which contributed to a correctable error of law," which it could correct only after Apple took additional discovery and the Court of Appeals "remanded for discovery and resolution of the question of standing 'in the first instance.'" *Uniloc USA, Inc. v. Apple Inc*. 2020 WL 7122617, at *2 (quoting *Uniloc USA v. Apple Inc*., 784 Fed. App'x 763, 768 (Fed. Cir. 2019)). The same could be true here, but only discovery will show the truth.

### G.    ARC's Arguments Confirm the Importance of HMD Global's Discovery

ARC briefly claims that HMD Global's requests are a mere "fishing expedition." Opp at 10. But ARC's own arguments show why HMD Global's discovery is important.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    ARC argues that the ████████████████████████████████████████████

2    ████████████████████████████████████████████████████████████████

3    ████████████   ARC claims that only a written contract can convey ownership of a patent,

4    but refuses to produce emails that could be just such written contracts; it is not a fishing

5    expedition to note this discrepancy and demand resolution.  And ARC claims that the

6    Starboard documents cannot possibly cause it to lose its standing, but very similar

7    documents recently had precisely that effect on Uniloc.  HMD Global is not on a fishing

8    expedition; it would be shooting fish in a barrel, if ARC did not keep hiding the bullets.[2]

9    **II.    HMD Global's Subpoena is Proportionate to the Needs of the Case**

10    "Under the Federal Rules of Civil Procedure, '[p]arties may obtain discovery

11    regarding any nonprivileged matter that is relevant to any party's claim or defense and

12    proportional to the needs of the case, considering the importance of the issues at stake in

13    the action, the amount in controversy, the parties' relative access to relevant information,

14    the parties' resources, the importance of the discovery in resolving the issues, and whether

15    the burden or expense of the proposed discovery outweighs its likely benefit.'" *Ardestani*

16    ────────────────────

17    [2] ARC cites two cases in support of its arguments, neither of which helps it here.  ARC
18    cites *Bresk v. Unimerica Ins. Co.*, Case No. 16-8893, 2017 WL 10439831, at *5 (C.D. Cal.
     Nov. 16, 2017), but *Bresk* supports HMD Global's position, not ARC's.  ARC plucks a
19    quote from *Bresk* regarding "mere suspicion," but omits the surrounding analysis, which
20    confirms only that the court "cannot order a party to produce documents that do not exist,"
     and will not compel production where a party makes the "representation that they are
21    unable to locate responsive documents." *Id.* at *5 (citing *Carter v. Dawson*, 2010 WL
22    4483814, at *5 (E.D. Cal. Nov. 1, 2010)).  *Bresk* ordered that, "to the extent that Defendant
     determines after a reasonable search that no documents, or no additional documents,
23    responsive to the requests exist, it shall so state affirmatively in its revised responses," and
24    granted sanctions for insufficient discovery responses.  *Id.*  ARC has not stated that no
     responsive documents exist; if it can, it must.  ARC also cites *Strategic Partners, Inc. v.*
25    *FIGS, Inc.*, quoting that court's statement that the defendants failed to properly plead an
26    affirmative defense to which the discovery would be relevant.  Case No. 19-2286, 2020
     WL 4354172, at *9 (C.D. Cal. May 18, 2020).  *Strategic Partners* has no bearing here,
27    where ARC does not contest the relevance of standing to the underlying lawsuit, and HMD
28    Global has identified the specific transactions about which it seeks discovery.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*v. BMW of N. Am., LLC*, Case No. 170721, 2018 WL 6016955, at *1 (C.D. Cal. May 4, 2018) (quoting Fed. R. Civ. P. 26); *see* Mot. § I.

"Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance.  In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Philips N. Am. LLC v. PKI Healthcare, Inc*., Case No. 19-1765, 2020 WL 3031614, at *2 (C.D. Cal. Mar. 10, 2020) (quoting *United States v. McGraw-Hill Cos*., 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (citations and internal quotation marks omitted)).  Although HMD Global repeatedly met and conferred with ARC seeking to enforce its subpoena, see Mot. § G, Docket Nos. 3-6 through 3-10, 1-12, 3-11 to 3-12, 1-15 through 1-19, and 3-13, ARC never supplied its proportionality or burdensomeness arguments until it opposed HMD Global's Motion on December 31, 2020.[3]  The arguments it now submits suffer from factual, evidentiary, and legal defects.  They uniformly fail.

---

[3] ARC incorrectly seeks to blame HMD Global for its own delay.  ARC claims that HMD Global's "assertion that ARC 'refused to participate in the joint stipulation process' is false," Opp. at 4:2-3, but Local Rule 37-2.2 required it to "personally deliver, e-mail, or fax to counsel for the moving party the opposing party's portion of the stipulation, together with all declarations and exhibits to be offered in support of the opposing party's position" by November 23; ARC refused to do so, instead sending HMD Global a letter stating that "ARC believes it is improper to file the joint stipulation."  Docket No. 1-23.  ARC could have followed Local Rule 37-2.2 by timely transmitting its portion of the joint stipulation while continuing to press its arguments under the Eastern District protective order; had it done so, HMD Global would have received ARC's proportionality and burdensomeness arguments on November 23, instead of on December 31, and would not have been forced to respond to them for the first time in this reply.  Nor can ARC use its protective-order claims to justify its delay; as ARC admits in its opposition, it could have followed Local Rule 37-2.2 secure in the knowledge that it was protected by the Eastern District protective order, under which HMD Global could not proceed with this matter "until the potential violation was resolved."  Opp. at 4:8-9; *see id.* at 5:11-13, Docket No. 26, Ex. A ¶ 24.  ARC thus can blame only itself for its failure to follow this Court's procedure.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**A.      ARC Admits That Its Obligation to Preserve Documents Applied to the Documents Sought By HMD Global's Subpoena as of Their Creation, and Further Admits to Apparent Deliberate Spoliation of Evidence**

In its motion, HMD Global explained in detail how ARC's civil duty to preserve the subpoenaed documents attached at their creation. Mot. § IV.B, at 21-23. In its opposition, ARC "fails to respond to th[is] argument" or even to mention it, "thereby conceding the point." *Zellerino*, 2016 WL 10988763, at *5; *see, e.g.*, *Kabir*, 2017 WL 8220425, at *3. ARC then admits to what appears to be deliberate spoliation of evidence: Marc Booth, ARC's Chief Intellectual Property Officer, avers that ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████        Docket No. 24-3 ¶ 16; *see id.* ¶ 2. But a merger clause does not bar the use of negotiation history as parol evidence to show the meaning of a contract, and negotiation history can have evidentiary value in many other contexts. *See supra* § I.E.

ARC's dual admissions—that the civil duty to preserve applied, but that ARC did not preserve documents subject to that duty—is both generally troubling and specifically devastating to ARC's burdensomeness arguments opposing HMD Global's Motion. Once the "duty to preserve is triggered," as ARC admits it was here, "a party is required to preserve all relevant evidence and put into place a litigation hold to preserve relevant documents." *City of Colton v. Am. Promotional Events, Inc.*, No. 09-6630, 2011 WL 13223880, at *2 (C.D. Cal. Nov. 22, 2011) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). After the civil duty to preserve documents has attached, a party cannot store those documents in an inconvenient manner and then argue that it would be burdensome to recover them. *Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, No. 11-2553, 2013 WL 4007785, at *3 (C.D. Cal. Aug. 5, 2013). ARC's dual admissions thus eviscerate its burdensomeness case, because ARC agrees that all of the documents sought by the subpoena fall under the civil obligation to preserve.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**B.     ARC Should Receive No Special Consideration as a "Non-Party"**

ARC is not a true non-party to the underlying action.  Mot. § D.  ARC does not address any of these points, thus conceding them, but instead robotically repeats that it *is* a "non-party" to the underlying action.  Opp. at 3:22, 4:14, 14:7, 16:12, 18:12-15.  ARC submits no evidence to support this view, and its arguments and declarations undercut it at every turn.  ARC submits evidence from only one CCE officer, Eric Lucas, who is also an officer of ARC.  Docket No. 24-2 ¶¶ 2, 3. ███████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████     *Id.* ¶ 9.

ARC admits that it sets finely graded policies for activities such as document retention, and that those policies apply across all of its subsidiaries, including CCE.  Docket No. 24-3 ¶¶ 16, 17.  Perhaps most importantly, ██████████████████

██████████████████████████████████████████████████████████████████

██████     Opp at 17:10-11 ("ARC either has no responsive information or will provide it to CCE for production."); *see generally* Docket No. 3-8.  ARC's opposition brief and accompanying materials thus bolster HMD Global's view that ARC and its subsidiaries operate on an integrated basis, and that the Court should not accord special treatment to ARC as a purported "non-party" to the underlying case.  *See* Mot. § D; *Cellular Commc'ns Equip. LLC v. HTC Corp.*, Case No. 15-2373, Docket No. 19 (S.D. Cal. Dec. 16, 2015) ("Acacia is entitled to less deference regarding convenience than a true third party.").

**C.     ARC Rehashes Relevance Arguments as Proportionality Arguments**

ARC spends a page briefly recasting some of its relevance arguments under proportionality.  Opp. at 12:8 to 13:18.  These arguments fail as proportionality arguments for the same reasons they fail as relevance arguments.  *See supra* § I.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### D.    ARC's Claim of Burden Depends on Deficient Evidence

ARC's claim of burden rests entirely on its claim that collecting and producing documents responsive to HMD Global's subpoena will be expensive and time-consuming. Opp. at 14:13 to 15:10.  ARC's claim of burden through cost not only cannot survive ARC's admitted obligation to preserve its documents, *see supra* § II.A, but also rests on a rotten evidentiary foundation, which collapses upon examination by the Court.

### 1.    ARC Falsely States That It Must Hire Outside Vendors

ARC claims that compliance with HMD Global's subpoena would cost an ██████████████████████████████████████" Opp. at 14:16, supporting this allegation with a single declaration from Eric Lucas, both the "President of Cellular Communications Equipment LLC" and "Senior Vice President of Acacia Research Corporation."  Docket No. 24-2 ¶¶ 2, 3.  Mr. Lucas' declaration rests entirely on the costs he claims ARC would incur by hiring outside personnel to perform various tasks.  *Id.* ¶¶ 11-17.  In turn, Mr. Lucas' claim that ARC must hire outside personnel rests on a single statement:

██████████████████████████ if ARC were ordered to produce emails responsive to the HMD subpoena, ARC would need to hire contract attorneys and paralegals and IT personnel to retrieve and review for relevance the broad scope of emails requested by the HMD subpoena.

*Id.* ¶ 10 (emphasis added).  But Mr. Lucas' statement that ████████████████ ████████ is disingenuous at best.  Mr. Lucas admits in the same declaration that ██████████████████████████████████████ ██████████████████ *Id.* ¶ 8.  Although these employees of ████████████ ████████████████—including Mr. Lucas himself—may not see the words "Acacia Research Corporation" on their paychecks, ████████████████████████████ ██████████████████████████████████████ *Id.*

In light of this admission, it is simply incorrect to state, as Mr. Lucas does a few paragraphs later, that "ARC **would need** to hire" outside personnel ████████████ ██████████████████ *Id.* ¶ 10 (emphasis added).  Because ARC has the equivalent in its subsidiaries' employees, to meet its burden it must, at the very least, explain why those

employees cannot perform a particular task before claiming that the cost of hiring outside vendors makes a task burdensome for it.  *Philips N. Am. LLC v. PKI Healthcare, Inc.*, Case No. 19-1765, 2020 WL 3031614, at *2 (C.D. Cal. Mar. 10, 2020) ("Once the minimal showing or relevance is made, '[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'") (quoting *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)).  ARC does not make this showing; it does not even try.

### 2.    ARC Relies on Inadmissible Hearsay Evidence

But that is not the end of ARC's evidentiary problems.  ARC's burdensomeness argument rests entirely on hearsay, and thus cannot be the "competent evidence" the law requires.  *Philips*, 2020 WL 3031614, at *2 (C.D. Cal. Mar. 10, 2020) (quoting *United States v. McGraw-Hill Cos.*, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (citations and internal quotation marks omitted)); *Fuchs v. State Farm Gen. Ins. Co.*, No. 16-1844, 2017 WL 469272, at *3 (C.D. Cal. March 6, 2017) ("Local Rule 7-7 states this District's requirements for the form and content of declarations: '*Declarations shall contain only factual evidentiary matter and shall conform as far as possible to all the requirements of F.R. Civ. P. 56(c)(4).*'") (emphasis in original).  Mr. Lucas states that:



Docket No. 24-2 ¶ 11.  This statement is classic hearsay:  an unsworn statement, not from the declarant, that ARC "offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  To the extent that this estimate was written down, which ARC does not specify, Mr. Lucas' statement also fails the best evidence rule, Fed. R. Evid. 1002.  Although it should not matter given his other failures, Mr. Lucas makes no attempt to explain why ███████████████████████████████████████

███████████████████████████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   ███████████████████████████████   *See generally* Docket

2   No. 24-2.  Nor does Mr. Lucas explain how ███████████████████

3   ████████████████████████████████████████████████████████

4   ███████████████████████████████████████████████

5   ████████████████████████████████████████████

6   ████████████████████████████   *Id.* ¶ 18; *see id.* ¶¶ 13-18.

7   ARC then uses Mr. Lucas' calculations to support its claim of ████████████

8   ██████████████████████   Opp. at 14:15-16 (citing Docket No. 24-2 ¶¶

9   10-18).  Mr. Lucas' decision to rely entirely on hearsay rather than submit firsthand

10  evidence of the ███████████████████████   and ARC's decision to rely entirely

11  on Mr. Lucas' hearsay declaration, thus infects the entirety of ARC's burden argument.

12         Although that would be enough to preclude any reliance on Mr. Lucas' hearsay

13  declaration, the remaining paragraphs introduce additional disqualifying problems.  Mr.

14  Lucas claims ██████████████████████████████████████████████

15  ██████████████████████████   Docket No. 24-2 ¶¶ 13-18.

16  But "[t]he belief of an employee of a third-party that is based on 'review' of unspecified

17  'records' of the third-party obviously is not admissible, competent evidence to prove" any

18  factual proposition.  *U.S. Bank N.A. v. Fuladian*, Case No. 12-10493, 2015 WL 12914324,

19  at *1 (C.D. Cal. July 2, 2015).  Just as in *U.S. Bank*, this "testimony lacks foundation,"

20  because the "Court is not told what specific records are being relied on or why the records

21  would be evidence" relevant to potential costs.  *Id.*  Just as in *U.S. Bank*, "there are so

22  many levels of hearsay involved that even if Rule 803(6) could help with one of them, it

23  would not solve all of them."  *Id.*  Even assuming the documents Mr. Lucas referenced are

24  business records—a big assumption—ARC "has not even submitted the actual [ARC]

25  business records" on which it purports to rely, but merely Mr. Lucas' "testimony about

26  what he thinks the business records say."  2015 WL 12914324, at *1.

27         For all these reasons, Mr. Lucas' declaration cannot support ARC's claim of burden.

28  Since ARC's claim of burden depends entirely on Mr. Lucas' declaration, it fails entirely.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**E.   After Refusing to Identify Any Custodians for Three Months, ARC in Its Opposition for the First Time Identified Custodians for Request Nos. 1-4, Admitting That It Can Do the Same For HMD Global's Other Requests**

ARC claims that HMD Global's requests are unduly burdensome because they do not specify custodians. Opp. at 13-14. But the only party that knows who ARC's custodians are or were is ARC, making ARC's demand that HMD Global specify custodians before it will produce any documents effectively a refusal to produce any documents, as ARC well knows. HMD Global has repeatedly asked ARC to identify custodians for its requests, and ARC has repeatedly refused—until December 31, 2020, when it grudgingly identified ██████████████████████████████ ███████████████████████████ Docket No. 24-3 ¶ 12. Although HMD Global believes the Court can order production responsive to its subpoena based on ARC's admitted obligation to preserve responsive documents (*supra* § II.A), its status as an interested party (*supra* § II.B) and its failure to submit any competent evidence of burden (*supra* § II.D), the Court could also, in the first instance, order Acacia to identify specific custodians for the request of HMD Global's requests, and start its search with those custodians.

**F.   ARC Should Provide This Production, Which it Can Easily Afford**

As of its most recent 10-K filing, publicly traded ARC had "approximately $168.3 million in cash and cash equivalents," with revenues that can reach into the hundreds of millions of dollars per year. Docket No. 1-30 at 5; *see, e.g.*, *id.* at 22. And ARC has easy access to credit: it borrowed $115 million this summer. Ex. E at CCE_HMD_001714. Even if the Court accepts ARC's improper evidence of cost (which it should not, *see supra* § II.D) and does not reduce those costs to reflect identification of custodians (which it should, *see supra* § II.E) then ARC can still easily afford to pay the costs associated a responsive production. Nor can ARC plead unfairness, *see* Opp. at 16; as a litigation business in the business of litigation, ARC knew well the risk of document production when it created the responsive documents, and cannot now complain that its own actions made the costs of producing those documents higher than they would otherwise be. *See* Mot. §§ A, IV.B; *supra* § II.A. And ARC argued specifically that only a written contract

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  can transfer patent rights, greatly increasing the relevance of emails between ARC and

2  CCE, which could form or evidence such a contract.  *See supra* § I.B.

3      ARC admits that the "amount in controversy has not yet been determined," but

4  argues that this *lack* of information somehow means it should *not* provide HMD Global

5  any discovery.  Opp. at 16:10-12.  But ARC cannot meet its burden of "showing that

6  discovery should not be allowed," and also "explaining and supporting its objections with

7  competent evidence," by pointing to a lack of information.  *Philips N. Am. LLC v. PKI*

8  *Healthcare, Inc.*, 2020 WL 3031614, at *2.  And ARC omits another piece of important

9  information:  CCE recently brought two other cases against other defendants, and settled

10  them both for license payments.  *Cellular Commc'ns Equip. LLC v. One Plus Tech. Co.*,

11  Case No. 20-79, Docket No. 30 (E.D. Tex. Dec. 10, 2020); *Commc'ns Equip. LLC v. TCL*

12  *Corp.*, Case No. 20-80, Docket No. 26 (E.D. Tex. Nov. 5, 2020).  If CCE had no standing

13  to sue HMD Global, then it had no standing to sue those defendants either—but got away

14  with it, presumably because those cases settled before CCE produced the ▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or the Starboard security interest documents.  ARC is a

16  litigant by profession, and its subsidiary CCE will keep suing other parties as long as it can

17  get away with doing so.  In determining whether to allow HMD Global's production, the

18  Court should thus consider the scope of CCE's overall litigation activity, rather than

19  merely this case.  *Cf., e.g.*, *People Not Politicians Oregon v. Clarno*, 826 F. App'x 581,

20  583 (9th Cir. 2020) (discussing exception to mootness doctrine for controversies "capable

21  of repetition, yet evading review").

22      Finally, ARC has protection against production it truly finds unreasonable:  it can

23  stop at any time.  Because HMD Global's motion to dismiss remains pending in the

24  underlying action, ARC subsidiary CCE can dismiss the entirety of that action simply by

25  filing a notice of dismissal under Rule 41(a)(1)(A)(i), which is effective immediately upon

26  filing.  *Id.*; *Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659, 661 (5th Cir. 1979); *see, e.g.*,

27  *Von Drake v. Liberty Mut. Auto. Ins. Co.*, Case No. 06-24, 2006 WL 1408343, at *2 (E.D.

28  Tex. May 16, 2006) (citing *Exxon*).  Since the subpoena issued under CCE's action in the

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   Eastern District of Texas, CCE's dismissal of that action would bar enforcement of that

2   subpoena and thus moot this ancillary action.  As a result, any order from this Court

3   compelling production would actually compel ARC to produce documents if, and *only* if,

4   it concluded that maintaining CCE's underlying action was worth doing so.  The proof will

5   thus be in the pudding:  ARC can undertake its own, real-world burdensomeness analysis,

6   and make its own, real-world decision.  ARC's unfettered right to avoid production

7   provides the Court another reason to give no weight to its protestations of burden.

8      **G.     The Court Should Not Shift Costs of Any Production to HMD Global**

9          As its last line of defense, ARC asks for cost-shifting to HMD Global.  Opp. at

10   18-19.  For several reasons, however, the Court should deny this request.  First, ARC

11   admits it was obliged to preserve the documents HMD Global seeks, making cost-sharing

12   inapplicable.  *See supra* § II.A; *Net-Com Servs., Inc. v. Eupen Cable USA*, Inc., No.

13   11-2553, 2013 WL 4007785, at *3 (C.D. Cal. Aug. 5, 2013) (ordering the producing party

14   "to bear the full cost of restoring and producing data on the hard drives" it failed to

15   preserve properly after its "duty to preserve evidence arose").  Second, ARC is not a true

16   non-party, but rather the sole owner and close controller of underlying plaintiff CCE.  *See*

17   *supra* § II.B.  Third, ARC has failed to meet its burden of showing any costs at all, and

18   thus cannot recover them.  *See supra* § II.D.

19          Fourth and most importantly, ARC admits that, at any time, it can produce whatever

20   documents it wants through its subsidiary CCE.  Opp at 17:10-11 ("ARC either has no

21   responsive information or will provide it to CCE for production."); *see generally* Docket

22   No. 3-8 (repeatedly stating that "ARC responds that to the extent the documents

23   reasonably relate to the patent-in-suit and any such documents exist, they **have been**

24   **provided to** or are in the possession, custody, or control of CCE.") (emphasis added).

25   This admission is consistent with ARC and CCE's behavior throughout discovery in this

26   action:  when HMD Global pressured ARC to produce documents, ARC passed some (but

27   not all) of those documents to CCE, which produced them to HMD Global.  *E.g.*, Opp. at

28   5-6.  ARC thus seeks to produce freely the documents it wants to produce (by handing

– 20 –                                          Case No. 8:20-mc-127

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

them to CCE, represented by the same counsel) while withholding the documents it wants
to withhold (by asking the Court to charge HMD Global for them).  The Court should not
allow these "heads I win, tails you lose" production games, which would give ARC and
CCE improper control over their production contrary to the letter and spirit of the Rules.

## CONCLUSION

For the foregoing reasons and those set forth in its motion, HMD Global respectfully
requests that the Court grant HMD Global's motion to compel production of all documents
responsive to Requests for Production Nos. 1-26 in HMD Global's Subpoena To Produce
Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action.

Date:  January 5, 2021                              Respectfully submitted,

Matthew S. Warren (Bar No. 230565)
Jennifer A. Kash (Bar No. 203679)
Erika H. Warren (Bar No. 295570)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-127@cases.warrenlex.com